Phillip E. Marbury (Bar # 267645)
THE LAW OFFICES OF MARBURY &
MARBURY, PLLC
P.O. Box 2122
Wolfeboro, NH 03894
Tel.: (603) 569-4111
Fax: (603) 941-3180
*pm@marblaw.com*

David J. Hacker (pro hac vice pending)
Jeremiah G. Dys (pro hac vice pending)
Ryan Gardner (pro hac vice pending)
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel: (972) 941-4444
*dhacker@firstliberty.org*
*jdys@firstliberty.org*
*rgardner@firstliberty.org*

Camille P. Varone (pro hac vice pending)
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Avenue N.W., Suite 1410
Washington, DC 20004
Tel.: (202) 921-4105
*cvarone@firstliberty.org*

*Attorneys for Plaintiffs Grace New England and Pastor Howard Kaloogian*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| GRACE NEW ENGLAND; and<br><br>PASTOR HOWARD KALOOGIAN,<br><br>*Plaintiffs*,<br><br>v.<br><br>TOWN OF WEARE, NEW HAMPSHIRE;<br><br>TONY SAWYER, in his individual and official capacities; and<br><br>CRAIG FRANCISCO, in his individual and official capacities,<br><br>*Defendants*. | Civil Action No. 1:24-cv-41<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF** |

1

Plaintiffs Grace New England and Pastor Howard Kaloogian, for their Complaint against the Town of Weare, New Hampshire, and Tony Sawyer and Craig Francisco, in their individual and official capacities (collectively, "Defendants"), allege, by and through their attorneys, as follows:

## <u>NATURE OF THE ACTION</u>

1.       Adherents to Christianity have met in places other than formal cathedrals, churches, or chapels from the time of Christ.  This has been especially true when a church is initially formed or planted.  Whether for reasons of cost or persecution, for a church in its infancy, Christian churches have often met in individual homes the world over.  In fact, until Constantine legalized Christianity in 313 AD, the early Christian church had no other option but to meet in individual homes, often in secret, because of the ruthless persecution by the Roman state.  In the United States, the tradition of using individual homes for religious gatherings—even formal church services—has garnered special solicitude under the law.  Since the founding era, and to the present day, Christian church-plants in America have gathered in individual homes for worship.[1]

2.       Grace New England (the "Church") is a small church plant that meets in Pastor Howard Kaloogian's home on his property in Weare, New Hampshire.

---

[1] Indeed, throughout church history, Christians have often met for congregational worship in unusual places outside of traditional "church buildings," such as homes, *see* Acts 1:13, 2:2, 2:46, 12:12, 16:3-5; and catacombs, *see* Stephen Nichols, *The Catacombs*, Ligonier (Aug. 19, 2015), https://www.ligonier.org/podcasts/5-minutes-in-church-history-with-stephen-nichols/the-catacombs.  To this day, churches often meet in unusual locations, such as cafes and bars, movie theaters, art centers, garages, concert halls, and barns.  *See* Haeven Gibbons, *Unconventional Churches Draw Young Believers to Worship in Odd Places*, Religion Unplugged (Sept. 21, 2020), https://religionunplugged.com/news/2020/9/15/unconventional-churches-draw-young-believers-to-worship-in-odd-places; Herb Scribner, *5 unusual places of worship*, Deseret News (Sept. 15, 2014), https://www.deseret.com/2014/9/15/20548537/5-unusual-places-of-worship.

3.      Upon significant prayer and belief in a calling from God, Pastor Howard Kaloogian began the church in 2023 as a church plant of Grace Community Church located outside of Houston, Texas.

4.      In addition to hosting small religious gatherings in his home, since Pastor Kaloogian moved to the Town of Weare in 2015, he has regularly hosted community gatherings of varying sizes in his home, many of which have been widely promoted throughout the community of Weare.

5.      Despite the open use of his home for nearly a decade to host gatherings ranging from weddings to pinochle games and backgammon tournaments to political rallies, when Weare's Zoning Enforcement Officer, Tony Sawyer, saw promotional materials for the Church, he showed up uninvited to Pastor Kaloogian's front door.  Mr. Sawyer informed Pastor Kaloogian that he could no longer use his home for religious assemblies, claiming that using any part of his home for religious assembly would constitute a change in use and require Pastor Kaloogian to complete a site plan application in order to continue religious gatherings in his home.

6.      Further, Mr. Sawyer noted that Pastor Kaloogian could seek a conditional use permit to operate his home as a place of assembly, but that his application would almost certainly be denied.

7.      Pastor Kaloogian politely refused to comply with the Town's demands, with good reason.

8.      The actions of the Town and its officials violate the Church's rights under the Free Exercise Clause of the First Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the New Hampshire Constitution, and New Hampshire Revised Statute 674:76. The Town's actions discriminate on the basis of religion against the Church and burden Plaintiffs'

free exercise, advance no compelling government interest, and are far from the least restrictive means of advancing governmental goals.

9.      The Town's Zoning Ordinances allow religious use of residential property—specifically, "Churches"—as of right, but the Town and its officials nevertheless are subjecting Pastor Kaloogian to burdensome and likely futile exercises to apply for a site plan or conditional use permits to worship in his home with his small congregation.

10.     Further, since questioning the use of his home for religious gatherings, Town officials have denied the application for routine permits to heat portions of his home to one of Pastor Kaloogian's contractors.  Once the Town issued the permit applications, it took weeks to grant the permit and subjected Pastor Kaloogian to repeated inspections of his home—final approval of which is still pending.

11.     Meanwhile, while acknowledging that *any* assembly of individuals in one's home requires a permit from both the Town of Weare and, possibly, the New Hampshire Fire Marshal, multiple town officials routinely turn a blind eye to homes used for secular assemblies like Super Bowl parties, book clubs, and other assemblies of persons in private homes.

12.     Indeed, when pressed, town officials cannot even articulate what constitutes an "assembly."

13.     Undeterred by the weight of law against them, the Town of Weare has escalated its actions against Pastor Kaloogian and the Church, and has threatened to take legal action against Plaintiffs if they do not bend the knee by February 10, 2024.

14.     The Church and Pastor Kaloogian accordingly seek equitable relief and damages to prevent the Town of Weare and named Defendants from violating their fundamental rights to gather in Pastor Kaloogian's home to worship.

## PARTIES

15.     Plaintiff Pastor Kaloogian is an ordained minister with Grace International. Based on a calling from God, Pastor Kaloogian and his wife decided to plant a Grace International-affiliated church in New Hampshire, and they started the Church in their home at 217 Colby Road, Weare, New Hampshire 03281.

16.     The Church is the recent church plant started by Pastor Kaloogian. It meets weekly on Saturday nights in Pastor Kaloogian's home, in the family room, when necessary, but most often in the largest room in his home: a barn on the property.

17.     Defendant Town of Weare (the "Town") is a municipality in New Hampshire.

18.     Tony Sawyer is the Zoning Enforcement Officer of the Town. He reports to the Town Zoning Board and Planning Board. In his capacity on the Zoning Board, Defendant Sawyer is the principle official responsible for granting permits and variances and exceptions to the Town Zoning Ordinances. Plaintiffs sue Defendant Sawyer in his official and individual capacities.

19.     Craig Francisco is the Chairman of the Planning Board Committee of the Town. The Planning Board administers local ordinances; prepares, amends, and updates the Town's Master Plan; and recommends changes to zoning ordinances. Plaintiffs sue Defendant Francisco in his official and individual capacities.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs' causes of action arise under the U.S. Constitution, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*.

21.     This Court has authority to award the requested declaratory relief under the Federal Declaratory Judgment Act of 1934, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, the

requested injunctive relief under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65, the requested damages under 28 U.S.C. § 1343, and attorneys' fees under 42 U.S.C. § 1988.

22.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims under the New Hampshire Constitution and under N.H. Rev. Stat. § 674:76, because those claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

23.     Venue is proper in this district under 28 U.S.C. § 1391(b) because all Defendants reside in the District of New Hampshire.

## FACTUAL ALLEGATIONS

### *Pastor Kaloogian's Home*

24.     During the summer of 2023, Pastor Howard Kaloogian started the Church in his Weare, New Hampshire home located at 217 Colby Road, Weare, New Hampshire 03281.

25.     The Church meets in a renovated barn, which is one of two main buildings on Pastor Kaloogian's land.

26.     Pastor Kaloogian resides in the other building on his roughly 5-acre lot outside the Town of Weare.

27.     In recent years, Pastor Kaloogian has flattened space between the embankment of his property and the road, installing a retaining wall to create sufficient space for roughly 90 feet in each direction perpendicular to his driveway to accommodate off-street parking, and improved an old logging trail on his property to accommodate both local hunters and visitors parking at his home.

28.     Pastor Kaloogian hosts weekly Bible studies in his family room with 15 to 20 people, regularly counsels members of his church and community in his study and kitchen, and

uses the renovated barn, which is mere steps from his back door for the church's regular worship services each weekend.

29.     For instance, in the picture below, members of the church meet in Pastor Kaloogian's kitchen and dining room, observing the Lord's Supper (also called, "communion") prior to a shared Thanksgiving meal:



30.     Located steps from Pastor Kaloogian's back door is a 200-year-old barn.  In recent years, and prior to Pastor Kaloogian's ownership of the home, the barn underwent significant renovations to be used as a woodshop and party barn.  Indeed, the previous owner was well-known in the community for hosting legendary parties, replete with bands and dancing.  Since taking ownership, Pastor Kaloogian made additional renovations, exchanging the dance floor and bandstand for pews, a pulpit, and an upgraded, radiant heater for cold New Hampshire winters.

31.     At one point, Pastor Kaloogian, and his wife, considered using the home, including the barn, to host weddings, dances for adults with disabilities, and similar events.  Pastor Kaloogian's wife even went before the Weare Planning Board to present the idea.  The Planning Board did not require the submission of a site plan, but informed them that, so long as the

Kaloogians did not charge for the events, the barn could be used for whatever lawful purpose, including dances, weddings, and, presumably, religious gatherings.

32.     Pastor Kaloogian has held numerous events at the barn, including for the last seven years, a meeting for an observance of the annual Pine Tree Riot, as organized and widely promoted by the community organization, Americans for Prosperity:





33.     More recently, political candidates stumping in New Hampshire have stopped at

Pastor Kaloogian's home, including Robert F. Kennedy, Jr.:





34.     In addition to community and political events, Pastor Kaloogian's home has hosted

at least one wedding, the barn being used as a service area for the food:





35.     And, of course, the home is host to a gathering of the Church in Weare.  An average of less than 30 people attend weekly services at Pastor Kaloogian's home.  Should it reach a regular attendance of over 50 people that could sustain the Church's needs, he intends to relocate to different, larger location.   Until then, his home, as pictured below, serves as a convenient, comfortable, and safe location for the Church to gather:





### *The Zoning Officer's Unannounced Visit to the Church*

36.     On August 23, 2023, Pastor Kaloogian received an unannounced visit from Tony Sawyer, Zoning Officer for the Town of Weare, who had seen an advertisement for a church meeting at that address.

37.     Mr. Sawyer informed Pastor Kaloogian that the property is zoned residential and thus are not allowed to hold religious assemblies on the property.

38.     Though the other events held at the Kaloogian home over the years have been widely advertised in the community, it was specifically the advertisement for the *religious* assembly that triggered the visit by Mr. Sawyer.

39.     The only assembly specifically directed by Mr. Sawyer and the Town of Weare to "Cease and Desist" was "any assembly regarding Grace New England Church."  *See* Ex. A.

40.     During an inspection conducted on February 7, 2024, the inspector informed Pastor Kaloogian that, if he intends to hold *religious* assemblies in his home, he must seek an additional permit from the state fire marshal.  *See infra* ¶¶ 66–69.

41.     During his August 2023 visit, Mr. Sawyer informed Pastor Kaloogian that for the Church to continue meeting, he would need a conditional use permit, although he indicated it was unlikely to be approved.

42.     While at the home, Mr. Sawyer provided Pastor Kaloogian with a form entitled "Planning Board Application for Conceptual or Design Review."  He requested that Pastor Kaloogian submit it to get on the agenda for an upcoming Planning Board meeting.  Pastor Kaloogian offered to fill out the form while they talked, but Mr. Sawyer declined.

43.     Mr. Sawyer stated during this visit that his own father is a pastor, but that he is an atheist, although he volunteered that his beliefs would have no bearing on the situation.

44.     Mr. Sawyer said that he did not want to get attorneys involved formally at that time.

45.     Later that day, on August 23, 2023, Pastor Kaloogian sent a letter to Chairman Craig Francisco documenting Mr. Sawyer's visit and expressing his concerns that filling out the form would be inappropriate and did not seem to be warranted by the U.S. Constitution or the specific provisions of the Town of Weare's zoning ordinances.  Ex. B.

46.     Pastor Kaloogian noted in his letter that he had held numerous events at his home without completing such an application in the past, including an event earlier in August 2023 when hundreds gathered for a candidate meet-and-greet with Robert F. Kennedy, Jr., and a recurring Bible study that met in his family room for the past two years, which Pastor Kaloogian had widely promoted in town.  *Id.*

47.     According to Section 17.2.1 of the Zoning Ordinances of the Town of Weare, churches are permitted as of right in districts zoned Residential (R) (emphasis added), Ex. C:

> 17.2 RESIDENTIAL (R) DISTRICT: Permitted Uses.
>
> 17.2.1. **Churches**, municipally owned and operated facilities, nursing homes, golf courses, or any municipally owned and operated facility.

48.     Based on his understanding of the 2019 Zoning Ordinance and the First Amendment, Pastor Kaloogian respectfully declined to submit the form provided because it would involve the Government prohibiting his right to worship in his home.  *See* Ex. B.

49.     The Church continued meeting in the barn on Saturday nights with a regular congregation of about 30 people or less.

50.     On Saturday, September 30, 2023, the Town of Weare sent a letter signed by Craig Francisco, Chair of the Weare Planning Board, informing Pastor Kaloogian that the Board determined he would need to apply for a Site Plan to continue gathering as a church.  Ex. D.

***Town Employees Refuse to Grant the Church a Permit for Heating***

51.     In October of 2023, to prepare for the coming cold winter months, Pastor Kaloogian realized the need to install an upgraded, radiant heater in the barn to replace the older, less powerful unit installed by the previous owner.

52.     Pastor Kaloogian purchased a propane-powered radiant heater specifically designed for historic barns like his, hung the unit himself, but asked a licensed plumber to go to the Town of Weare to obtain a permit to connect a gas line to the new radiant heater in the barn.

53.     At first, the town employees were helpful and began helping the plumber. But, when the plumber noted the address—that is, the Church's address at Pastor Kaloogian's home— the employee laughed and refused to give the plumber the forms or process the permit request.

54.     Specifically, the employees in Weare's permitting office refused to give the permit forms to the plumber because it would be used to connect a gas line to a radiant heater in Pastor Kaloogian's home which they knew from Mr. Sawyer would be used for hosting religious gatherings.

***The Town's Cease-And-Desist Letter and Pastor Kaloogian's Response***

55.     On October 23, 2023, the Town sent another letter, signed by Mr. Sawyer, demanding that Pastor Kaloogian "Cease and Desist on [his] property" and "immediately stop any assembly regarding Grace New England Church."  Ex. A.

56.     The letter declared that the cease-and-desist notice "will remain in effect until a site plan is submitted, reviewed and there is a decision made by the Town Planning Board." *Id*.

57.     Penalties for noncompliance with the Town's demands, according to the letter, would require Pastor Kaloogian to pay $275 for the first offense and then $550 "for subsequent offenses each day that such violation is found."  *Id*.

58.     After retaining legal representation, Pastor Kaloogian responded to the letter through counsel on October 26, 2023, detailing how the notice violates the Free Exercise Clause, treats religious activity worse than comparable secular gatherings in individual homes, and runs afoul of the Town's own zoning ordinances.  Ex. E.

59.     On October 27, 2023, Mr. Sawyer informed Pastor Kaloogian's counsel that the cease-and-desist order would be lifted, but only temporarily.  Ex. F.

### *Ongoing Discussions Regarding Heating and Permitting*

60.     For the next few weeks, the Church worked with the town building inspector to confirm whether any issues existed in the barn that would prevent the Town from being able to issue the requested permit to connect a new gas line.

61.     The Town's refusal to provide to Pastor Kaloogian's plumber the forms necessary to request the permit to connect the gas line to the radiant heater set the installation back by weeks, just as winter arrived.

62.     Eventually, the plumber received the permit to connect the gas line and made the connection in early December 2023.

63.     On or about December 22, 2023, Bob Clark, a building inspector with the Town of Weare, came to Pastor Kaloogian's home and approved the connection of the gas line to the new radiant heater.  But he did not grant final approval.  Instead, the inspector said he needed time to thoroughly read the radiant heater's manual and promised to return a week later accompanied by the fire chief.

64.     That inspector never returned, nor did the fire chief visit as suggested.

65.     Forty-seven days later, on February 7, 2024—two days after the Weare Board of Selectmen discussed Pastor Kaloogian in its regular meeting—Jack Shephard, acting as an

inspector for the Town of Weare,[2] arrived to inspect the radiant heater installed in Pastor Kaloogian's barn.

66.     The inspector noted the radiant heater required minor corrections—crinkled joint tape needed to be smooth, a gap needed to be sealed with caulking, a minor error by the plumber on the permit application needed to be corrected—but then noted that as a place of public assembly, he was required to notify the state fire marshal that Pastor Kaloogian is using his home for church gatherings.

67.     Specifically, Mr. Shephard said that the radiant heater failed to get the room to 72-degrees (it reached the mid-60's), as would be required by the fire marshal, in the short time he was there and the lack of insulation in the walls presented a concern.

68.     Thus, what started as a simple permit to connect the gas line to a radiant heater ended with yet another reason for the Town of Weare to prevent religious gatherings in Pastor Kaloogian's home: he would have to seek permission from the New Hampshire Fire Marshal.

69.     Notably, during the inspection, Mr. Shephard observed that he had a pew much like those present in Pastor Kaloogian's barn.  In fact, as he noted to Pastor Kaloogian, his pews were located in his garage and, just four days from the date of inspection, would be filled with guests gathered to watch the Super Bowl in Mr. Shephard's garage.  When asked, Mr. Shephard confessed that his Super Bowl party was likely an assembly, but he had not sought the same permit(s) he required of Pastor Kaloogian.

---

[2] Mr. Shephard was employed as a building inspector for the town of Greenland, NH.  At the time of the inspection, Weare maintained an agreement with Greenland to utilize Mr. Shephard to conduct inspections in Weare while they searched to fill a vacant building inspector position.

*The Town Doubles Down on Site Plan Approval Requirements*

70.     On December 10, 2023, an attorney for the Town communicated that "use of the barn to hold religious services requires site plan approval, just as any other non-residential use would require."  Ex. G.

71.     The Town explained that church services are different in kind from a birthday party or reading group that might happen at one's home, and because members of the public may attend the Church, the Town must be allowed to review the site plan.  *Id.*

72.     The email demanded that Pastor Kaloogian apply for site plan approval, lest the Town "seek the assistance of the Hillsborough County Superior Court to require him to do so." *Id.*

73.     The Town of Weare has promulgated extensive and—for someone simply wishing to use his home for small religious gatherings—onerous Site Plan Review Regulations detailing the procedures and fees to apply for site plan approval and the standards to which Pastor Kaloogian's home would be held should he apply.  *See generally* Ex. H.

74.     Pastor Kaloogian and the Church have not applied for site approval, as they maintain their objections that this requirement violates their Free Exercise rights and violates various federal and state laws.

*Recent Discussions and the Town Meeting*

75.     On January 26, 2024, Pastor Kaloogian spoke with one of the Town Board of Selectmen members, Salim Blume, to inform Mr. Blume of the ongoing situation with the Zoning Office and Planning Board.  Mr. Blume encouraged Pastor Kaloogian to write to the Board of Selectmen, the Weare Town Council, and the highest elected officials in Town.

76.     On January 29, 2024, Pastor Kaloogian submitted a letter to the Weare Board of Selectmen, explaining his concern that city employees, primarily Mr. Sawyer and Mr. Francisco, were requiring him to first seek government approval before engaging in worship at his home.  Ex. I.

77.     The house and barn are not "church buildings" but are simply where the church meets in Pastor Kaloogian's home.  *Id.*

78.     Pastor Kaloogian previously hosted numerous other community activities and gatherings at his home since he moved to Weare in 2015.  The town placed no such zoning demands on Pastor Kaloogian until the Church began meeting in his home.  *Id.*

79.     Pastor Kaloogian asked the Town Board of Selectmen if Mr. Sawyer speaks for them and if he had made his demands with their blessing.  *Id.*

80.     Pastor Kaloogian asked what the Town is officially demanding of Pastor Kaloogian and the Church in order to meet, so he could hear directly from them rather than from town employees.  *Id.*

81.     On February 5, 2024, the Board of Selectmen met to discuss Pastor Kaloogian's letter, among their other agenda items.  *See* Weare Channel 6, "Board of Selectmen – February 5, 2024," YouTube (Feb. 5, 2024), https://www.youtube.com/watch?v=_-C6a4E46UQ.

82.     During the meeting, Mr. Blume brought up Pastor Kaloogian's letter and stated that he wanted to prevent the situation from becoming worse and suggested getting the interested parties together.  Video at 1:28:15–1:28:32.

83.     The town administrator then told the Board of Selectmen that it was her understanding that there was an agreement between the attorneys that Pastor Kaloogian would do

a site plan within 30 days. She repeated this understanding that an agreement existed several times. Video at 1:28:33–1:29:40.

84. No such agreement ever existed, which is why Pastor Kaloogian sent his January 26, 2024 correspondence to the Board of Selectmen. *See* Exs. G, I; Video at 1:30:53–1:31:04 (requesting a status update to clear up the confusion because Pastor Kaloogian's letter was sent after this supposed agreement was reached); Video at 1:35:20–1:35:29 (noting that the emails do not sound like an agreement to do a site plan but just speak with Pastor Kaloogian about next steps).

85. The attorneys only agreed to extend the deadline for filing a site plan to February 10, 2024, but Pastor Kaloogian did not make any promise or agreement to file a site plan application.

86. As the Chairman noted, the February 10, 2024 deadline is for Pastor Kaloogian to respond, not a deadline to file a site plan. Video at 1:36:09–16.

87. Pastor Kaloogian was initially open to having an informal meeting with Defendant Sawyer to learn more about what might be required in a site plan, but Pastor Kaloogian did not agree and will not agree at this point to complete a site plan application.

88. One Board member, Ms. Janice Mathews, referenced New Hampshire Revised Statute § 674.76, which states that "no zoning ordinance or site plan review regulation shall prohibit, regulate or restrict the use of land or structures primarily used for religious purposes" with some exceptions concerning building height, yard size, lot area, set backs, open space, and building coverage. Ms. Mathews asked if the town attorney had considered the statute in preparing the response to Pastor Kaloogian. Video 1:32:28–1:33:28; Video 1:34:44–49; N.H. Rev. Stat. § 674:76.

89.     The Board did not resolve this open question during the meeting.  *See* Video 1:33:29–1:34:21.

90.     The Chairman, Mr. Frederick Hippler, agreed that these were worthwhile questions if the statute had been considered but felt it important that the town ordinances, specifically fire code-related ordinances, were still followed to protect the town from liability.  1:33:29–1:34:21.

91.     Because of the looming February 10, 2024 deadline, and the town attorney's threat of a lawsuit to force Pastor Kaloogian's compliance with the Zoning Board's demands, Pastor Kaloogian and the Church now seek injunctive, declaratory, and monetary relief from Defendants' egregious violation of their constitutional and statutory rights.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### First and Fourteenth Amendments — Free Exercise Clause

### (42 U.S.C. § 1983)

92.     Plaintiffs incorporate herein by reference each allegation contained in paragraphs 1 through 91 of this Complaint.

93.     The Free Exercise Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, prohibits any state action abridging the free exercise of religion.

94.     The Supreme Court has interpreted the Free Exercise Clause to mean that the government may not enact non-neutral and non-generally applicable laws or policies that substantially burden a sincerely held religious belief unless they are narrowly tailored to a compelling government interest.  Such laws are narrowly tailored only if they are the least

restrictive means of achieving the asserted compelling interest. *Carson v. Makin*, 142 S. Ct. 1987, 1997–98 (2022).

95.     The Supreme Court has held that "government regulations are not neutral and generally applicable … whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

96.     Moreover, any state action that discriminates on the basis of religion or targets religion for specially disfavored treatment is subject to strict scrutiny and must be invalidated unless it is "justified by a compelling interest and is narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).

97.     Plaintiffs seek to use Pastor Kaloogian's home to host religious gatherings.

98.     Defendants' application of the Town's ordinances violates Plaintiffs' right to the free exercise of religion by substantially burdening Plaintiffs' religious exercise in a manner that is neither generally applicable nor neutral.

99.     Defendants' application of the Town's ordinances substantially burdens Plaintiffs' free exercise of religion by seeking to prevent Pastor Kaloogian's home from being used to host religious gatherings.

100.     Defendants' actions are not neutral or generally applicable because Defendants do not impose similar restrictions and regulations upon other comparable secular gatherings in the same geographic area.

101.     Further, Defendants' actions are not generally applicable because they are based upon an individualized assessment of Pastor Kaloogian's home.

102.     Defendants do not have a compelling interest in preventing Plaintiffs from using Pastor Kaloogian's home for religious purposes.

103. Even assuming Defendants' purported interests constitute a compelling government interest, forbidding the Church from using Pastor Kaloogian's home for religious purposes is not the least restrictive means of achieving that interest.

104. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief, damages, and attorneys' fees.

## SECOND CAUSE OF ACTION

### Religious Land Use and Institutionalized Persons Act — Substantial Burden

### (42 U.S.C. § 2000cc(a))

105. Plaintiffs incorporate herein by reference each allegation contained in paragraphs 1 through 91 of this Complaint.

106. Under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the government may not "impose or implement a land use regulation in a manner that imposes a substantial burden" on religious exercise — unless it shows that imposing that burden is the "least restrictive means" of furthering a "compelling" interest. 42 U.S.C. § 2000cc(a)(1).

107. Defendants' ordinances constitute land use regulations under RLUIPA.

108. For purposes of RLUIPA, Defendants burdened the Church's religious exercise by imposing or implementing a "land use regulation" that involved "individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C). In deciding to limit Plaintiffs' use of Pastor Kaloogian's home, Defendants made individualized assessments regarding the Church's use of Pastor Kaloogian's home.

109.    Defendants' application of the Town's ordinances substantially burdens Plaintiffs' free exercise of religion by preventing the Church from using Pastor Kaloogian's home to conduct its religious ministry.

110.    The substantial burden imposed by Defendants' actions will prevent the Church from engaging in activities that will affect interstate and foreign commerce.

111.    Defendants do not have a compelling interest in preventing Plaintiffs from using Pastor Kaloogian's home for religious purposes.

112.    Even assuming Defendants' purported interests constitute a compelling government interest, forbidding the Church from using Pastor Kaloogian's home for religious purposes is not the least restrictive means of achieving that interest.

113.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief, damages, and attorneys' fees.

### THIRD CAUSE OF ACTION

### Religious Land Use and Institutionalized Persons Act — Equal Terms

### (42 U.S.C. § 2000cc(b))

114.    Plaintiffs incorporate herein by reference each allegation contained in paragraphs 1 through 91 of this Complaint.

115.    Under RLUIPA, the government may not "impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(2).

116.    Defendants' ordinances constitute land use regulations under RLUIPA.

117.     Defendants' application of the City's ordinances violates RLUIPA because it treats the Church on less than equal terms compared to other comparable secular gatherings in the Town.

118.     As a direct and proximate result of Defendants' RLUIPA violation, Plaintiffs have suffered and will continue to suffer irreparable harm, including the loss of their statutorily protected rights, entitling it to declaratory and injunctive relief, damages, and attorneys' fees.

## FOURTH CAUSE OF ACTION

### Violation of Section 674:76 of the New Hampshire Revised Statutes

### (N.H. Rev. Stat. § 674:76)

119.     Plaintiffs incorporate herein by reference each allegation contained in paragraphs 1 through 91 of this Complaint.

120.     Under Section 674:76 of the New Hampshire Revised Statutes, "[n]o zoning ordinance or site plan review regulation shall prohibit, regulate, or restrict the use of land or structures primarily used for religious purposes."

121.     Defendants' application of the Town's ordinances violates Section 674:76 by preventing the Church from using Pastor Kaloogian's home to conduct its religious ministry without first obtaining site plan approval by the Town.

122.     As a direct and proximate result of Defendants' RLUIPA violation, Plaintiffs have suffered and will continue to suffer irreparable harm, including the loss of their statutorily protected rights, entitling it to declaratory and injunctive relief, damages, and attorneys' fees.

## FIFTH CAUSE OF ACTION

## Violation of Part I, Article 5 of the New Hampshire Constitution

## (N.H. Const. Pt. 1, art. 5th)

123.     Plaintiffs incorporate herein by reference each allegation contained in paragraphs 1 through 91 of this Complaint.

124.     Part 1, Article 5 of the New Hampshire Constitution states that "Every individual has a natural and unalienable right to worship God according to the dictates of his own conscience, and reason; and no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession, sentiments, or persuasion; provided he doth not disturb the public peace or disturb others in their religious worship."

125.     The New Hampshire Supreme Court has interpreted this provision to require the application of strict scrutiny for any substantial burden on religious exercise.  *See State v. Mack*, 249 A.3d 423, 442–43 (N.H. 2020).

126.     Thus, any substantial burden imposed on Plaintiffs' religious exercise by the Town must further a compelling interest and be narrowly tailored to achieve that end.

127.     Defendants' application of the Town's ordinances substantially burdens Plaintiffs' free exercise of religion by seeking to prevent Pastor Kaloogian's home from being used to host religious gatherings.

128.     Defendants do not have a compelling interest in preventing Plaintiffs from using Pastor Kaloogian's home for religious purposes.

129.    Even assuming Defendants' purported interests constitute a compelling government interest, forbidding the Church from using Pastor Kaloogian's home for religious purposes is not the least restrictive means of achieving that interest.

130.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief, damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully asks the Court to:

1.    Declare that Defendants' application of the Town's ordinances against the Church violates Plaintiffs' rights under the First and Fourteenth Amendments, under RLUIPA, under the Town's Zoning Ordinances, under Section 674:76 of the New Hampshire Revised Statutes, and under the New Hampshire Constitution;

2.    Enjoin Defendants from taking any further steps to enforce the Town's ordinances against Plaintiffs;

3.    Award nominal damages to Plaintiffs;

4.    Award Plaintiff attorney's fees and costs under 42 U.S.C. § 1988;

5.    Award such other relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues so triable.


Dated: February 9, 2024                                        Respectfully Submitted,


                                                                  /s/ *Phillip E. Marbury*
                                                                Phillip E. Marbury (Bar # 267645)
                                                                THE LAW OFFICES OF MARBURY &
                                                                MARBURY, PLLC
                                                                P.O. Box 2122
                                                                Wolfeboro, NH 03894
                                                                Tel.: (603) 569-4111
                                                                Fax: (603) 941-3180
                                                                *pm@marblaw.com*

                                                                David J. Hacker (pro hac vice pending)
                                                                Jeremiah G. Dys (pro hac vice pending)
                                                                Ryan Gardner (pro hac vice pending)
                                                                FIRST LIBERTY INSTITUTE
                                                                2001 West Plano Parkway, Suite 1600
                                                                Plano, TX 75075
                                                                Tel: (972) 941-4444
                                                                *dhacker@firstliberty.org*
                                                                *jdys@firstliberty.org*
                                                                *rgardner@firstliberty.org*

                                                                Camille P. Varone (pro hac vice pending)
                                                                FIRST LIBERTY INSTITUTE
                                                                1331 Pennsylvania Ave. N.W., Suite 1410
                                                                Washington, D.C. 20004
                                                                Tel: (202) 921-4105
                                                                *cvarone@firstliberty.org*