EXHIBIT C

# TOWN OF WEARE, NH

# ZONING ORDINANCE



*Updated through March 2019*

## Table of Contents

ARTICLE 1 ................................................................................................................. 8
1.1     PREAMBLE ................................................................................................ 8
1.2     TITLE ........................................................................................................... 8

ARTICLE 2 ................................................................................................................. 8
2.1     ZONING DISTRICTS ................................................................................. 8
2.2     ZONING MAP ............................................................................................. 8
2.3     INTERPRETATION OF BOUNDARY LINES ............................................. 8

ARTICLE 3 ................................................................................................................. 8
3.1     GENERAL PROVISIONS ............................................................................ 8
3.2     PERFORMANCE STANDARDS ................................................................ 8
3.3     CONFLICT WITH OTHER REGULATIONS OR ORDINANCE .................... 9
3.4     RIGHTS OF VESTING AND NON-CONFORMING USE OF PROPERTY ..... 9
3.5     NON-CONFORMING LOTS ....................................................................... 9
3.6     LOTS WITHOUT PUBLIC SEWERAGE ..................................................... 9
3.7     HEIGHT ..................................................................................................... 10
3.8     NUCLEAR, CHEMICAL, OR TOXIC WASTE ........................................... 10
3.9     ESTABLISHING NEW JUNKYARDS ........................................................ 10
3.10    ASSIGNMENT OF SECTION NUMBERS .................................................. 10
3.11    RIGHT TO FARM ...................................................................................... 10
3.12    SUBSEQUENT AMENDMENTS TO THIS ORDINANCE .......................... 11
3.13    CONDITIONAL USE .................................................................................. 11

ARTICLE 4 ............................................................................................................... 12
4.1     DEFINITIONS ........................................................................................... 12

ARTICLE 5 ............................................................................................................... 17
5.1     ADMINISTRATION AND ENFORCEMENT ............................................. 17

ARTICLE 6 ............................................................................................................... 17
6.1     ZONING BOARD OF ADJUSTMENT ....................................................... 17

ARTICLE 7 ............................................................................................................... 19
7.1     AMENDMENTS ........................................................................................ 19

ARTICLE 8 ............................................................................................................... 19
8.1     NOTICE OF VIOLATION ......................................................................... 19

ARTICLE 9 ............................................................................................................... 19
9.1     PENALTY & ENFORCEMENT .................................................................. 19

ARTICLE 10 ............................................................................................................. 19
10.1    SAVING CLAUSE: .................................................................................... 19

ARTICLE 11 ............................................................................................................... 19
11.1   WHEN EFFECTIVE.................................................................................................. 19

ARTICLE 12 ............................................................................................................... 19
12.1   TITLE AND PURPOSE ............................................................................................. 19

ARTICLE 13 ............................................................................................................... 20
13.1   ZONING DISTRICTS ............................................................................................... 20

ARTICLE 14 ............................................................................................................... 20
14.1   LOT SIZE REGULATIONS........................................................................................ 20
14.2   MINIMUM LOT SIZE.............................................................................................. 20
14.3   RURAL/AGRICULTURAL DISTRICT ......................................................................... 21

ARTICLE 15 ............................................................................................................... 21
15.1   PHASING OF DEVELOPMENT ................................................................................. 21

ARTICLE 16 ............................................................................................................... 22

ARTICLE 17 ............................................................................................................... 22
17.1   PERMITTED USES AND RESTRICTIONS.................................................................... 22
17.2   RESIDENTIAL (R) DISTRICT................................................................................... 22
17.3   RURAL/AGRICULTURAL (RA) DISTRICT ................................................................ 22

ARTICLE 18 ............................................................................................................... 24
18.1   SETBACKS/FRONTAGE/PARKING IN RESIDENTIAL AND
RURAL/AGRICULTURAL DISTRICTS ................................................................................ 24
18.2   SETBACKS AND FRONTAGE ................................................................................... 24
18.3   PARKING: RESIDENTIAL (R) & RURAL/AGRICULTURAL (RA) DISTRICTS..... 25

ARTICLE 19 ............................................................................................................... 25
19.1   SPECIAL EXCEPTIONS ........................................................................................... 25

ARTICLE 20 ............................................................................................................... 26
20.1   ESTABLISH PRIVATE GRAVEYARDS, BURIAL SITES & CEMETERIES ............ 26
20.2   PURPOSE.............................................................................................................. 26
20.3   LOCATION OF BURIAL SITE ................................................................................... 26
20.4   ESTABLISHMENT .................................................................................................. 27
20.5   MAINTENANCE .................................................................................................... 27

ARTICLE 21 ............................................................................................................... 27
21.1   SIGNS AND SIGNING IN (R) AND (RA) DISTRICTS ................................................. 27

ARTICLE 22 ............................................................................................................... 27
22.1   VILLAGE DISTRICTS ............................................................................................. 27
22.2   PURPOSE.............................................................................................................. 27

22.3    DESIGNATED VILLAGE DISTRICTS .......................................................................... 27
22.4    PERMITTED USES ................................................................................................... 27
22.5    AREA REQUIREMENTS ........................................................................................... 28
22.6    YARD REQUIREMENTS ........................................................................................... 28
22.7    SIGNS ....................................................................................................................... 29
22.8    NON-PERMITTED USES .......................................................................................... 29
22.9    ARCHITECTURAL DESIGN OF BUILDINGS ........................................................... 29

ARTICLE 23 ......................................................................................................................... 29
23.1    RESIDENTIAL MANUFACTURED HOUSING DISTRICT .......................................... 29
23.2    PURPOSE .................................................................................................................. 29
23.3    PERMITTED USES ................................................................................................... 29
23.4    MANUFACTURED HOUSING PARKS ...................................................................... 30

ARTICLE 24 ......................................................................................................................... 30
24.1    COMMERCIAL ZONING DISTRICT .......................................................................... 30
24.2    PURPOSE .................................................................................................................. 30
24.3    PERMITTED USES ................................................................................................... 30
24.4    SPECIAL EXCEPTIONS ............................................................................................ 31
24.5    AREA AND FRONTAGE REQUIREMENTS ............................................................... 31
24.6    YARD REQUIREMENTS ........................................................................................... 32
24.7    BUFFER STRIPS ...................................................................................................... 32
24.8    OFF-STREET PARKING ............................................................................................ 32
24.9    SIGNS: ...................................................................................................................... 32
24.10   NON-PERMITTED USES .......................................................................................... 32

ARTICLE 25 ......................................................................................................................... 32
25.1    INDUSTRIAL ZONING DISTRICT ............................................................................. 32
25.2    PURPOSE .................................................................................................................. 32
25.3    PERMITTED USES ................................................................................................... 32
25.4    NON-PERMITTED USES .......................................................................................... 33
25.5    AREA AND FRONTAGE REQUIREMENTS ............................................................... 33
25.6    YARD REQUIREMENTS ........................................................................................... 34
25.7    BUFFER STRIPS ...................................................................................................... 34
25.8    OFF-STREET PARKING ............................................................................................ 34
25.9    SIGNS ....................................................................................................................... 34

ARTICLE 26 ......................................................................................................................... 34
26.1    MULTI-FAMILY HOUSING ....................................................................................... 34
26.2    PURPOSE AND INTENT ........................................................................................... 34

ARTICLE 27 ......................................................................................................................... 35
27.1    CLUSTER HOUSING ................................................................................................ 35
27.2    PURPOSE AND INTENT ........................................................................................... 35
27.3    REQUIREMENTS ...................................................................................................... 35

ARTICLE 28 ......................................................................................................................... 38
28.1    WETLANDS ZONE LAND PLANNING ORDINANCE ................................................ 38

28.2    PURPOSE AND INTENT ................................................................................. 38
28.3    WETLANDS DEFINED .................................................................................. 39
28.4    EXAMPLES OF WETLANDS ........................................................................ 39
28.5    WETLAND ZONE BOUNDARIES.................................................................. 39
28.6    PERMITTED USES ....................................................................................... 40
28.8    SETBACKS ................................................................................................... 40
28.9    BUFFERS ...................................................................................................... 41

ARTICLE 29 ................................................................................................................ 41
29.1    AQUIFER PROTECTION ORDINANCE ...................................................... 41
29.2    PURPOSE ...................................................................................................... 41
29.3    LOCATION ................................................................................................... 41
29.4    RECHARGE AREAS ..................................................................................... 42
29.5    DEFINITIONS ............................................................................................... 42
29.6    APPEALS ...................................................................................................... 45
29.7    USE REGULATIONS .................................................................................... 45
29.8    PROHIBITED USES ...................................................................................... 45
29.9    PERMITTED USES ....................................................................................... 46
29.10   EXEMPTIONS ............................................................................................... 46
29.11   PERFORMANCE STANDARDS ................................................................... 46
29.12   SPECIAL EXCEPTIONS ............................................................................... 48
29.13   CONDITIONAL USES .................................................................................. 48
29.14   SEPTIC SYSTEM DESIGN AND INSTALLATION...................................... 49
29.15   ADDITIONAL GUIDELINES ....................................................................... 49
29.16   EXISTING NONCONFORMING USES ........................................................ 50
29.17   RELATIONSHIP BETWEEN STATE AND LOCAL REQUIREMENTS ................... 50
29.18   ENFORCEMENT PROCEDURES AND PENALTIES .................................. 50
29.19   SAVING CLAUSE ........................................................................................ 50
29.20   EFFECTIVE DATE ....................................................................................... 50

ARTICLE 30 ................................................................................................................ 50
30.1    RURAL CONSERVATION OVERLAY DISTRICT ..................................... 51
30.2    PURPOSE & INTENT.................................................................................... 51
30.3    PERMITTED USES ....................................................................................... 51

ARTICLE 30-A............................................................................................................ 51
30-A    MT. DEARBORN ROAD HISTORIC AREA OVERLAY DISTRICT ......................... 51
30-A.1  PURPOSE AND INTENT .............................................................................. 51

ARTICLE 30-B............................................................................................................ 52
30-B.A    CLINTON GROVE HISTORIC OVERLAY DISTRICT ......................... 52
30-B.B    AREA, PURPOSE AND INTENT .......................................................... 52
30-B.C    RESTRICTIONS ..................................................................................... 53
30-B.C.6  SIGNS..................................................................................................... 55
30-B.C.7  MINIMUM LOT SIZE ............................................................................ 55
30-B.C.9  NON-PERMITTED USES ....................................................................... 55
30-C    RIVERDALE HISTORIC OVERLAY ISTRICT…………………………… 56

ARTICLE 31 .................................................................................................................... 57
31.1     FLOODPLAIN DEVELOPMENT REGULATIONS ..................................................... 57
31.2     APPLICABILITY ........................................................................................................... 58
31.3     DEFINITIONS ................................................................................................................ 58
31.4     PERMIT REQUIRED ..................................................................................................... 62
31.5     PERMIT PROVISIONS .................................................................................................. 62
31.6     WATER SUPPLY AND WASTEWATER DISPOSAL .................................................. 62
31.7     ELEVATIONS AND FLOODPROOFING ..................................................................... 62
31.8     BUILDING PERMIT TO BE WITHHELD ..................................................................... 63
31.9     ALTERED OR RELOCATED WATERCOURSES ........................................................ 63
31.10    BUILDING PROVISIONS ............................................................................................. 63
31.11    VARIANCES AND APPEALS ....................................................................................... 65

ARTICLE 32 .................................................................................................................... 65
32.0     WIRELESS TELECOMMUNICATIONS FACILITIES OVERLAY DISTRICT ......... 66
32.1     PURPOSE AND INTENT .............................................................................................. 66
32.2     APPLICABILITY ........................................................................................................... 66
32.3     DEFINITIONS ............................................................................................................ 66 6
32.4     DISTRICT REGULATIONS .......................................................................................... 68
32.5     USE REGULATIONS ..................................................................................................... 69
32.6     DIMENSIONAL REQUIREMENTS ............................................................................. 69
32.7     PERFORMANCE AND DESIGN STANDARDS .......................................................... 70
32.8     MONITORING AND MAINTENANCE ........................................................................ 72
32.9     ABANDONMENT OR DISCONTINUATION OF USE ................................................. 73
32.10    ADMINISTRATION AND ENFORCEMENT ............................................................... 74
32.11    TOWN USE .................................................................................................................... 74

ARTICLE 33 .................................................................................................................... 74
33.0     GROWTH MANAGEMENT ORDINANCE .................................................................. 74

ARTICLE 34 .................................................................................................................... 74
34.0     SIGN ORDINANCE ....................................................................................................... 74
34.1     PURPOSE ....................................................................................................................... 74
34.2     DEFINITIONS ................................................................................................................ 74
34.3     PERMIT .......................................................................................................................... 74
34.4     ILLUMINATION STANDARDS ................................................................................... 74
34.5     LOCATION .................................................................................................................... 75
34.6     MAINTENANCE ........................................................................................................... 75
34.7     REPLACEMENT SIGNS ............................................................................................... 75
34.8     PROPORTIONS ............................................................................................................. 75
34.9     PROHIBITED SIGNS .................................................................................................... 75
34.10    DISTRICT REGULATIONS .......................................................................................... 76
34.11    APPLICABILITY ........................................................................................................... 79
34.12    SEVERABILITY……………………………………………………………………….. 79

ARTICLE 35 .................................................................................................................... 79
35.0     SMALL WIND ENERGY SYSTEMS ............................................................................ 79
35.1     PURPOSE ....................................................................................................................... 79

35.2    DEFINITIONS ............................................................................................................... 79
35.3    PROCEDURE FOR REVIEW ..................................................................................... 80
35.4    STANDARDS................................................................................................................ 81
35.5    ABANDONMENT ........................................................................................................ 83

ARTICLE 36.............................................................................................................................. 84
36.1    DRIVEWAYS............................................................................................................... 84
36.2    PURPOSE...................................................................................................................... 84
36.3    PERMIT REQUIRED:.................................................................................................. 84

# ARTICLE 1

**1.1**     **PREAMBLE:** In pursuance of authority conferred by Title LXIV, Chapter 672 to 677 NH Revised Statutes Annotated, 1955, and within the framework established by the Master Plan for the Town of Weare, NH, this ordinance shall be for the purpose of promoting the public health, general growth, safety and general welfare, and is hereby enacted by the voters of the Town of Weare, New Hampshire.

**1.2**     **TITLE:** This ordinance shall be known and may be referred to as the Town of Weare Zoning Ordinance.

# ARTICLE 2

**2.1**     **ZONING DISTRICTS:** For the purpose of this Ordinance, the Town of Weare is divided in the following seven (7) Zoning Districts:
   1. Village (V)
   2. Residential (R)
   3. Rural Agricultural (RA)
   4. Commercial (C)
   5. Industrial (I)
   6. Wetlands (W)
   7. Residential Manufactured Housing (MH)

**2.2**     **ZONING MAP:** The zoning districts provided in Section 2.1, "Zoning Districts" shall be bound as shown on the map entitled Zoning Map of the Town of Weare, NH dated January, 1988. All amendments and explanatory matter thereon are declared to be part of this ordinance.

**2.3**     **INTERPRETATION OF BOUNDARY LINES:** The Zoning District boundary lines as shown on this zoning map shall parallel the center lines of any road, street, other public right-of-way, the middle of a channel with respect to waterways and railroad lines.

# ARTICLE 3

**3.1**     **GENERAL PROVISIONS:** The general provisions of this article shall apply to all uses of land hereinafter set forth in this ordinance.

3.1.1     Any 'lot' or 'lot of record' as those terms are defined herein, may be used for any one permitted use identified herein the district regulations.   Only one non-accessory use shall be permitted on any one 'lot' or 'lot of record' at any given time.

**3.2**     **PERFORMANCE STANDARDS:** Any use of land shall not be unreasonably obnoxious, or excessively offensive, to an extent that be injurious to the public health and safety or the reasonable expectation of comfort, peace and quiet enjoyment of the community or neighborhood, or cause, significant disturbance or unreasonable annoyance because of noise, including but not limited to,

excessively loud music, vibration, smoke, fumes, glare, odor, dust, gas fumes, chemicals, radiation or other waste materials, or by reason of danger of fire or explosion, or result in reduction of property values in the neighborhood. (Amended 3-20-2014)

**3.3**      **CONFLICT WITH OTHER REGULATIONS OR ORDINANCE:** Where any provision of this ordinance is in conflict with State law or local regulation, the more stringent provision shall apply.

**3.4**      **RIGHTS OF VESTING AND NON-CONFORMING USE OF PROPERTY:**

3.4.1      This zoning ordinance shall not apply to any existing structures or to any existing use of any building in the Town of Weare, in existence on the date of the adoption of this ordinance. This zoning ordinance shall apply to any alteration of a building for use for a purpose or in a manner which is substantially different from the use to which it was put before alteration.

3.4.2      When any existing nonconforming use of land or buildings has been destroyed or discontinued for two (2) years, the land, structures, and buildings shall thereafter be used only in conformity to this ordinance, except that the Zoning Board of Adjustment, after a public hearing, may permit the resumption of said nonconforming use.

**3.5**      **NON-CONFORMING LOTS:** Notwithstanding the minimum lot area requirement set forth in Table 1-1 of this ordinance, a single-family residence may be constructed on a lot which does not comply with the said requirements, provided;

3.5.1      It shall meet the setback requirements as nearly as possible, however it shall at least comply with the following yard setback requirements: front - 30 feet, side - 15 feet, and rear - 15 feet; distance from septic system to surface waters and wetlands - 75 feet; and

3.5.2      It shall have at least 50 feet of frontage.

3.5.3      Such lot shall either (a) have been held under separate ownership from the adjacent lots at the effective date of this ordinance, or (b) have been shown to be a separate and distinct numbered lot of record at the effective date of this ordinance by a plan of lots which has been recorded.

3.5.4      An existing structure currently located within the **front** setback will be allowed to add an addition to the structure, provided that the new addition will not be more non-conforming.

**3.6**      **LOTS WITHOUT PUBLIC SEWERAGE**

3.6.1      Notwithstanding compliance of any lot with the requirements set forth in this ordinance, no residence or business shall be constructed on any lot which is not

served by public sewerage facilities unless private sewage disposal system absorption area requirements can be and are met to the satisfaction of the Building Inspector, said area requirements to be determined by the Building Inspector in accordance with the requirements set forth by the NH Water Supply and Pollution Control Division.

3.6.2    Where state law or regulations vest authority to some agency or government other than the Zoning Board of Adjustment that board shall have concurrent jurisdiction.

**3.7**      **HEIGHT:** Buildings shall have a maximum height of thirty (30) feet above the lowest finish grade as measured to the eaves, and shall contain no more than three (3) stories of heated living space.

**3.8**      **NUCLEAR, CHEMICAL, OR TOXIC WASTE:** No site shall be located for the purposes of burying, storing or disposing of low-level or high-level nuclear, chemical or toxic waste.

**3.9**      **ESTABLISHING NEW JUNKYARDS:** Junkyards shall not be a permitted use in any zoning district in the Town of Weare.

**3.10**     **ASSIGNMENT OF SECTION NUMBERS:** The Planning Board has the authority to assign such section numbers to the Zoning Ordinance as it may deem appropriate provided that no substantive change to the ordinance shall occur as a result of this renumbering.

**3.11**     **RIGHT TO FARM**

3.11.1   <u>PURPOSE</u>**:**  In keeping with the goals of the Weare Master Plan, the value of agricultural activities to the food supply, the economy, the environment and the value of agricultural activities to the food supply, the economy, the environment and the aesthetic features of the Town of Weare is hereby affirmed. Farming and agriculture shall be protected from any unreasonable limitation imposed by municipal planning and zoning powers. Farms and farming shall be encouraged, protected, promoted and enhanced as set forth in NH RSA 674:32 a-c, which supports the preservation of agricultural lands and buildings. It is intended that these provisions will minimize conflicts and disputes between agricultural and nonagricultural users of land in the town of Weare.

The right to farm is a traditional right of fundamental importance to the Town of Weare, to those who are now farming, and to those who may want to farm in the future. The right to farm includes the use of necessary equipment, farm machines, farm labors, application of fertilizers etc. for the purpose of producing agricultural products. The right to farm shall include the right to use land for grazing by animals and raising of livestock and fowl, when conducted in accordance with the Manual of Best Management Practices (BMP) for Agriculture in New Hampshire published by the New Hampshire Department of Agriculture, Markets and Food. Such activities may take place on holidays, Sundays and weekends, night and day.

10

This section shall apply to any agricultural activity allowed in a particular zoning district. (Added 3-11-2008)

**3.12      SUBSEQUENT AMENDMENTS TO THIS ORDINANCE** (Added 3-11-2008)

3.12.1      For the purpose of determining the minimum amount of work required in order to satisfy the provisions of RSA 674:30 pertaining to protection from subsequent amendments to local land use regulations, "active and substantial development and building" means:

(1)      the construction of one or more subdivision roads or a portion thereof approved by the Planning Board, on a subdivision plan, including any required pavement sufficient to cause eligibility for certificates of occupancy for structures on abutting lots; the completion of drainage improvements, including erosion control measures, in accordance with the approved plans; and

(2)      the continued compliance with the public health regulations and ordinances of the Town (Amended 3-9-2010)

**3.13      CONDITIONAL USE** (Added 3-20-2014)

3.13.1      Pursuant to the provisions of RSA 674:21, II.  Innovative Land Use Controls the granting of Conditional Use Permits by the Planning Board is hereby authorized. The Planning Board shall utilize its procedures for the review of site plans as authorized by RSA 674:43 and 674:44 in considering and granting Conditional Use Permits.  The Application Form, Checklist, Filing Fee(s), and all costs of notices for a Conditional Use Permit as established by the Planning Board can be obtained from the Town of Weare.

In granting a Conditional Use Permit, the Planning Board may attach reasonable conditions to its approval where such conditions are shown to be necessary by this ordinance or to further the objectives of this ordinance.  All conditions of approval shall be stated in writing in this issuance of a permit.  The Planning Board may require that such conditions be annotated on a site plan or subdivision plat, or otherwise recorded at the Hillsborough County Registry of Deeds.  Any persons aggrieved by a Planning Board decision on a Conditional Use Permit may appeal that decision to the Superior Court, as provided for in RSA 677:15.  A Planning Board decision on the issuance of a Conditional Use Permit cannot be appealed to the Zoning Board of Adjustment.  (RSA 676:5, III.)  (Added 3-20-2014 revised March 2020 see section 29-13)

3.13.2      **APPLICATION PROCEDURES:** Application for a Conditional Use Permit shall be made on forms supplied by the Planning Board and shall include such information as the Planning Board may require. (Added 3-10-2015)

3.13.3

3.13.4      **EXISTING NON-CONFORMING USES:**   Expansion of existing non-conforming uses or structures shall be allowed when demonstrated that the expansion will result in more conforming site and use with greater protection of the groundwater resource.  (Added 3-10-2015)

# ARTICLE 4

**4.1**      **DEFINITIONS**

ABANDONMENT: Shall mean total neglect of the use of any property for a period of two years or longer.

ABUTTER: As defined in RSA 672:3

ACCESSORY DWELLING UNIT: Shall mean a residential living unit that is within or attached to a single-family dwelling, and that provides independent living facilities for one or more persons, including provisions for sleeping, eating, cooking and sanitation on the same parcel of land as the principal dwelling unit it accompanies. (Amended 3-13-2017)

ACCESSORY USE: Shall mean a building or structure that is incidental and subordinate to the permitted use on a lot and used for purposes customarily associated with the primary use of the lot. Heliports or airports shall not be considered accessory uses to any use permitted in any zoning district in the Town of Weare.

AGRICULTURE, including Farm and Farming shall have the meaning set forth in NH RSA 21-34-a. (Added 3-11-2008)

ALTERATIONS:   Shall mean structural change or rearrangement in the walls, roof, ceiling, floor, beams, columns, exterior architectural features and exit facilities; alterations include the movement of any building except manufactured homes and trailers from one location to another.

APPLICANT: Shall mean any individual, group of individuals, corporation, partnership, association, or any other organization of persons including state and local governments and agencies thereof desiring to construct, assemble or erect any structure for residential, commercial, agricultural, religious, or other purpose anywhere within the Town of Weare.

BED AND BREAKFAST: Shall mean a building or buildings regularly used and kept open as such in a bona fide manner for the feeding and lodging of transient guests.  A bed and breakfast shall have at least 4 rentable rooms but not more than 11 and an area of dining capable of accommodating the number of registered guests and be housed in the primary residence of the owners or operators and whose room rates shall include breakfast. (Added 3-7-16)

BUILDING: Shall mean the structure having a roof, and intended for the shelter, housing, or enclosure of person, animal, and chattel.

BUILDING INSPECTOR: Shall be a person appointed by the Selectmen to fulfill the duties as outlined herein, including inspection of buildings, building sites, and the issuance of building permits, pursuant to RSA 673:1 as amended and the Town of Weare Building Code.

BUILDING SITE: Shall mean that portion of a lot, tract, or parcel of land upon which a building is placed.

CAMPGROUND: Shall mean a use as defined and regulated under RSA 216-I:1-14 upon which a building is placed.

CLUSTER HOUSING: Shall mean a residential configuration of a tract of land, where a number of housing units are "clustered" on a lot or lots with alternative requirements for frontages and setbacks. The remaining area in the tract, not built upon, is reserved for a common area.

CONDITIONAL USE: Shall mean a use or activity that may be allowed in a zoning district only upon showing that such use or activity can or will comply with all applicable conditions as set forth in the zoning ordinance.

COMMERCIAL: Shall mean the buying and selling of goods, commodities, or services for the exchange of a monetary value.

CONDOMINIUM: Shall mean individual ownership in a fee simple of one-family unit in a multi-family structure coupled with the ownership of an undivided interest in the land and in all other parts of the structure held in common with all of the other owners of one-family units.

CONSERVATION LAND: Land that is preserved to protect natural features including, but not limited to, wildlife habitats, wetlands, ecologically important or sensitive areas, farmland soils, plant or animal species, topography or historical sites. (Added 3-10-2009)

DAMAGED STRUCTURES: Shall mean structures whose exterior appearance is altered or defaced by reason of vandalism, fire or other acts of nature.

DAY CARE CENTER: Shall mean a facility caring for four or more children and licensed by the State of New Hampshire.

DEVELOPMENT: Shall mean any manmade change to improved or unimproved real estate, including, but not limited to buildings or other structures, mining, dredging, filling, grading, paving, or excavation.

DRIVEWAY, COMMON:  Shall mean the access to no more than two (2) lots. All common driveways must be approved by the Planning Board.  Common driveways must be located on the frontage that was used to determine the minimum lot size of one of the lots. (Amended 3-12-2013)

DRIVEWAYS: Shall mean any access to a lot, tract or parcel of land.  Driveways must be located on the frontage that was used to determine the minimum lot size. (Amended 3-10-2015)

DWELLING ACCESSORY ATTACHED APARTMENT: (redefined as Accessory Dwelling Unit – 3-13-20107)

13

DWELLING UNIT: Any room, or rooms connected together forming a habitable unit for one family with its own bathing and toilet facilities and its own living, eating and sleeping areas wholly within such rooms, or rooms connected together.

EARTH PRODUCTS: Shall mean sand, gravel, rock, soil or construction aggregate.

EXCAVATIONS: Shall mean a land area, including all slopes, which is used, or has been used, for the commercial taking of earth products.

ENGINEERS: Shall mean the Town Engineer of the Town of Weare, New Hampshire or a person acting in that capacity.

FINAL PLAT: Shall mean a plat or plan approved by the Planning Board pursuant to the provisions of RSA 676:4 and all subdivision and site plan regulations adopted by the Planning Board which has been recorded at the Hillsborough County Registry of Deeds.

FRONTAGE: Shall mean that portion of a lot bordering on a Town road or street as herein defined.  Where a proposed lot of fronts on a dead-end road, the width of the roadway at the end shall not be calculated as legal frontage.  Where a proposed lot fronts in part on a turnaround, only the width of the turnaround right-of-way (50 feet) shall be calculated as frontage.   (See Appendix of Subdivision Regulations for diagrams of frontage requirements.)

HOME-BASE BUSINESSES OR HOME OCCUPATION: Shall mean any legal use which is carried on entirely within a dwelling and occupying no more than 25% or 500 square feet, whichever is less, of the individual's primary dwelling.

HOME PRODUCE: Shall mean and include everything of an agricultural nature, grown and produced.

HOME SHOP: Home shop such as electrician, plumber, or similar tradesman shop which shall be shown to be of such character as to not require outside storage visible to the surrounding properties and shall not be a source of nuisance to neighbors by reason of noise, dust, glare, traffic, vibration, and/or other disruptive influence, and which employs no more than two individuals who are outside of the family.

HOTEL, TOURIST COURT, TOURIST HOME, INN, MOTEL AND CABIN: Shall mean any building or portion thereof where lodging or food is offered to transients for compensation. Shall mean a facility regularly used, maintained and kept open for the feeding and lodging of transient guests which shall have at least 12 rentable rooms of which at least 8 shall have private baths.  (Amended 3-7-2016)

INDUSTRY: Shall mean any building or land area in which permitted industrial operations or manufacturing, processing, assembly, packaging, finishing, treating,

or compounding take place.

JUNK: Shall mean old or scrap copper, brass, rope, rags, batteries, paper, trash, rubber, debris, waste, or junked, dismantled or wrecked automobiles, or parts thereof, iron steel and other old scrap ferrous or nonferrous material.

KENNEL:  Shall mean a building or land used for the commercial boarding or breeding five or more dogs whether for profit or not, but excluding veterinarian clinics or facilities engaged in the rehabilitation or rescue of dogs. (Amended 3-13-2017)

LOT: Shall mean a parcel of land at least sufficient in size to meet the minimum requirements of this ordinance for use, coverage, and area and to provide required yard, setbacks, and open space. Newly created lots shall be four sided and rectangular in shape unless extenuating circumstances, such as existing lot lines or similar conditions require it to be different.

LOT LINE: Shall mean the property line dividing a lot from a street, right-of-way, a body of water, or adjacent property regardless of ownership.

LOT SIZE: Shall mean the total horizontal area within the boundaries of a lot, exclusive of any land designated for street or right-of-way.

LOT OF RECORD: Shall mean land designated as a separate and distinct parcel in existence upon the effective date of this ordinance in a legally recorded deed and/or plat or plan filed in the records of the Hillsborough County Registry of Deeds.

MANUFACTURED HOUSING: Shall mean any structure, transportable in one or more sections, which, in the traveling mode, is 8 body feet or more in width and 40 body feet or more in length, or when erected onsite, is 320 square feet or more, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, which include plumbing, heating and electrical systems contained therein. Manufactured housing as defined in this ordinance shall not include presite built housing as defined in RSA 674:31-a.

MANUFACTURED HOUSING PARK: Shall mean a parcel of land under single or common ownership or control, which contains or is designed, laid out or adapted to accommodate two (2) or more units of manufactured housing, placed and connected for use as dwelling units.

MASTER PLAN: Shall mean the comprehensive plan or plan of development for the Town as defined in RSA 674:2.

MOTOR SPORT AND RACETRACK FACILITY:  Shall mean any permanent recreation facility where motorized vehicles of any kind are raced.

MULTI-FAMILY:  Shall mean three or more dwelling units within a dwelling.

PARKING SPACE:  Parking spaces shall measure at least 9 feet by 18 feet.

PLANNING BOARD:  Shall mean the Town of Weare Planning Board.

PLAT: A plat for the purpose of this section shall be a map of a specific land area whose boundaries are defined by metes and bounds.

RESIDENTIAL HOME:  One- or two-family dwelling.

RIGHT-OF-WAY: Shall mean a legal right of passage over another person's land.

SETBACK: Shall mean the distance between the nearest portion of a building and a lot boundary or right-of-way line, whichever one is closer.

SIGNS: Means any permanent or temporary display visible from public ways  or public property which consists of structures, objects, words, graphics, designs and/or symbols and which is intended (a) to promote a business activity including the sale of goods and services whether for profit or otherwise or (b) to convey a message or point of view to the general public.  "Sign" does not include "circa" plaques, nameplates, warnings, land postings and similar displays not exceeding three (3) square feet in area and customarily associated with residential and agricultural use provided they comply with the other provisions of this ordinance.  A temporary sign is a sign not permanently attached to a building or to the ground, is displayed for a specific, short-term purpose, and may total no more than thirty-two (32) square feet in addition to any other sign requirements in a zoning district. (Amended 3-7-2016)

SITE: Shall mean building site.

SITE PLAN REVIEW: Shall mean such power that may be exercised by the Weare Planning Board to approve or disapprove site plans for the development of tracts for nonresidential uses, or for multiple family dwelling units as the Planning Board may be authorized by vote of Town Meeting.

STREET: Shall mean a Class V Highway or better as defined in RSA 229:5 as may be amended from time to time.

STRUCTURE: That which is built or constructed.

SUBDIVISION: Shall mean the division of a lot, tract, or parcel of land into two or more lots, plats, sites, or other divisions of land for the purpose, whether immediate or future, of sale, rent, lease, condominium conveyance, or building development.

TRAVEL TRAILER: (In accordance with State of NH RSA 216-I:VIII, amended March 2020) Recreational vehicle means any of the following vehicles:
a.       Motor home or van, which is portable, temporary dwelling to be used for

      travel, recreation and vacation, constructed as an integral part of a self-propelled vehicle.

b.     Pickup camper which is a structure designed to be mounted on a truck chassis for use as a temporary dwelling for travel, recreation and vacation.

c.     Recreational trailer, which is a vehicular, portable structure built on a single chassis, 400 square feet or less when measured at the largest exterior horizontal projections, calculated by taking the measurements of the exterior of the recreational trailer including all siding, corner trim, molding, storage space and area enclosed by windows but not the roof overhang. It shall be designed primarily not for use as a permanent dwelling but as a temporary dwelling for recreational, camping, travel or seasonal use.

TOWN ROAD:  Roadways that are maintained by the Town of Weare.

USE, NONCONFORMING: Shall mean a use which lawfully occupied a building or land at the time this ordinance becomes effective, and which does not conform to use regulation of the district in which it is located.

VARIANCE: Shall mean such departure from the terms of the zoning ordinance, applied to use or area, as will not be contrary to the public interest, if, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance will be observed and substantial justice done.

YIELD PLAN:  A "traditional subdivision" plan showing the maximum number of building lots possible, providing an appropriate roadway system and taking into consideration the existing site conditions, including but not limited to, topography, wetlands, steep slopes and site access.

ZONING BOARD OF ADJUSTMENT: As authorized by RSA 673:1 and RSA 673:3, the Board of Adjustment shall have such powers as are set forth in RSA 674:33, as may be amended from time to time.

ZONING MAP: Shall mean the adopted zoning map of the Town of Weare.

# ARTICLE 5

**5.1**      **ADMINISTRATION AND ENFORCEMENT**

5.1.1      DUTY**:** It shall be the duty of the Board of Selectmen and it is hereby given power and authority to administer and enforce this ordinance. The Board of Selectmen may appoint an agent or administrator to enforce this ordinance.

5.1.2      VIOLATION PENALTIES**:** Reference NH RSA 676:17.

# ARTICLE 6

**6.1**      **ZONING BOARD OF ADJUSTMENT:**  Shall be empowered to act pursuant to RSA 674:33

6.1.1   <u>CREATION</u>: A Zoning Board of Adjustment consisting of five (5) members and not more than five (5) alternate members is hereby created. Its members and alternate members shall be appointed by the Board of Selectmen in accordance with the provisions of RSA 673, as may be amended. Each member of the Zoning Board of Adjustment shall be appointed for a term of three (3) years, except that the initial Board and its alternates shall be appointed as follows:
1.   One member and one alternate for one year.
2.   Two members and two alternates for two years.
3.   Two members and two alternates for three years.

6.1.2   <u>RULES OF PROCEDURE</u>: The Zoning Board of Adjustment shall adopt rules of procedure pursuant to RSA 676:1 and in accordance with RSA 673.

6.1.3   <u>SPECIAL EXCEPTIONS</u>: The Board of Adjustment shall hear and may grant such special exceptions as are indicated by the terms of this ordinance provided that the Board finds that all of the following conditions are met:
1.   The specific site is an appropriate location for such a use or uses in terms of overall community development.
2.   The proposed use will not adversely affect the neighborhood and shall produce no significant reduction of real estate values in the neighboring area.
3.   The proposed use will not be a nuisance or serious hazard to vehicular traffic or pedestrians.
4.   The proposed use will not cause an undue burden on the Town through the provision of basic Town services.
5.   Adequate off-street parking be provided if determined necessary by the Zoning Board of Adjustment.
6.   A buffer may be required to screen neighboring uses from the proposed use. Buffers may be fence screens, dense planting of suitable trees and shrubbery, or naturally occurring shrubs and trees.
7.   The Zoning Board of Adjustment, in granting any special exception, may include such restrictions or conditions to ensure compliance with this section.

6.1.4   <u>VARIANCE</u>: The Zoning Board of Adjustment shall hear and may grant variances to this or any other land use ordinances. Variance shall mean such departure from the terms of the zoning ordinance as will not be contrary to the public interest, if, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance will be observed and substantial justice done.  Pursuant to State law the following five (5) points of hardship must be proven by the applicant and a vote in the affirmative to warrant granting of a variance, pursuant to RSA 674:33.

6.1.5   The Zoning Board of Adjustment is hereby authorized to impose reasonable fees upon an applicant for the expense of consultant services or investigative studies, review of documents, and other such matters that may be required by a particular application.  Any such fees shall be subject to the provisions of RSA 673:16.

6.1.6     PROCEDURE**:** The Zoning Board of Adjustment shall utilize the procedures as provided for in RSA 676:5 and RSA 676:7. The board shall be required to record their findings or reasons for granting or refusing to grant a variance or special exception, pursuant to RSA 676:3.

## ARTICLE 7

**7.1**     **AMENDMENTS:** This ordinance may be amended in accordance with the provisions of RSA 674:16 and RSA 675:2-5 as may be amended from time to time.

## ARTICLE 8

**8.1**     **NOTICE OF VIOLATION:** Upon finding that any provision of this ordinance is being violated, the Board of Selectmen or its designated agent, shall notify the violator by certified mail, return receipt requested.

## ARTICLE 9

**9.1**     **PENALTY & ENFORCEMENT:** The Board of Selectmen or its designee shall enforce the provisions of this ordinance and shall recover reasonable attorney's fees as well as all other costs where they prevail. Notification of Violation shall be by Certified Mail - Return Receipt Requested. Non-conforming uses must be brought into conformity within a thirty (30) day period after notification. A penalty of two hundred seventy-five dollars ($275.00) per day will be assessed to non-conformity after the thirty (30) day period. Any person who shall violate any provision of this ordinance shall pay a civil fine of not more than $275.00 for the first offense and $550.00 for subsequent offenses each day that such violation is found by a Court to continue after the conviction date or after the date on which the violator receives written notice from the Town that he is in violation of this ordinance, whichever date is earlier. (Amended 3-10-2009)

## ARTICLE 10

**10.1**    **SAVING CLAUSE:** The invalidity of any portion of this ordinance shall not affect the validity of any other provision.

## ARTICLE 11

**11.1**    **WHEN EFFECTIVE:** This ordinance shall take effect immediately upon its passage.

## ARTICLE 12

**12.1**    TITLE AND PURPOSE

12.1.1    TITLE**:** Residential Zoning Districts

12.1.2    PURPOSE**:** This section of the ordinance is designated in accordance with the Weare Master Plan as adopted by the Weare Planning Board. As designed, its purpose is to maintain the rural character of all the residential zones within the town, yet allow for orderly growth and open spaces. This is to promote health,

safety, morals, and the general welfare of the community and safeguard and protect the natural resources, environment, wetlands, and wildlife of the Town consistent with the Master Plan and all State statutes.

# ARTICLE 13

**13.1**          **ZONING DISTRICTS**

13.1.1          RESReadDENTIAL (R): That area already under development and/or designated for the location of a structure intended solely for the dwelling of the occupants.

13.1.2          RURAL/AGRICULTURAL (RA): That area that is a combination of residential, agricultural and undeveloped land where greater emphasis is focused on limited density and a more diverse use than strictly residential is allowed.

13.1.3          VILLAGE (V): See Article 22.

13.1.4  RESIDENTIAL MANUFACTURED HOUSING (MH): See Article 23.

13.1.5  COMMERCIAL (C ): See Article 24.

13.1.6          INDUSTRIAL (I): See Article 25.

# ARTICLE 14

**14.1**          **LOT SIZE REGULATIONS:**  Land on streets with gravel surface may be subdivided with a minimum lot size of 10 acres. Land on streets with a paved surface shall follow the lot size table in Article 14.2, except land in the Rural/Agricultural (RA) District which shall be governed by section 14.3.

**14.2**          **MINIMUM LOT SIZE:** This section 14.2 shall apply: (a) to any use in the Residential (R) District and (b) to any use involving housing (but excluding hotels and other housing for transients) in the Commercial (C) District and in the Industrial (I) District.  The minimum lot size shall be based upon the percentage of property included in each soils/slope type shown in table 1-1.   When determining lot size, the entire area used to calculate size must be contiguous non-wetland soils.  For definition of wetland, see Article 28.

TABLE 1-1 FOR "MINIMUM LOT SIZE"
LOT SIZES IN SQUARE FEET

| SLOPE CLASS | SLOPE | SOIL CLASSIFICATION | | | | |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| AB | 0-8% | 84,000 | 93,000 | 102,000 | 97,000 | 144,000 |
| C | 8-15% | 87,000 | 97,000 | 107,000 | 102,000 | N/A |
| D | 15-25% | 90,000 | 101,000 | 116,000 | 106,000 | N/A |
| E | 25-35% | 93,000 | 104,000 | 126,000 | 111,000 | N/A |

(1)          A Site-Specific Soil Survey, as defined by the Hillsborough County Conservation District (HCCD) may be required for all lots in which Class 5 soil types

predominate.

(2)    Where condominiums, duplex or multi-family housing is proposed the requirements of Table 1-1 shall apply, for each dwelling unit.  For the purposes of this section, dwelling accessory attached apartment (in-law apartment) shall not be considered a separate dwelling unit.  To determine the number of permissible units the applicant shall provide a soil types and topographic map of the property. The maximum number of dwelling units shall be based on the percentage of the property included in each soil/slope type shown in TABLE 1-1. The total area of each soil type shall be divided by the minimum lot sizes shown in the Table to determine the number of dwelling units permitted for each soil type area. (Amended 3-13-2012)

**14.3     RURAL/AGRICULTURAL   DISTRICT:**     This   section   applies   to   the Rural/Agricultural (RA) District:

14.3.1    In the Rural/Agricultural (RA) District, the minimum lot size shall be 217,800 square feet (5 acres), and must meet the requirements of table 1-1.

14.3.2    Where condominiums or duplexes are proposed in the Rural/Agricultural (RA) District, the requirements of this section 14.3 shall apply for each dwelling unit. For the purposes of this section, a dwelling accessory attached apartment (in-law apartment) shall not be considered a separate dwelling unit.

14.3.3    (Deleted 3-11-2008)

# **ARTICLE 15**

**15.1    PHASING OF DEVELOPMENT**

15.1.1    <u>PURPOSE</u>**:** The purpose of phasing development is to prevent a strain on municipal resources caused by the sudden introduction of many new dwelling units.

15.1.2    All residential subdivisions, condominiums and multi-family housing of 4 dwelling units or greater shall be subject to phasing in accordance with TABLE 1-2 below:

| Total Dwelling Units | Maximum Annual Building permits |
|---|---|
| 4 | 2 per year |
| 5 to 10 | 4 per year |
| 11 to 18 | 5 per year |
| 19 to 28 | 6 per year |
| 29 to 40 | 7 per year |
| 41 to 54 | 8 per year |
| 55 or more | 9 per year |

TABLE 1-2 FOR RESIDENTIAL DEVELOPMENT PHASING:
The table illustrates the maximum number of available building permits approved

under this article per development during any 12-month period.  Surplus permits in any given year shall not be added onto the number of permits available in the following year. (Amended 3-9-2010)

# ARTICLE 16

BONA FIDE GIFTS   - Deleted in its entirety, per vote of March 1999

# ARTICLE 17

**17.1**          **PERMITTED USES AND RESTRICTIONS**

17.1.1          No Building permits for new homes shall be issued on any Class VI or Private Road.

**17.2**          **RESIDENTIAL (R) DISTRICT:** Permitted uses.

17.2.1          Churches, municipally owned and operated educational facilities, nursing homes, golf courses, or any municipally owned and operated facility.

17.2.2          Agricultural, but excluding the grazing, care and keeping of such livestock as cows, horses, goats, pigs, and poultry as a gainful business.

17.2.3          Single- and two-family dwellings, detached garages, and other similar type structures, e.g. greenhouses, breezeways.

17.2.4          Home based business or home occupations including but not limited to lawyer, doctor, realtor, accountant, or notary.

17.2.5          Accessory uses or structures, and open use of land normally incidental to the permitted principal use of the premises, except as otherwise specified.

17.2.6          Cluster housing development.

17.2.7          Lots for conservation purposes which do not meet soils, minimum lot size and/or road frontage requirements. Such lots shall be subject to deed restrictions or conservation easements, granted to the Town of Weare or a non-profit conservation organization, which limit their use to conservation purposes. Right-of-way through such lots may be permitted provided the conservation value of the lot is not diminished.

**17.3**          **RURAL/AGRICULTURAL (RA) DISTRICT:** Permitted uses.

17.3.1          Churches, municipally owned and operated educational facilities, nursing homes, golf courses, or any municipally owned and operated facility or use.

17.3.2          Agriculture, including the grazing, care and keeping of such livestock as cows, horses, goats, pigs, and poultry as a gainful business.

17.3.3          Barns, sheds, or other major non-residential farm buildings and accessory

structures.

17.3.4     Forestry and growth, harvesting and storage of forest products, tree nursery, tree farms, orchards, and similar uses including green houses, and the sale of produce and products grown on the premises.

17.3.5     Single and two-family dwellings, attached garages, and other similar type structures, e.g. greenhouses, breezeways.

17.3.6     Home shop such as electrician, plumber, or similar tradesman shop which shall be shown to be of such a character as to not require outside storage visible to the surrounding properties and shall not be a source of nuisance to neighbors by reason of noise, dust, glare, traffic, vibration, and/or other disruptive influence.

17.3.7     Home based business or home occupations, such as, but not limited to, lawyer, doctor, realtor, accountant or notary. Also including but not limited to beauty shop, music teacher, tailor, or other personal services.

17.3.8     (Deleted at Town meeting – March 14, 2006)

17.3.9     Siting of individual manufactured housing units on individually owned lots.

17.3.10    Privately owned graveyards, burial sites and cemeteries. Permitted in the Rural Agricultural District only.

17.3.11    Lots for conservation purposes which do not meet soils, minimum lot size and/or road frontage requirements. Such lots shall be subject to deed restrictions or conservation easements, granted to the Town of Weare or a non-profit conservation organization, which limit their use to conservation purposes. Right-of-way through such lots may be permitted provided the conservation value of the lot is not diminished.

17.3.12    Kennels by conditional use permit. (Added 3-13-2017)

17.3.12.1  <u>CRITERIA FOR GRANTING A CONDITIONAL USE PERMIT</u>:   The Conditional Use Permit Application shall demonstrate that the project will (a) not result in reasonable noise levels at the applicant's property line, (b) will not result in any degradation of the quality of the groundwater and (c) will have no significant negative environmental impact to the abutting downstream properties. The Planning Board may impose such conditions on the project and/or use as it determines will promote the purposes of this article, and may require a performance guarantee or bond in an amount, and form acceptable to the Board be posted to ensure compliance with the terms and conditions of the conditional use permit.   (Added 3-13-2017)

17.3.12.2  <u>EXISTING NON-CONFORMING USES</u>:   Alteration or changes in the use of land and/or structures for existing non-conforming kennels may be permitted by the Planning Board as a conditional use permit provided that the Board determines that (1) there is no change in the nature and purpose of the original use; (2) the

23

proposed change or alteration will not have a substantially different effect on the neighborhood; and (3) the proposed change does not result in an increase in the level of non-conformity or, if it does, that any such increase in the level of non-conformity is offset by corresponding public benefits such as mitigation of some impact on adjacent properties or improvements in infrastructure that address health and/or safety concerns.  (Added 3-13-2017)

# ARTICLE 18

**18.1**     **SETBACKS/FRONTAGE/PARKING IN RESIDENTIAL AND RURAL/AGRICULTURAL DISTRICTS**

**18.2**     **SETBACKS AND FRONTAGE:** Includes single family and two-family dwellings, manufactured housing and all structures.

18.2.1     Frontage: All lots less than 10 acres in the Rural/Agricultural (RA) District must have a minimum of 250 feet of frontage, and all lots less than 10 acres in the Residential (R) District must have a minimum of 200 feet of frontage.  All lots of 10 acres or more must have a minimum of 50 feet of frontage on a paved Town road or, if on a gravel road, 250 feet if in the Rural/Agricultural (RA) District or 200 feet of frontage if in the Residential (R) District.  Where the frontage of a proposed lot can be measured on paved and gravel road surfaces, the paved surface frontage must be at least 250 feet if in the Rural/Agricultural (RA) District or 200 feet if in the Residential (R) District, and the driveway entrance must be on the paved surface in order to qualify for the minimum lot size as defined in Article 14.

18.2.2     Front Setback: 50 feet from the edge of the front property line.

18.2.3     Sidelines: 25 feet.

18.2.4     Distance from septic system to drinking well water 75 feet, except when a well and/or septic system is located within Soil Type Classification 1 (highly permeable soils), where the distance shall be not less than 125 feet.

18.2.5     Distance from septic system to surface waters and wetland: 75 feet.

18.2.6     The minimum distance from a well water supply to a septic system shall be at least 75 feet.  The minimum distance from a dug well water supply to jurisdictional wetlands shall be at least 75 feet. Replacement dug wells shall conform to this ordinance as nearly as practicable.  There is no requirement for drilled wells to jurisdictional wetlands.

18.2.7     The minimum distance from a building to jurisdictional wetlands shall be at least 50 feet.  Existing lots of record as of the date of the adoption of this ordinance shall be exempt from this requirement.

**18.3**        **PARKING: RESIDENTIAL (R) AND RURAL/AGRICULTURAL (RA) DISTRICTS.**

18.3.1        Off-street parking only in all cases.

18.3.2        Single family and two-family dwellings shall allow for two spaces per dwelling unit.

# ARTICLE 19

**19.1**        **SPECIAL EXCEPTIONS:** The following uses will be permitted by special exception in the Residential, Rural/ Agricultural, and Village Zoning Districts according to standards set forth in Article 6.1.4, Special Exceptions, except where indicated.

19.1.1        Essential public utility services such as transformer stations, substations, pumping stations, or telephone exchanges where such essential public utility services are for residential purposes only.

19.1.2        Multi-family housing, attached or unattached.   Not permitted in the Rural Agricultural District.

19.1.3        Seasonal homes, camps, or campgrounds, whether for private use or for rent. Not permitted in the Residential or Village Districts.  Motor Sport and Race Track Facilities are not permitted in the Residential, Village and Rural Agricultural District."

19.1.4        Bed and breakfast (Amended 3-7-2016)

19.1.5        Sawmills and planing mills. Not permitted in the Residential or Village Zoning Districts.

19.1.6        Commercial removal of sod, loam, clay, sand, or other types of soils or earth products: In addition to the other requirements of a special exception set forth in Article 6.1.4, Special Exceptions, a special exception may be granted if the Zoning Board of Adjustment further finds that the activity will be incidental to the further development of the surrounding property, as evidence by a completed application submitted to the Planning Board for subdivision or site plan review, will not create a hazardous or unsightly condition, and meets all other requirements of the State of New Hampshire and the Town of Weare Gravel Ordinance.  For the purposes of this Article, "incidental" shall mean that further development of the property cannot be conducted without the proposed commercial removal of earth products and that the commercial removal of earth products represents a minor, concurrent part of the development activity.

19.1.7        Food, produce or vegetable stands not to exceed five hundred (500) square feet in floor area.

19.1.8        Funeral homes, hospitals, private schools, and day care in excess of four children.

19.1.9        Private educational institutions allowed in Residential and Rural Agricultural Districts only.

19.1.10       One accessory attached dwelling unit shall be permitted to single family dwelling residence in the residential zone and the rural agricultural zone by special exception from the Zoning Board of Adjustment and with these further stipulations. (Amended 3-13-2017)

19.1.10.1     An accessory dwelling unit shall be clearly incidental to the primary use of the property for single dwelling, and such accessory living space shall not exceed seven hundred fifty feet, and not contain more than two bedrooms with maximum occupancy per bedroom of not more than two person per bedroom.  (Amended 3-13-2017)

19.1.10.2     An accessory dwelling unit shall either be constructed within or attached to a single dwelling. (Amended 3-13-2017)

19.1.10.3     At least one interior connecting door or other access for persons to pass between.

19.1.10.4     Septic system design/capacity shall be approved by the NH Department of Environmental Services.

19.1.10.5     No new entrance or exit to an accessory dwelling unit shall be constructed facing the front of the single-family dwelling. (Amended 3-13-2017)

19.1.10.6     Two parking spaces shall be provided for an accessory dwelling unit and no new curb cut from the street shall be constructed. (Amended 3-13-2017)

19.1.10.7     Exterior construction and material shall be uniform with the single dwelling.

19.1.10.8     Either the accessory dwelling unit or the principal dwelling unit shall be the principal residence and legal domicile of the owner of the property. (Added 3-13-2017)

# **ARTICLE 20**

**20.1**      **ESTABLISHMENT OF PRIVATELY OWNED GRAVEYARDS, BURIAL SITES AND CEMETERIES**

**20.2**      **PURPOSE:** To ensure that privately owned graveyards, burial sites and cemeteries are properly and permanently identified and that the placement of same shall not result in a threat to the public health and safety.

**20.3**      **LOCATION OF BURIAL SITE:** Privately owned graveyards, cemeteries or burial sites shall not be located closer than 100 feet from the right-of-way of any highway, street or road, or closer than 100 feet from an existing dwelling house or no closer than 50 feet from a known source of water, and the location of the site shall be recorded in the deed to the property upon transfer of said property to another person (source RSA 289:2-a).

**20.4**     **ESTABLISHMENT:** Any person wishing to establish a private cemetery, graveyard or burial site shall have the proposed site surveyed by a licensed land surveyor and shall submit that survey to the Planning Board for hearing and approval. Upon approval the site shall be bounded by a fence and gate.

**20.5**     **MAINTENANCE:** In order to ensure that the maintenance of said private cemetery, graveyard or burial site does not become the responsibility of the Town of Weare, it will be necessary for the individual establishing said site to place a deposit with the Trustees of Trust Funds an amount equal to the perpetual care amount required for the purchase of lots in the town owned cemeteries. The income from said perpetual care funds will be used for the permanent maintenance of the site.

# ARTICLE 21

**21.1**     **SIGNS AND SIGNING IN (R) AND (RA) DISTRICTS:** See Article 34.
(Amended 3-11-2008)

# ARTICLE 22

**22.1**     **VILLAGE DISTRICTS**

**22.2**     **PURPOSE:** To maintain the distinctive, small town characteristics of the Town of Weare and to recognize and protect areas of significant or unique historical, cultural and aesthetic value from encroachment by incompatible uses, architecturally or otherwise.

**22.3**     **DESIGNATED VILLAGE DISTRICTS**

22.3.1     Riverdale

22.3.2     Weare Center

22.3.3     Clinton Grove

22.3.4     Chase Village

22.3.5     Tavern Village

22.3.6     North Weare Village

**22.4**     **PERMITTED USES**

22.4.1     Single family dwellings and multi-family housing where it is contained within existing structures or in a new structure where the number of dwelling units does not exceed two (2).  New dwelling units of three (3) or more per building (multi-family) will require a special exception.

22.4.2     Light commercial uses such as those listed in Article 24.3.5, except laundromats and dry-cleaning facilities. Also permitted are offices, churches, schools, and the offices, meeting halls and facilities of non-profit institutions.

22.4.2.1    Within the Weare Center Village District, the maximum footprint of new commercial structures (structures not already existing within the Weare Center Village District) shall be 3,000 square feet. (Added 3-1-2008)

22.4.3    Mixed use of structures for commercial and residential use shall be permitted in the Weare Center Village District. (Added 3-11-2008)

24.4.4    Agriculture, but excluding the grazing, care or keeping of such livestock as cows, horses, goats, pigs and poultry as a gainful business. (Added 3-11-2008)

**22.5**    **AREA REQUIREMENTS:** The minimum lot size as set forth by the State of New Hampshire Water Supply and Pollution Control Division or other applicable regulatory agency, plus ten thousand (10,000) square feet; otherwise by Special Exception.

22.5.1    <u>Height Limitations</u>:  In the Weare Center Village District, no new structure shall exceed two- and one-half stories, with a maximum building height of 30 feet, as measured from the average grade on the side of the building facing any public street, otherwise by Special Exception.  (Added 3-11-2008)

**22.6**    **YARD REQUIREMENTS**

22.6.1    Each structure shall be set back at least twenty-five (25) feet from the front lot line, but not less than the setback of any existing building within two hundred (200) feet of the lot, otherwise by Special Exception.

22.6.1.1    In the Weare Center Village District, no building shall be closer to the street than any building on property abutting it on either side, and no farther from the street than the buildings on abutting properties on either side.  However, a Special Exception may be granted if such exception is consistent with the unique architectural and historic character of the Weare Center Village District such determination to be made by the Planning Board.  (Added 3-11-2008)

22.6.2    Each structure shall be set back at least twenty (20) feet from the side and rear lot lines, otherwise by Special Exception.

22.6.3    All non-residential uses shall provide adequate off-street parking. No parking is permitted within the front setback area or within five (5) feet of the property sideline.

22.6.3.1    In the Weare Center Village District, the requirements of 22.6.3 may be waived by the Planning Board if the applicant can demonstrate that that is adequate off-site parking available within 500 feet and that the property itself cannot support the required spaces without compromising the character of the Village District. (Added 3-11-2008)

22.6.4    <u>Frontage</u>: (Added 3-11-2008)

22.6.4.1    <u>Clinton Grove</u>:  Each lot in the Clinton Grove Village District shall have a minimum frontage of two hundred and fifty (250) feet. (Added 3-11-2008)

22.6.4.2       <u>Riverdale</u>**:**  Each lot in the Riverdale Village District shall have a minimum frontage of one hundred and fifty (150) feet. <small>(Added 3-11-2008)</small>

22.6.4.3       <u>Chase Village</u>**:**  Each lot in the Chase Village District shall have a minimum frontage of one hundred and fifty (150) feet. <small>(Added 3-11-2008)</small>

22.6.4.4       <u>Tavern Village</u>**:**  Each lot in the Tavern Village District shall have a minimum frontage of one hundred and fifty (150) feet. <small>(Added 3-11-2008)</small>

22.6.4.5       <u>North Weare Village</u>**:**  Each lot in the North Weare Village District shall have a minimum frontage of one hundred and fifty (150) feet. <small>(Added 3-11-2008)</small>

22.6.4.6       <u>Weare Center Village</u>**:**  In the Weare Center Village District, all proposed new lots shall have frontage on a town street or state highway sufficient to provide access for emergency services and public safety as determined by the Planning Board.  Road frontage shall be consistent with other properties in the Weare Center Village District, but not less than 50 feet. <small>(Added 3-11-2008)</small>

**22.7**        **SIGNS:** See Article 34 <small>(Amended 3-11-2008)</small>

**22.8**        **NON-PERMITTED USES:**  Air strips or heliports.  In the Weare Center Village District, drive through facilities shall <u>not</u> be permitted. <small>(Amended 3-11-2008)</small>

**22.9**        **ARCHITECTURAL DESIGN OF BUILDINGS:**  Compatible Architectural Styles – The exterior of all structures within the Designated Village Districts shall be architecturally compatible with the historic building details in those districts.  It is the responsibility of the property owner or their representative to demonstrate to the Planning Board, using Architectural drawings, photos, etc. how this will be accomplished.  Sides of structures, not directly visible from public roads will be allowed some leniency of these details or style, to be determined by the Planning Board on a case by case basis.

22.9.1         In the Weare Center Village District, to the extent reasonably practicable, structures built before 1930 shall be preserved and changes of use permitted in preference over the demolition of such structures and their replacement with new structures.  When new structures are proposed the Planning Board shall require architectural review by the Planning Board to provide that new structures are compatible with the character, design, materials, size, configuration and color of the existing structures in the Weare Center Village District. <small>(Added 3-11-2008)</small>

# <u>ARTICLE 23</u>

**23.1**        **RESIDENTIAL MANUFACTURED HOUSING DISTRICT**

**23.2**        **PURPOSE:** To provide for the location of Manufactured Housing Parks.

**23.3**        **PERMITTED USES**:  Manufacturing Housing Parks

**23.4**          **MANUFACTURED HOUSING PARKS:** Manufactured Housing Parks shall be subject to the following regulations:

23.4.1          Each individual manufactured house shall be located on a minimum lot size of ten thousand (10,000) square feet where centralized water and sewage systems are provided. An additional land requirement of five thousand (5,000) square feet per manufactured house shall be allowed for open space and to accommodate central sewage and water systems.

23.4.2          Internal roadways shall be well drained, hard surfaced, and maintained in good condition. Each manufactured house shall connect to an access roadway, which in turn connects with a street or highway.

23.4.3          Manufactured Housing Parks shall provide areas for the parking of motor vehicles. Such areas shall accommodate at least the number of vehicles equal to the number of manufactured home spaces provided in said Manufactured Housing Park.

23.4.4          The operator of each Manufactured Housing Park shall maintain a permanent register showing the following for each manufacture house in the park.
Date of Entry
Name - Owner of Manufactured House
Street, Town and State of Legal Residence
Name of State and Vehicle License Number, Make, Year and Model Serial Number of Manufactured House.

23.4.5          Manufactured Housing Parks shall be allowed to have central facility building constructed on the site when said construction conforms to the Building Code.

23.4.6          No manufactured housing unit shall be occupied prior to the issuance of an Occupancy Permit to ensure safe and useable water, sewerage and electric service to the unit which meets all State and Town building codes.

23.4.7          A site plan for the entire tract shall be prepared by a registered professional engineer or registered land surveyor. The site plan shall be submitted in accordance with the subdivision or site plan procedures for the Town of Weare and the location of parks and open space shall be shown on the plan.

# **ARTICLE 24**

**24.1**          **COMMERCIAL ZONING DISTRICT**

**24.2**          **PURPOSE:** The purpose of commercial districting in the Town of Weare is to encourage the diversification of the Town's economic base by promoting commercial endeavors to locate in Weare and thereby increasing the local services while making a valuable contribution to the Town's tax base.

**24.3**          **PERMITTED USES**

24.3.1          Any use permitted in the Residential (R) and Rural Agricultural (RA) Districts.

24.3.2      Essential public utility services such as transformer stations, sub-stations, pumping stations, or telephone exchanges.

24.3.3      Agriculture, but excluding the grazing, care and keeping of such livestock as cows, horses, goats, pigs, and poultry as a gainful business.

24.3.4      Boarding or rooming houses, hotels, tourist courts or homes including cabins and motels, and accessory structures. (Amended 3-7-2016)

24.3.5      Retail and service establishments, including but not limited to grocery, drug store, general merchandise, furniture, apparel and specialty goods, tobacco, newspapers, books, gifts, flowers, barber shop, beauty shop, shoe repair, laundry pickup agency, self-service laundromat, restaurants, indoor recreation facilities, and similar uses.

24.3.6      Office establishments.

24.3.7      Motor vehicle and equipment sales and service, excluding junkyards.

**24.4        SPECIAL EXCEPTIONS:** The following uses may be permitted by the Zoning Board of Adjustment if it finds that all of the requirements contained in Article 6.1.4, Special Exceptions, have been met and if the Zoning Board of Adjustment further finds that the specific site is an appropriate location for such use, and if in each case the proposed use has an adequate water supply and sewage systems, and meets all other applicable requirements of the State of New Hampshire and the Town of Weare.

24.4.1      Outdoor commercial recreational facilities.

24.4.2      Gasoline stations including facilities for minor repairs, but not requiring outdoor storage of unregistered or inoperative vehicles.

24.4.3      Commercial removal of loam, clay, sand, and gravel or other types of earth products.

24.4.4      Fuel storage and distribution centers.

24.4.5      Agriculture, including the grazing, care and keeping of such livestock as cows, horses, goats, pigs, and poultry as a gainful business.

**24.5        AREA AND FRONTAGE REQUIREMENTS**

24.5.1      The minimum lot size for any permitted commercial use shall be two (2) acres.

24.5.2      Each lot shall have a minimum frontage of two hundred (200) feet.

**24.6        YARD REQUIREMENTS**

24.6.1        Each structure shall be set back at least fifty (50) feet from the front lot line.

24.6.2        Each structure shall be set back at least thirty (30) feet from the side and rear property lines, except as hereinafter provided in Article 24, Section 7.

24.6.3        Not more than fifty percent (50%) of the area of any lot shall be occupied by any buildings or structure, except when authorized as a Special Exception by the Zoning Board of Adjustment.

24.6.4        Distance from septic system to drinking well water 75 feet, except when a well and/or septic system is located within Soil Type Classifications 1 (highly permeable soils), where the distance shall be not less than 125 feet.

24.6.5  Distance from septic system to surface waters and wetland:  75 feet.

**24.7        BUFFER STRIPS:** In a Commercial district, any new commercial activity shall provide for and maintain a strip of native plantings approved by the Planning Board, along property lines and boundaries, including road frontage that may be required to act as a visual screen and/or sound buffer as appropriate to the proposed development or activity.  The landscape plan will be shown to provide for a visually appealing green space that softens the view.

**24.8        OFF-STREET PARKING:** In a commercial District, ample parking spaces shall be provided on the premises to accommodate vehicles of customers, visitors and employees, and such spaces shall not be closer than the setbacks established in Sections 24.5 and 24.6 unless as a continuation of parking area on an adjoining lot, otherwise by Special Exception. Off-street parking shall be so designed as to require no backing into a public street and shall be so designed as to not impede access by any emergency vehicle.

**24.9        SIGNS:** See Article 34 (Amended 3-11-2008)

**24.10        NON-PERMITTED USES:**  Residential Homes

# **ARTICLE 25**

**25.1        INDUSTRIAL ZONING DISTRICT**

**25.2        PURPOSE:** The purpose of industrial districting in the Town of Weare is to foster the diversification of the Town's economic base by encouraging small-scale light service industries and light manufacturing firms to locate in Weare, and thereby increase the number of locally based jobs while making a valuable contribution to the Town's tax base.

**25.3        PERMITTED USES**

25.3.1        Light manufacturing.

25.3.2     Assembly of previously prepared materials.

25.3.3     Metal working

25.3.4     Equipment sales and service.

25.3.5     Creamery, bakery and soft drink bottling plants.

25.3.6     Distribution plants, service industries and parcel delivery.

25.3.7     Laboratories.

25.3.8     Any use permitted or as allowed as a Special Exception in Commercial District.

**25.4       NON-PERMITTED USES**

25.4.1     Manufacture of storage of Class A and B explosives, as defined in Department of Transportation Standard Reference Number 49CFR, in bulk quantities greater than twenty-five (25) pounds.

25.4.2     Fertilizer manufacture.

25.4.3     Glue manufacture.

25.4.4     Smelting of metallic ore.

25.4.5     Petroleum refining.

25.4.6     Manufacture or processing of acids and industrial solvents and cleaners.

25.4.7     Preparation of cement, gypsum, lime or plaster of paris.

25.4.8     Fat rendering in preparation of grease or tallow.
25.4.9     Animal reduction or garbage dumping.

25.4.10    Nuclear waste or nuclear waste by-products.

25.4.11    Residential Homes

**25.5       AREA AND FRONTAGE REQUIREMENTS**

25.5.1     The minimum lot size for any permitted industrial use shall be two (2) acres.

25.5.2     Each lot shall have a minimum frontage of two hundred (200) feet.

25.5.3     Distance from septic system to drinking well water 75 feet, except when a well and/or septic system is located within Soil Type Classifications 1 (highly permeable soils), where the distance shall be not less than 125 feet.

25.5.4  Distance from septic system to surface waters and wetland:  75 feet

**25.6**        **YARD REQUIREMENTS**

25.6.1        Each structure shall be set back at least fifty (50) feet from the front lot line.

25.6.2        Each structure shall be set back at least thirty (30) feet from the side and rear property lines, except as hereinafter provided in Section 7.

**25.7**        **BUFFER STRIPS:** In an Industrial District, any new commercial or new industrial activity adjoining an existing residential home at the effective date of this ordinance or land in a Residential District shall not locate within one hundred (100) feet of a property line or the boundary separating the two Districts, and shall provide for and maintain a strip of native plantings approved by the Planning Board sufficient to act as a visual screen and sound buffer as appropriate to the proposed development and/or activity along and within the buffer strip located along a property line or boundary if the adjoining land may be used for residential purposes.

**25.8**        **OFF-STREET PARKING:** In an Industrial District, ample parking spaces shall be provided on the premises to accommodate vehicles of customers, visitors and employees, and such spaces shall not be closer than the setbacks established in Sections 5 and 6 unless as a continuation of a parking area on an adjoining lot, and shall be so designed as to require no backing into a public street and shall be so designed as to not impede access by an emergency vehicle.

**25.9**        **SIGNS:** See Article 34 (Amended 3-11-2008)

# **ARTICLE 26**

**26.1**        **MULTI-FAMILY HOUSING**

**26.2**        **PURPOSE AND INTENT:** The provisions relating to multi-family housing are established to preserve open space and promote affordable housing and efficient use of land utilities.

26.3        In addition to other requirements of a Special Exception contained in Article 6.1.4, Special Exceptions, the following standards shall apply to all multi-family housing seeking a special exception pursuant to Article 19.1.2.

26.3.1        Each dwelling unit shall comply with minimum lot size in Table 1-1.

26.3.2        Multi-family to consist of no more than eight (8) dwelling units per building, and not more than three (3) stories of heated living space.

26.3.3        Any internal roads or streets serving the multi-family structure shall be built to State of New Hampshire and Town of Weare specifications.

26.3.4        Any multi-family structure shall comply with the following set back requirements.
            1.        Setback - fifty (50) feet from right-of-way.

2.  Setback - one hundred (100) feet between buildings for fire protection.
3.  Frontage - minimum of two hundred (200) feet of frontage shall be required on a Class V Town Road.

26.3.5  All parking for multi-family housing shall be provided in paved off-street locations at a ratio of not less than two and a half (2.5) parking spaces per dwelling unit.

26.3.6  No dwelling unit to contain more than three (3) bedrooms.

26.3.7  Buffer strips: Multi-family housing shall not locate within one hundred (100) feet of the property line of any other residential property and shall provide and maintain a strip of nativized plantings along and within the buffer strip.

# ARTICLE 27

**27.1**    **CLUSTER HOUSING**

**27.2**    **PURPOSE AND INTENT:** The purpose of cluster development, and to which purpose any such development must adhere, is the following:

27.2.1  To promote the conservation of natural resources and the natural environment and the development of community uses in harmony with the natural features of the land.

27.2.2  To establish living areas within the Town that provide for a balance of community need such as diversity of housing opportunities, adequate recreation and open space areas, easy accessibility to these and other community facilities, and pedestrian and vehicular safety.  To conserve important wildlife habitat, wildlife travel corridors, productive forests, important agricultural soils, protect surface and ground water quality, and preserve scenic views and vistas.

27.2.3  To provide for a diversity of housing opportunities through an efficient use of land, streets, and utility systems.

27.2.4  To stimulate new approaches to community development that achieves the above purposes and intent.

27.2.5  For the purposes of this article "community" is defined as the interacting population of various locations and subdivisions intended to represent the Town of Weare and its citizens.

**27.3**    **REQUIREMENTS**

27.3.1  Cluster developments may be permitted or required in the Residential (R) and Rural Agricultural (RA) Districts, including the Rural Conservation Overlay (RC) District.   After consultation and recommendation by the Conservation Commission, the Planning Board may require that a subdivision be proposed as a cluster development.

35

27.3.2        The tract of single or consolidated ownership at the time of application shall be at least 15 acres in size and shall be subject to approval by the Planning Board whether or not the land is to be subdivided; otherwise by Special Exception.

27.3.3        The maximum number of dwelling units per cluster development shall be determined by the maximum number of conventional lots that could be subdivided in accordance with all other requirements in this ordinance and the Town of Weare Subdivision Regulations for conventional subdivision.   The applicant shall present a yield plan to demonstrate the number of conventional lots achievable.   A 20% density bonus, rounded to the nearest whole number, will be allowed for cluster developments in the Rural/Agricultural (RA) District.   No such density bonus will be allowed for cluster developments in the Rural Conservation Overlay (RC) district.   (Amended 3-11-2008)

27.3.4        Cluster housing to consist of no more than one (1) single dwelling unit per building.

27.3.5        (Deleted 3-11-2008)

27.3.6        Lots fronting on an existing town road shall have the same side setbacks as the zoning district, otherwise the setbacks are as follows:

Within cluster, the following setbacks are required:
1.        Set back – twenty-five (25) feet from right-of-way.
2.        Setback – twenty-five (25) feet from side lot lines and fifty (50) feet between buildings for fire and emergency vehicle access.
3.        Frontage - minimum of twenty-five (25) feet of frontage on a proposed street shall be required per dwelling unit.
4.        Lots fronting on an existing town street shall have the same frontage as the zoning district, except back lots with the buildable area 150 feet from the right-of-way may reduce the frontage to twenty-five (25) feet; but back lots cannot have adjacent frontages.   One back lot for each front lot. (Amended 3-13-2012)

27.3.7        All parking within the cluster development shall be provided in paved off-street locations at a ratio of not less than two (2) spaces per dwelling unit

27.3.8        The minimum lot size in a cluster development shall be determined by the State of New Hampshire residential lot standards when dwellings will have individual wells and septic contained within each lot.

27.3.9        Buffer strips: Cluster housing including all dwellings, garages, sheds, roadways, driveways, fuel tanks, vehicles, playground and other appurtenant structures and buildings shall not locate within fifty (50) feet of the property not contained within the cluster and shall provide and maintain a twenty-five (25) foot strip of native plantings along and within the buffer strip.   Building lots within a cluster development may include a portion of the buffer strip within the lots provided that each lot containing a portion of the buffer shall have a deeded protective covenant, enforceable by the Town, describing the buffer area as a protected "no

disturbance" zone.  The dimensions of buffer strips shall be doubled where cluster housing abuts a Historical overlay district.  Buffer strips contained within lots shall not be considered when calculating the required open space in Article 27.3.11.  An alternative buffer management plan may be recommended by the Conservation Commission and approved by the Planning Board.   Any buffer strip included within a building lot shall have the buffer strip boundary blazed and have signs, approved by the Planning Board, installed at 50-foot intervals.  The signs can be attached to trees or attached to a metal post and shall be a minimum of 4 feet above ground.  The installation is to be completed by a New Hampshire Licensed Land Surveyor prior to the issuance of a building permit.  (Amended 3-7-16)

27.3.10     The development shall be served by central sewerage and central wells where practicable.  Where cluster development lot sizes can meet minimum NH Water Supply and Pollution Control Division standards individual septic systems and wells may be allowed.

27.3.11     At least fifty percent (50%) of total tract area exclusive of public right-of-ways (and buffer strips within lots) shall be set aside as open space covenanted to be maintained as permanent "conservation land" in private, public, cooperative or non-profit ownership. Open space within a cluster development shall be protected by permanent conservation easements held by the town, a qualified conservation organization; the Town of Weare in fee ownership subject to the restriction that the Town retain the land as open space for purposes described in this Article.  Such land shall be restricted to allowed open space uses.  Agricultural uses allowed in the zoning district containing the cluster development shall be considered allowed open space uses.  Such land shall have suitable public access, unless the Planning Board determines such access is not in the public interest.  The boundaries of the open space shall be monumented, per Section 8.6 of the Town of Weare Subdivision Regulations, as may be amended.  In addition, the boundaries shall be blazed or in the absence of trees signs shall be attached to metal posts and shall be a minimum of 4 feet above ground.  A certification by a New Hampshire Licensed Land Surveyor shall be on the Subdivision Plan stating that the blazing and/or signage has been completed.  (Amended 3-7-2016)

The design and layout of all cluster developments should protect as open space to the greatest extent possible those portions of the original tract having the highest agricultural, conservation, recreational, historical, and scenic values.  If the tract contains:

(1)     any farmland that is being used for agricultural purposes (excluding forestry) or
(2)     any prime farmland soil or
(3)     farmland soils of local importance or
(4)     farmland soils of statewide importance, as defined in New Hampshire NRCS (Natural Resources Conservation Services) County Soil Survey and presented through NRCS NH soils and NH Granit Data Mapper, or as verified by a site specific soil survey, such farmland and/or soils shall be included in the open space unless the Planning Board determines that one or more of the factors listed below is of greatest importance; provided,

however, that if the area of such farmland and/or soils in the aggregate exceeds the open space area, priority for inclusion in open space shall be given to such farmland and/or soils in the order listed above.

Other factors for determining the conservation value shall include but not be limited to:
Wetlands
Riparian corridors
View sheds
Abutting tracts of open space, conservation land, or undeveloped land
Recreational value
Steep slopes
Historical Sites and Features
High productivity forest soils
Important wildlife habitat and wildlife travel corridors
Unique or unusual ecological communities or natural features
Visual impact on the rural character of the Town (Amended 3-10-2009)

27.3.12   A site plan for the entire tract shall be prepared by a registered professional engineer or registered land surveyor. The site plan shall be submitted in accordance with the regulations for the Town of Weare and the location of parks and open space shall be shown on the plan.

27.3.13   A performance bond and other legal data shall be submitted as required by the Planning Board to insure the completion of streets, buffers, and amenities in accordance with the accepted plans and the regulations of the Town of Weare as adopted or hereinafter amended.

27.3.14   The Planning Board shall adopt such procedures as part of the regulations as it may deem necessary in order to insure sufficient public review of any cluster proposal and to ensure compliance with these and other town ordinances and regulations.

# **ARTICLE 28**

**28.1**   **WETLANDS ZONE LAND PLANNING ORDINANCE**

**28.2**   **PURPOSE AND INTENT:** The purpose and intent of this ordinance is to protect the public health, safety and general welfare by controlling and guiding the use of land areas which have been found to be subjected to high water tables over extended periods of time. It is intended that this ordinance shall:

28.2.1   Prevent the development of structures and land uses on naturally occurring wetlands which could contribute to pollution of surface and ground water by sewage or toxic substances.

28.2.2   Prevent the destruction of, or significant changes to, natural wetlands which provide flood protection.

28.2.3      Protect unique and unusual natural areas.

28.2.4      Protect wildlife habitats, travel ways, and maintain ecological balances.

28.2.5      Protect potential water supplies and existing aquifers and aquifer recharge areas.

28.2.6      Prevent expenditure of town funds for the purposes of providing and/or maintaining essential services and utilities which might be required as a result of misuse or abuse of wetlands.

28.2.7      Encourage those low-intensity uses that can be harmoniously, appropriately and safely located close to wetlands.

**28.3**      **WETLANDS DEFINED:** Those areas that are inundated or saturated by surface or groundwater at a frequency and duration sufficient to support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs and similar areas. (EPA, 40 CFR 230.3 and CE, 33 CFR)

**28.4**      **EXAMPLES OF WETLANDS:** The wetland zone shall include all lands deemed as Jurisdictional Wetlands by the New Hampshire Wetlands Bureau under the authority granted to them by Statute (RSA 482-A), and as more particularly described in the New Hampshire Wetlands Bureau Code of Administrative Rules Chapter WT 100 through WT 800.

**28.5**      **WETLAND ZONE BOUNDARIES:** Wetland Zone Boundaries shall be delineated on the basis of hydrophytic vegetation, hydric soils, and wetlands hydrology, in accordance with the techniques outlined in the Corps of Engineers Wetlands Delineation Manual, Technical Report Y-87-1, dated January 1987, otherwise referred to as the Federal Manual for Delineating Jurisdictional Wetlands.

28.5.1      <u>Disputed Boundaries</u>**:** In cases where disputes arise regarding location of wetland zone boundaries, a certified wetland scientist shall delineate wetland boundaries in the field at the applicant's expense and those lines shall be accurately depicted on all plan submitted.

28.5.2      <u>Repealed per vote 1995 Town Meeting</u>

28.5.3      <u>Wetlands Incorrectly Delineated:</u> When a plan is proposed for development in an area which may involve wetlands, it is the responsibility of the applicant to indicate on all maps those areas which meet the definition of the Wetland District. In the event that an area is incorrectly designated as being wetland, and evidence to that effect is satisfactorily presented to the Planning Board, the restrictions contained in this Section shall not apply. Conversely, in the event an area is incorrectly designated as not being a wetland to the Planning Board, the restrictions contained in this section shall apply. Such evidence may be obtained by adequate on-site investigation and analysis conducted by a qualified

professional, at applicant's expense.

28.5.4     Relation to Other Zones: Where the Wetlands Zone is superimposed over current town maps, or land planning maps of the future, the more restrictive regulations shall apply.

**28.6**     **PERMITTED USES:** In designated wetland areas, permitted uses are any uses that are compatible with the intent of this Ordinance and do not involve significant alteration of the wetland. Such uses include:

28.6.1     Forestry-tree farming, using best management practices in order to protect streams from damage and to prevent erosion or sedimentation.

28.6.2     Cultivation and harvesting of crops according to recognized soil conservation practices including the protection of wetlands from pollution caused by fertilizers, pesticides and herbicides used in such cultivation.

28.6.3     Wildlife refuges and wildlife travel corridors.

28.6.4     Parks and recreation uses consistent with the purpose and intent of this regulation.

28.6.5     Conservation areas and nature trails.

28.6.6     Open spaces as permitted or required by subdivision regulations or zoning ordinances, if any.

28.6.7     The undertaking of a use not otherwise permitted above in the Wetlands Zone may be approved if it can be shown that such proposed use is not in conflict with any and all of the purposes and intentions listed in Section 28.2 of this Article and does not create a substantial impact to the Wetlands Zone as determined by the Planning Board and Conservation Commission. Otherwise, see Article 28.7, Special Exceptions.

28.7     Any necessary Federal and State wetlands permits must be obtained for any street, road and other access ways and utility right-of-way easements, including power lines and pipe lines, if essential to the productive use of the land and if so located and constructed as to minimize any detrimental impact of such uses upon and within the Wetlands Zone.

28.7.1     Dredging and filling. If allowed, all necessary federal, state and Town of Weare permits will be required. Failure to obtain all necessary permits will result in a fine of two hundred and seventy-five dollars ($275) per day for each day of violation.

**28.8**     **SETBACKS:**   All buildings shall be a minimum of 50 feet from any jurisdictional wetland boundary.  Existing lots of record as of the date of the adoption of this ordinance shall be exempt from this requirement.

**28.9**       **BUFFERS:**  A buffer of native vegetation with no ground disturbance allowed except for planting shall be maintained within 25 feet of all jurisdictional wetlands. In forested areas no more than 50 percent of the basal area shall be removed in any 10-year period.

28.9.1       Exceptions:   Buffer distances are not required within the right of way for any proposed Class V or higher road or any related Class V road construction and/or maintenance activities.  This section does not apply to any forest management or agricultural activity.

# ARTICLE 29

**29.1**       **AQUIFER PROTECTION ORDINANCE** (Adopted March 2011)

**29.2**       **PURPOSE:** Pursuant to RSA 674:16 - 674:21, the Town of Weare adopts an Aquifer Protection Ordinance and accompanying regulations to help ensure a quality future for the people as set forth in the Master Plan. The Town believes that an adequate water supply is indispensable to the future well-being, health, welfare, and safety of its citizens. Such an adequate supply of quality water is also essential to the maintenance of the existing natural environment of the Town, an environment the Town wishes to protect as essential to its overall goals and objectives. Since the water resources are under a constantly increasing demand for new and/or competing uses, and since the resources are under an ever-increasing potential for contamination, the Town declares such water resources invaluable. These resources should be protected, conserved and managed in the interests of present and future generations. Therefore, the purposes of this Aquifer Protection Ordinance are:

29.2.1       To protect the public health and general welfare of the citizens of Weare.

29.2.2       To protect, preserve and maintain the existing and potential groundwater supplies from adverse development or unwise land use practices.

29.2.3       To promote future growth and development of Weare, in accordance with the Master Plan, by ensuring the future availability of clean water for drinking and all domestic uses, plus, having available water in quantity for the Town's commercial and/or industrial future requirements.

29.2.4       To encourage uses that can appropriately and safely be located within the direct and indirect recharge areas of the aquifers.

**29.3**       **LOCATION:** The Aquifer Protection Zone is identified as those areas appearing on the map entitled "Town of Weare Aquifer Transmissivity", dated June 2009 as provided within the Town of Weare Source Water Protection Plan.  This aquifer transmissivity map is based upon the stratified drift aquifer data available on NH GRANIT.  This transmissivity data was automated from maps generated as part of a larger study of groundwater resources in the State and is based on a study conducted under a cooperative agreement between the U.S. Geological Survey, Pembroke, NH and the NH Department of Environmental Services, Water

Resources Division.  From time to time, this data may be amended or superseded by the U.S. Geological Survey and the NH Department of Environmental Services, or by the Planning Board as provided herein.

AND:

The Aquifer Protection Zone also includes the NH DES designated Wellhead Protection Areas as shown on the map entitled, "Town of Weare Wellhead Protection Areas", dated June 2009 included within the Town of Weare Source Water Protection Plan on file with the Planning Board Office and as may be amended from time to time by the N.H. Department of Environmental Services, or by the Planning Board a provided herein.  (Amended 3/20/14)

29.4     **RECHARGE AREAS:** For the purpose of this Ordinance, the Direct Recharge area for the U.S.G.S identified aquifers is considered to be excessively well-drained soils directly over the aquifer. No primary or Indirect Recharge areas have been identified at the time of enactment and are not considered a part of this ordinance.

29.5     **DEFINITIONS:**

Aquifer: A geologic formation composed of rock, sand or gravel that contains significant amounts of potentially recoverable water.  (Added 3-20-2014)

Bulk Sale: Removal and sale of groundwater.

Greenyard: A junkyard which has been certified by the NH DES as a Green Yards under Phase II:  Compliance Assurance and Certification component of the NH DES Green Yards Program.  (Added 3-20-2014)

Groundwater: Subsurface water that occurs beneath the water table in soils and geologic formations.  (Added 3-20-2014)

Groundwater Mining:  Water being withdrawn at a rate exceeding the rate of recharge.

Groundwater Recharge Areas: Those primary, direct and indirect areas from which water is added to the aquifers by the natural processes of infiltration and precipitation.
Impervious: Not readily permitting the infiltration of water.  (Added 3-20-2014)

Impervious Surface: A surface through which regulated substances cannot pass when spilled.  Impervious surfaces include concrete unless unsealed cracks or holes are present.  Asphalt; earthen, wooden, or gravel surfaces; or other surfaces which could react with or dissolve when in contact with the substances stored on them are not considered impervious surfaces.  (Added 3-20-2014)

 Junkyard: An establishment or place of business which is maintained, operated, or used for storing, keeping, buying, or selling junk (ex. Such as scrap metal, used

appliances), or for the maintenance or operation of an automotive recycling yard, and includes garbage dumps and sanitary landfills.   The word does not include any motor vehicle dealers registered with the director of motor vehicles under RSA 261:104 and controlled under RSA 236:126.  (Added 3-20-2014)

LEACHABLE WASTES: Waste materials, including solid wastes, sludge and agricultural wastes that are capable of releasing contaminants to the surrounding environment.

MINING: The removal of geologic materials such as topsoil, sand and gravel, metallic ores, or bedrock to be crushed or used as building stone.

NON-CONFORMING USES: Any lawful use of building, structures, premises, land or parts thereof existing as of the effective date of this Ordinance, or amendment thereto, and not in conformance with the provisions of this Ordinance, shall be considered to be a non-conforming use.

OUTDOOR STORAGE:  Storage of materials where they are not protected from the elements by a roof, walls, and a floor with an impervious surface.  (Added 3/20/14)

POSITIVE LIMITING BARRIER (PLB):  A PLB is a depression (e.g. groove) in the surface of an otherwise level impervious area designed to impede the flow and contain spilled substances within the perimeter of the impervious area.  PLBs are typically constructed and maintained to contain small spills or releases (five to 15 gallons).  (Added 3-20-2014)

PUBLIC WATER SYSTEM:  A system for the provision to the public of piped water for human consumption, if such system has at least 15 service connections or regularly serves an average of at least 25 individuals daily at least 60 days out of the year [New Hampshire Administration Rule Env-Ws 302.02 (bg) and RSA 485:I-aXV].  (Added 3-20-2014)

RECHARGE AREAS: Any land surface from which groundwater recharge occurs.

REGULATED SUBSTANCE:  Petroleum, petroleum products and substances listed under 40 CFR 302.4, 7-1-90 Edition, or current edition [US Code of Federal Regulations], excluding the following substances:  ammonia, sodium hypochlorite, sodium hydroxide, acetic acid, sulfuric acid, potassium hydroxide, potassium permanganate and propane and other liquefied fuels which exist as gases at normal atmospheric temperature and pressure. Copies of 40 CFR 302.4, 7-1-90 Edition, or current edition, are available on line at the Environmental Protection Agency (EPA) website or in the Planning Board Office.  (Added 3-20-2014)

SANITARY PROTECTIVE RADIUS:  The area around a well that must be maintained in its natural state as required by Env-Ws 378 or 379 (for community water systems) and Env-Ws 372.13 (for other public water systems).  (Added 3-20-2014)

SECONDARY CONTAINMENT:  A structure such as a berm or dike with an impervious surface which is adequate to hold at least 110% of the volume of the largest regulated-substances container that will be stored there.  (Added 3-20-2014)

SNOW DUMP: For the purposes of this ordinance, a location where snow which is cleared from roadways and/or motor vehicle parking areas is placed for disposal.  (Added 3-20-2014)

SOLID WASTE: Any discarded or abandoned material including refuse, putrescible materials, septage, or sludge, as defined by New Hampshire Solid Waste Rules HE-P 1901.03. Solid waste includes solids, liquids, semi-solids, or waste containing gaseous material resulting from residential, industrial, commercial, mining, or agricultural operations, or waste from community activity or waste from educational institutions.

STRATIFIED-DRIFT AQUIFER: A geologic formation of predominantly well sorted sediment deposited by or in bodies of glacial melt water, including gravel, sand, silt, or clay, which contains sufficient saturated permeable material to yield significant quantities of water to wells.  (Added 3-20-2014)

STRUCTURE: Anything constructed or erected, except a boundary wall or fence, the use of which requires location on the ground or attachment to something on the ground. For the purposes of this Ordinance, buildings are structures.

SURFACE WATER:  Streams, lakes, ponds and tidal waters, including marshes, water courses and other bodies of water, natural or artificial.  (Added 3-20-2014)

TOXIC OR HAZARDOUS MATERIALS: Any substance or mixture of such physical, chemical, or infectious characteristics as to pose a significant, actual or potential hazard to water supplies, or other hazard to human health, if such substance or mixture were discharged to land or waters of this Town. Toxic or hazardous materials include, without limitation, volatile organic chemicals, petroleum products, heavy metals, radioactive or infectious wastes, acids and alkalis, asphalt and roofing tars, and include products such as pesticides, herbicides, solvents and thinners, and such other substances as defined in New Hampshire Water Supply and Pollution Control Rules, Section Ws 410.04(4), in New Hampshire Solid Waste Rules He-P 1901.03(v), and in the Code of Federal Regulations 40 CFR 261. Wastes generated by the following commercial activities are presumed to be toxic or hazardous, unless and except to the extent that anyone engaging in such an activity can demonstrate the contrary to the satisfaction of the Planning Board:

- Chemical and bacteriological laboratory operation, including laboratory operations in educational institution.
- Dry cleaning and laundries.
- Electronic circuit manufacturing.
- Metal plating, finishing and polishing.
- Painting, wood preserving and furniture stripping.
- Pesticide and herbicide application.

■ Photographic and printing processes.

WELLHEAD PROTECTION AREA:   The surface and subsurface area surrounding a water well or well field supplying a community public water system, through which contaminants are reasonably likely to move toward and reach such water well or well field.  [RSA 485-C:2 Definitions] (Added 3-20-2014)

**29.6**     **APPEALS**: Where bounds of the identified aquifer areas, as delineated, are in doubt or in dispute, any landowner aggrieved by such delineation may appeal the boundary location to the Planning Board. Upon receipt of such appeal, the Planning Board shall suspend further action on development plans related to the area under appeal and engage, at the landowner's expense, a qualified hydro geologist to prepare a report determining the proper location and extent of the aquifer area(s) relative to the property in question. The aquifer map shall be modified, if need be, by such determination subject to review and approval by the Planning Board.

**29.7**     **USE REGULATIONS**

29.7.1     For minimum lot size refer to lot sizes for Residential, Rural Agricultural, Commercial and Industrial.

29.7.2     **MAXIMUM LOT COVERAGE**: Within the Aquifer Protection Zone, no more than 10% of a single lot, including the portion of any new street abutting the lot, may be rendered impervious to infiltration. Maximum lot coverage may be increased through the issuance of a Conditional Use Permit.  (Added 3-20-2014)

**29.8**     **PROHIBITED USES**: The following uses are prohibited in the Aquifer Protection Zone except where permitted to continue as a non-conforming use.

29.8.1     Disposal of solid waste other than brush.

29.8.2     The siting or operation of a hazardous waste disposal facility as defined under RSA 147-A.

29.8.3     Development and operation of a petroleum bulk plant or terminal. (Added 3-20-2014)

29.8.4     Industrial uses which discharge processed waters and the siting or operation of a wastewater or septage lagoon.  (Added 3-20-2014)

29.8.5     Subsurface storage of petroleum and other refined petroleum products.

29.8.6     Industrial uses which discharge processed waters.

29.8.7     Outdoor storage of road salt or other de-icing chemicals.  (Amended 3-20-2014)

29.8.8     Dumping of snow containing de-icing chemicals.

29.8.9     Storage of unregistered junk automobile, junk and salvage yards, unless such

facility is certified by the NH DES as a Green Yards under the Phase II: Compliance Assurance and Certification component of the NH DES Green Yards Program.  (Amended 3-20-2014)

29.8.10    Waste injection wells.

29.8.11    The siting or operation of a solid waste landfill.  (Added 3-20-2014)

29.8.12    The development or operation of a snow dump.  (Added 3-20-2014)

**29.9    PERMITTED USES**:  All uses permitted by right or allowed by Special Exception or Conditional Use in the underlying district are permitted in the Aquifer Protection Zone unless they are Prohibited Uses.  All uses must comply with the Performance Standards, Section 29.11 of this Ordinance.  (Amended 3-20-2014)

**29.10    EXEMPTIONS**:  The following uses and activities are exempt from the specified provisions of this ordinance as long as they are in compliance with all applicable local, state and federal requirements: (Amended 3-20-2014)

29.10.1    Single and two-family residential development.

29.10.2    Activities designed for conservation of soil, water, plants and wildlife.

29.10.3    Outdoor recreation, nature study, boating, fishing and hunting and other activities directly associated with the conservation of wildlife.

29.10.4    Normal operation and maintenance of existing water bodies and dams, splash boards and other water control, supply and conservation devices.

29.10.5    Foot, bicycle, horse paths, ski trails and bridges.

29.10.6    Maintenance, repair of any existing structure, providing there is no increase in the impervious surface area above the limit established by this Ordinance.  (Amended 3/20/14)

29.10.7    Farming, gardening, nursery, forestry, harvesting and grazing provided that fertilizers, herbicides, pesticides, manure and other leachables are used appropriately at levels that will not cause groundwater contamination. Materials will be stored appropriately.  (Amended 3-20-2014)

29.10.8    Maintenance and repair of any existing structure.

**29.11    PERFORMANCE STANDARDS**: (Added 3-20-2014)
The following Performance Standards apply to all uses in the Aquifer Protection Zone unless Exempt under Section 29.10 of this ordinance.  The Planning Board may, at its' discretion, require a performance guarantee or bond, in an amount and with surety conditions satisfactory to the Board, to be posted to ensure completion

of construction of any facilities required for compliance with the Performance Standards.

A.   Any use requiring the storage, handling, and use of regulated substances in quantities exceeding 100 gallons or 800 pounds dry weight at any one time, are required to have in place an adequate plan to:  prevent, contain, and minimize releases from catastrophic events such as spills or fires which may cause large releases or regulated substances.  Such plan shall be reviewed and approved by the Fire Chief, Health Officer and Emergency Management Director;

B.   Any use that will render impervious more than 10% or 2,500 square feet of any lot whichever is greater, a storm water management plan shall be prepared which the planning board determines is consistent with <u>New Hampshire Storm Water Manual Volumes 1-3, December 2008, NH Department of Environmental Services and any subsequent revisions</u>.  Such plan shall demonstrate that the use will minimize the release of regulated substances into storm water;

C.   Animal manures, fertilizers, and compost must be stored in accordance with Manual of Best Management Practices for Agriculture in New Hampshire, NH Department of Agriculture, Markets, and Fod, July 2008, and any subsequent revisions;

D.   All regulated substances stored in containers with a capacity of five gallons or more must be stored in product-tight containers on an impervious surface designed and maintained to prevent flow to exposed soils, floor drains, and outside drains;

E.   Facilities where regulated substances are stored must be secured against unauthorized entry by means of a door and/or gate that is locked when authorized personnel are not present and must be inspected weekly by the facility owner;

F.   Outdoor storage areas for regulated substances, associated material or waste must be protected from exposure to precipitation and must be located at least 50 feet from surface water or storm drains, at least 75 feet from private wells, and outside the sanitary protective radius of wells used by public water systems;

G.   Secondary containment must be provided for outdoor storage of regulated substances.  Regulated substances stored in containers must include a cover to minimize accumulation of water in the containment area;

H.   Blasting activities shall be planned and conducted to minimize groundwater contamination.   Excavation activities should be planned and conducted to minimize adverse impacts to hydrology and the dewatering of nearby drinking water supply wells.

I.  All transfers of petroleum from delivery trucks and storage containers over five gallons in capacity shall be conducted over an impervious surface having a positive limiting barrier at its perimeter.

47

**29.12**      **SPECIAL EXCEPTIONS**: The Zoning Board of Adjustment may grant a Special Exception for those uses otherwise permitted in the underlying zoning district only if written findings of fact are made that all of the following are true:

29.12.1      The proposed use will NOT detrimentally affect the quality of the groundwater contained in any aquifer by directly contributing to pollution or by increasing the long-term susceptibility of any aquifer to potential pollutants.

29.12.2      The proposed use will not cause a significant reduction in the long-term volume of water contained in any aquifer or in the storage capacity of any aquifer.

29.12.3      The proposed use will discharge no waste water on site other than that typically discharged by domestic waste water disposal system and will not involve on-site disposal of toxic or hazardous wastes as here defined.

29.12.4      The proposed use complies with all other applicable sections of this Ordinance.

29.12.5      The Zoning Board of Adjustment may require that the applicant provide data or reports prepared by a registered professional engineer or qualified registered professional engineer or qualified groundwater consultant to assess any potential damage to the aquifer that may result from the proposed use. The Zoning Board of Adjustment shall engage such professional assistance as it requires to adequately evaluate such reports and to evaluate, in general, the proposed use in light of the above criteria, at applicant's expense.

**29.13**      **CONDITIONAL USES**: A Conditional Use Permit is required for the following uses. In granting such permit, the Planning Board must first determine that the proposed use is not a prohibited use and will be in the compliance with the Performance Standards, Section 29.11 of this Ordinance.  (Added 3/20/14)

29.13.1      The excavation of earth products providing such excavation does not go lower than four (4) feet above the water table.

29.13.2      Construction of ponds subject to site plan review.

29.13.3      The development or operation of gasoline stations.  (Added 3-20-2014)

29.13.4      The siting or operation of Green Yards as certified by the NH DES under the Phase II: Compliance Assurance and Certification component of the NH DES Green Yards Program.  (Added 3-20-2014)

29.13.5      The siting or operation of a commercial compost facility.  (Added 3-20-2014)

29.13.6      The siting or operation of a commercial car wash. The facility must be designed and operated as a closed-loop system.  (Added 3-20-2014)

29.13.7      Any activities that involve blasting of bedrock.  (Added 3-20-2014)

29.13.8      **CRITERIA FOR GRANTING A CONDITIONAL USE PERMIT:**  More than 10% of a single lot may be rendered impervious to infiltration if the applicant demonstrates that the result of the project and/or use (a) will provide a greater rate of infiltration than the 10% impervious, (b) will not result in any degradation of the quality of the groundwater and (c) will have no significant negative environmental impact to abutting or downstream properties and/or hydrologically-connected water resources.  The Planning Board may impose such conditions on the project and/or use as it determines will promote the purposes of this article, and may require a performance guarantee or bond in an amount, not to exceed 1.5 times the cost, and form acceptable to the Board be posted to ensure compliance with the terms and conditions of the conditional use permit.  Prior to making a decision on any conditional use permit application, the Planning Board will afford the Conservation Commission an opportunity to review and comment on the application.  (Added 3-10-2015)

**29.14**      **SEPTIC SYSTEM DESIGN AND INSTALLATION**: In addition to meeting all local and state septic system citing requirements, all new waste water disposal systems installed in the Aquifer Zone shall be designed by a licensed septic system designer and approved by the Code Enforcement Officer.  (Amended 3-20-2014)

**29.15**      **ADDITIONAL GUIDELINES**: Except for single family and two-family dwellings, the following guidelines shall be observed within the Aquifer Protection Zones.

29.15.1      <u>Safeguards</u>: Provision shall be made to protect against toxic or hazardous materials discharge or loss resulting from corrosion, accidental damage, spillage, or vandalism through measures such as: spill control provisions in the vicinity of chemical or fuel delivery points, secured storage areas for toxic or hazardous materials, and indoor storage provisions for corrodible or dissolvable materials. For operations which allow the evaporation of toxic or hazardous materials into the interiors of any structure, a closed vapor recovery system shall be provided for each such structure to prevent discharge of contaminated condensate into the groundwater.

29.15.2      <u>Location</u>: Where the premises are partially outside the Aquifer Protection Overlay Zone, potential pollution sources such as on-site waste disposal systems shall be located outside the Zone, unless the location is approved by the Planning Board. (Amended 3-20-2014)

29.15.3      <u>Drainage</u>: Runoff from impervious surfaces shall be recharged on the site, and diverted toward areas covered with vegetation for surface infiltration to the extent possible. Commercial and Industrial dry well shall be used only where other methods are not feasible, and shall be preceded by oil, grease, and sediment traps to facilitate removal of contaminants.

29.15.4 <u>Inspections</u>: All Permitted Uses under Section 29.9 and Conditional Uses granted under Section 29.13 may be subject to annual inspections by the Code Enforcement Officer or another agent, that agent must be approved by the Board of Selectmen. (Added 3-20-2014)

A. Inspections may be required to verify compliance with Performance Standards, Section 29.10 of this ordinance. Such inspections shall be performed by the Code Enforcement Officer or the approved agent at reasonable times with prior notice to the landowner.

B. All properties within the Aquifer Protection Zone known to the Code Enforcement Officer or the approved agent as using or storing regulated substances in containers with a capacity of 10 gallons or more except for facilities where all regulated substances storage are exempt from this Ordinance under Section 29.10, shall be subject to inspections under this Section.

C. The Planning Board may require a fee for compliance inspections. The fee shall be paid by the property owner. A fee schedule shall be established by the Planning Board as provided for in RSA 41-9:a.

D. For uses requiring planning board approval for any reason, a narrative description of maintenance requirements for structures required to comply with Performance Standards, shall be recorded so as to run with the land on which such structures are located, at the Registry of Deeds for Hillsborough County. The description so prepared shall comply with requirements of RSA 478:4-a.

**29.16** **EXISTING NONCONFORMING USES**: Existing nonconforming uses may continue without expanding or changing to another nonconforming use, but must be in compliance with all applicable state and federal requirements, including Env-Ws 421, Best Management Practices Rules. (Added 3-20-2014)

**29.17** **RELATIONSHIP BETWEEN STATE AND LOCAL REQUIREMENTS**: Where both the State and the municipality have existing requirements the more stringent shall govern. (Added 3-20-2014)

**29.18** **ENFORCEMENT PROCEDURES AND PENALTIES**: Any violation of the requirements of this ordinance shall be subject to the enforcement procedures and penalties detailed in RSA 676. (Added 3-20-2014)

**29.19** **SAVING CLAUSE**: If any provision of this ordinance is found to be unenforceable, such provision shall be considered separable and shall not be construed to invalidate the remainder of the Ordinance. (Added 3/20/14)

**29.20** **EFFECTIVE DATE**: This ordinance shall be effective upon adoption by the legislative body. (Added 3-20-2014)

## **ARTICLE 30**

**30.1**        **RURAL CONSERVATION OVERLAY DISTRICT**

**30.2**        **PURPOSE & INTENT**: The Rural Conservation Overlay District is superimposed over the Rural Agricultural (RA) District in order to encourage wise use of land which contains important natural resources. The RC District is intended to protect and enhance the rural character and natural resources of the town, yet allow for orderly residential growth, and to provide for the retention of open spaces. It is intended that this ordinance shall:

30.2.1        Reduce the density of development on prime and significant agricultural soils in order to retain them for use by farm and horticultural enterprises both now and in the future.

30.2.2        Protect from excessive or inappropriate development unique and unusual natural areas which contain important natural or geological resources, wildlife, or other natural features.

30.2.3        Prevent expenditure of town funds for the purposes of providing and/or maintaining essential services and utilities in remote or inaccessible areas of the town where adequate services cannot be reasonably provided due to severe natural conditions.

**30.3**        **PERMITTED USES**

30.3.1        All uses permitted in the Rural Agricultural (RA) District are permitted in this District.

30.3.2        Special Exceptions, see Article 19.

30.4        (Deleted per Town meeting vote – March 13, 2012)

# ARTICLE 30-A

**30-A**        **MT. DEARBORN ROAD HISTORIC AREA OVERLAY DISTRICT**

**30-A.1**        **PURPOSE AND INTENT**:  The Mt. Dearborn Road Historic Area Overlay District is superimposed over the Rural/Agricultural District in order to preserve the scenic, historic and open space character of the designated zone.  The purpose is to promote the objectives of the Weare Master Plan, in particular goal 7: "to protect areas of unusual natural or historic value from inappropriate development."

30-A.2        The Mt. Dearborn Road Historic Area Overlay District consists of an area 1200 feet from the centerline on both sides of the entire length of Mt. Dearborn Road but excluding (a) lots of record abutting Lafrance, Gove or Hodgdon Road, (b) lots of record on the southerly side of Deering Center Road (State Route 149) and (c) any cemeteries within that area.

30-A.3        Uses permitted in the Rural Agricultural District are permitted in the Mt. Dearborn Road Historic Area Overlay District other than those set forth in 17.3.1

(churches, municipal facilities, nursing homes, etc.) with the following additional restrictions:

30-A.3.1     No development shall occur within the Mt. Dearborn Road Historic Area Overlay District except by special exception.  The Zoning Board of Adjustment shall not a grant a special exception unless:

30-A.3.1.1   The board finds that the proposed structure in the proposed development (a) is more than 600 feet from the centerline of Mt. Dearborn Road and (b) will be sited or screened by vegetation so as not to be visibly from any point on Mr. Dearborn Road throughout the year and ( c) meets all relevant requirements of 6.1.4, OR

30-A.3.1.2   The board finds that the lot on which the proposed development is to occur (a) was a lot of record on the date this article was adopted, (b) is substantially within the Mt. Dearborn Road Historic Area Overlay District and (c) contains no dwelling unit.  If the board so finds, it may grant a special exception for a single dwelling unit on the lot, provided that (a) the single dwelling unit meets all relevant requirements of Section 6.1.4 and (b) its exterior conforms in style, appearance and materials to the character and period of any dwelling unit within the Mt. Dearborn Road Historic Area Overlay District that was built prior to 1840, OR

30-A.3.1.3   The board finds that, if there is a dwelling unit on the lot, the exterior of any proposed accessory use conforms in style, appearance and materials to the character and period of the dwelling unit on the lot, or if there is no dwelling unit on the lot, the exterior of any proposed accessory use conforms in style, appearance and materials to the character and period of any dwelling unit within the Mt. Dearborn Road Historic Area Overlay District built prior to 1840.  For purposes of this subsection, examples of accessory uses include, but are not limited to, barns, sheds, private roads and fences.

30-A.4      The Planning Board shall only approve a subdivision in the Mt. Dearborn Road Historic Area Overlay District in which each proposed lot has been granted a special exception by the Zoning Board of Adjustment that meets the requirements of section 3.1 of this Article.

# ARTICLE 30-B

**30-B. A**          **CLINTON GROVE HISTORIC OVERLAY DISTRICT**

**30-B. B**          **AREA, PURPOSE AND INTENT**:  The Clinton Grove Historic Overlay District (CGHOD) is superimposed over the Clinton Grove Village District in its entirety except lot 404-167.  The purpose and intent of the CGHOD shall be to preserve and safeguard the scenic, historic, rural and open space characteristics of the designated zone and more particularly to promote the following objectives:

a)   To protect areas of unusual natural or historic value from inappropriate development.

b)   To protect scenery and open space from incompatible development.

c)   To safeguard the heritage of the Town of Weare, and of Clinton Grove

particularly, by providing for the protection of buildings, landscapes, and areas representing significant elements of their history and natural beauty.

d)      To enhance the visual character of the Town of Weare, and Clinton Grove particularly, by promoting compatibility and harmony of architectural styles and land uses.

e)      To foster public appreciation of and civic pride in the beauty of the Town of Weare, and of Clinton Grove particularly, and in the landscapes, landmarks, and accomplishments of the past.

**30-B.C**      **RESTRICTIONS**:  Uses permitted in the Village District are permitted in the CGHOD with the following restrictions:

30-B.C.1      No new building shall be erected within the CGHOD unless by special exception. In reviewing an application for a special exception, the Zoning Board of Adjustment shall take into account the purpose and intent of the CGHOD.  The board shall not grant a special exception unless:

30-B.C.1.1      The board finds that if there is a dwelling unit on the lot, the exterior of any proposed new building conforms in style and appearance to the character and period of the existing dwelling unit on the lot, OR

30-B.C.1.2      The board finds that if there is no dwelling unit on the lot, the exterior of any proposed new building is compatible with the historic architectural character of the CGHOD including, but not limited to the following components:  the general size and scale of the proposed new building in relationship to the existing surroundings, include such factors as the building height and mass, lot coverage, type of roof, roof line and pitch, architectural style, façade and architectural details, scale and treatment of window and door openings, style and intensity of exterior lighting, and the design, scale and arrangement of site features and improvements including yards, parking, driveways, signage, and landscaping as they affect the setting for the building and the character of the CGHOD.

30-B.C.1.3      The following shall be exempt from the requirements of section C.1 of this Article: residential and agricultural accessory buildings and appurtenant structures such as private garage, barn, shed, greenhouse, porch, deck, breezeway, well house, cabana, gazebo, children's play structures, and buildings less than three hundred fifty (350) square feet in floor area used primarily for the sale of farm, horticultural, or nursery products grown on site provided, however, that any such residential accessory building or appurtenant structure shall be uniformly sided with either clapboards, vertical boards, or "board and batten" on the exterior. Synthetic siding that closely resembles the appearance of wood siding shall be permitted.  Greenhouses, decks, porches, children's play structures and residential accessory structures less than one hundred (100) square feet in floor area are exempt from this siding requirement.  Emergency or manufactured housing for temporary occupation during the repair or replacement of a damaged dwelling shall be exempt from the requirements of this Article.

30-B.C.1.4      The board shall be entitled to grant relief from the requirements of sections C.1,

C.1.1, C.1.2, and C.1.3 of this Article in the interest of public health or safety or to alleviate financial or physical hardship in the repair or replacement of a damaged building.

30-B.C.2    The following exterior alterations shall be permitted for any building in the CGHOD and shall not require a special exception:

a)    Exterior alterations not visible from a public street; ordinary maintenance or repair which does not involve changes in design; alterations which allow a building to conform more closely to its original or most characteristic appearance; like-kind replacement.

b)    Alterations to improve safety or handicapped accessibility.

c)    Painting.

d)    Repair, replacement, or installation or chimneys, skylights, exhaust vents, roofing materials, gutters and downspouts, roof-mounted snow and ice control devices; lightning rods, doors, stairs, railings, windows, window boxes, insect or security screens, shutters, and related hardware, whether new or existing.

e)    Repair or replacement of siding provided the replacement siding has approximately the same appearance as the existing siding.

f)    Utilities and fuel service; exterior lighting in conformity with Article 3.2 of the Town of Weare Zoning Ordinance; private residential satellite dishes.

Exterior alterations otherwise shall require a special exception.  The board shall not grant a special exception unless the board finds that the proposed exterior alteration conforms in style and appearance to the character and period of the building being altered.  The board shall be entitled to grant relief from this section of this Article in the interest of public health or safety or to alleviate a financial or physical hardship.

30-B.C.3    Demolition or removal of an entire building or structure shall not require a special exception.  However, there shall be required a thirty (30) day delay between the date of issuance of a permit for demolition or removal and the date of commencement of said demolition or removal.  Upon issuing a permit for demolition or removal, the Building Inspector shall immediately notify the Weare Historical Society by First Class US Mail of the existence of such permit and the relevant location, in order to allow for a confidential, voluntary, non-binding consultation, if so chosen, between the property owner and the Weare Historical Society.

30-B.C.3.1    Demolition of less than three hundred fifty (350) square feet of floor area of a building shall be exempt from the requirements for special exception and demolition delay.

30-B.C.3.2    The board shall be entitled to grant relief from sections C.3 and C.3.1 of this Article by reason of public health or safety or to alleviate financial or physical hardship.

30-B.C.4     New uses otherwise permitted under Article 22.4.2 of the Town of Weare Zoning Ordinance shall be restricted within the CGHOD to small scale retail, agriculture, service, historical museum, and office establishments intended to serve limited or localized markets and which are compatible in scale and type of use with the purpose and intent of the CGHOD.  Any use that generates a significant increase in vehicular traffic, or requires large amounts of parking or outside storage, or which is offensive to the neighborhood because of noise, vibration, dust, smoke, fumes, odors, hazardous materials, lighting, reduction in property values, hours of operation, or other disruptive influence shall be considered incompatible with the CGHOD.  Home Occupation as such term is defined under Article 4.1 of the Town of Weare Zoning Ordinance shall be considered compatible with the CGHOD.

30-B.C.5     Any new commercial use or any use otherwise permitted under Article 22.4.2 of the Town of Weare Zoning Ordinance occupying in excess of one thousand (1,000) square feet in area within the CGHOD shall require a special exception. In reviewing an application for a special exception, the board shall take into account the purpose and intent of the CGHOD.  In granting a special exception, the board shall find that all the requirements of Article 3.2 and Article 6.1.4, and this Article of the Town of Weare Zoning Ordinance are met.  In carrying out the purpose and intent of the CGHOD, the board shall also be entitled to restrict hours of operation, exterior lighting, outside storage and parking, and to impose other conditions upon any use granted a special exception.

**30-B.C.6**     **SIGNS**: See Article 34 (Amended 3-11-2008)

**30-B.C.7**     **MINIMUM LOT SIZE**: Minimum lot size in the CGHOD shall be two (2) acres.

30-B.C.8     No structure or building shall be erected within thirty-five (35) feet of any cemetery in existence In the CGHOD at the time of adoption of this ordinance, unless by special exception.

**30-B.C.9**     **NON-PERMITTED USES**:  Non-permitted uses in the Village District are also non-permitted uses within the CGHOD with the following additional uses also non-permitted:

30-B.C.9.1     Commercial removal of sod, soil, loam, clay, sand, gravel, rock, or other earth products unless said removal is deemed incidental as defined under Article 19.1.6 of the Town of Weare Zoning Ordinance.

30-B.C.9.2     Sale, repair, rental, or lease of motorized vehicles, motorized equipment, or watercraft, including sale or repair of related parts or equipment.  Sale by resident of one (1) private vehicle or watercraft at any one time is permitted.

30-B.C.9.3     Sale of gasoline or other motor fuels.

30-B.C.9.4     Outside storage or more than one (1) unregistered or inoperable motor vehicle, boat, trailer, or travel trailer.

30-B.C.9.5.    Outside storage or cargo containers, railcars, storage trailers or similar units unless incidental to active construction work on site.

30-B.C.9.6    Construction of new streets.  Private driveways are permitted.

30-B.C.9.7    Rooming house, condominium, cluster, multi-family, or other high-density housing.   Commercial multi-tenant, condominium, or other high density commercial or office use.

30-B.C.9.8    Public storage facilities and warehousing.

30-B.C.9.9    Signs exceeding the limits set forth in this Article.

30-B.C.9.10    New fences or walls in excess of sixty (60) inches from ground level to top of wall or fence, unless by special exception.


## ARTICLE 30-C

**30-C**          **RIVERDALE HISTORIC OVERLAY DISTRICT**

30-C.1          PURPOSE AND INTENT:

The Riverdale Historic Overlay District (RHOD) is superimposed on the Riverdale Village District and surrounding area in order to preserve the scenic, historic, rural and open space characteristics of the designated zone. The purposes of the RHOD are: to promote the objectives of the Weare Master Plan, in particular goal 7, namely, "to protect areas of unusual natural or historic value from inappropriate development", including development incompatible with the scenery and open space of the designated zone; and to foster public awareness, civic pride and appreciation of the role Riverdale Village has played in the history of Weare, in particular the landscapes, landmarks and accomplishments of the past.

30-C.2          The RHOD consists of the following three sections: (1) lots of record abutting either side of River Rd., Depot St. and/or bounded on north or west by the Piscataquog River, as depicted on map 412, Property Maps, Weare, New Hampshire (May 9, 1975) and numbered on that map as follows, irrespective of whether the actual numbering of the lots has changed since the map was drawn or will change in the future: 116-124, 126-133 and 207-209, inclusive; (2) an area extending in the northeasterly direction 350 feet from the centerlines of North Riverdale Rd. and Riverdale Rd. (excluding the spur of Riverdale Rd. that connects to South Stark Highway/State Route 114), beginning on the western bank of the Piscataquog River, ending at the eastern boundary of lot 198 and including all of lot 199, thereby encompassing part or all of lots of record 199-202 and 204-206 as depicted on the aforementioned map, but excluding lot 198 in its entirety; and (3) lots of record on the aforementioned map that abut North Riverdale Rd. or Riverdale Rd. connecting to South Stark Highway, namely: 210, 210.1, 210.2, 211-217.

30-C.3          PERMITTED USES: Permitted uses with the RHOD are:

30-C.3.1        Minimum lot sizes and frontage requirements, as defined in the Town of Weare Zoning Ordinance, for the Residential, Rural/Agricultural and Commercial zones underlying the RHOD apply to the respective lots within the RHOD that are so zoned, without alteration.

30-C.3.2        Single-family dwellings, including those with attached or detached garages and other similar type structures, e.g., greenhouses, breezeways.

30-C.3.3        Accessory uses or structures, such as sheds and barns, and open use of land normally incidental to the permitted principal use of the premises.

30-C.3.4        Home-based business or home occupations including but not limited to lawyer, doctor, realtor, accountant or notary.

30-C.3.5        Home shop such as electrician, plumber, or similar tradesman shop which shall be shown to be of such a character as to not require outside storage visible to the surrounding properties and shall not be a source of nuisance to neighbors by reason of noise, dust, glare, traffic, vibration, and/or other disruptive influence.

30-C.3.6        Agricultural, but excluding the grazing, care and keeping of such livestock as cows, horses, goats, pigs, and poultry as a gainful business.

30-C.3.7        Lots for conservation purposes which do not meet soils, minimum lot size and/or road frontage requirements. Such lots shall be subject to deed restrictions or conservation easements, granted to the Town of Weare or a non-profit conservation organization, which limit their use to conservation purposes. Right-of-way through such lots may be permitted provided the conservation value of the lot is not diminished.

30-C.3.8        For lots within the RHOD that are zoned Rural/Agricultural, the following additional uses are permitted: (a) barns, sheds or other major non-residential farm buildings and accessory structures; and (b) forestry and growth, harvesting and storage of forest products, tree nursery, tree farms, orchards, and similar uses including green houses, and the sale of produce and products grown on the premises.

30-C.4        NON-PERMITTED USES: Non-permitted uses within the RHOD are:

30-C.4.1        Rooming houses, cluster housing, condominiums, multi-family dwellings, multi-unit apartment buildings and other multi-unit housing structures.

30-C.4.2        Commercial development or commercial use of any kind, including light commercial use as set forth in 22.4.2 and mixed uses of structures for commercial and residential use.

30-C.4.3        Non-permitted uses in the Village District are also non-permitted in the RHOD

# ARTICLE 31

## 31.1        FLOODPLAIN DEVELOPMENT REGULATIONS

31.1.1        This ordinance, adopted pursuant to the authority of RSA 674:16, shall be known as the "Town of Weare Floodplain Development Regulations".

**31.2**      **APPLICABILITY**: These Floodplain development regulations shall apply to all lands designated as "special flood hazard areas" by the Federal Emergency Management Agency (FEMA) in it **"Flood Insurance Study for the County of Hillsborough, N.H." dated September 25, 2009 or as amended, together with the associated Flood Insurance Rate Maps dated September 25, 2009** or as amended, which are declared to be a part of this ordinance and are hereby incorporated by reference. (Adopted 7-6-2009 – per BOS public hearing)

These regulations shall overlay and supplement other provisions of this Ordinance for purposes of administration and appeals under State law.

If any of the provisions of these regulations differs or appears to conflict with any other provision of the Zoning Ordinance or other ordinance or regulation, the provision imposing the greater restriction or the more stringent standard shall be controlling.

**31.3**      **DEFINITIONS**

The following definitions shall apply only to these Floodplain Development Regulations, and shall not be affected by the provision of any other ordinance of the Town of Weare.

31.3.1      (Deleted per Town Meeting – March 13, 2007)

31.3.2      "Area of Special Flood Hazard" is the land in the floodplain within the Town of Weare subject to a one-percent or greater possibility of flooding in any given year. The area is designated as Zone A or AE on the Flood Insurance Rate Map.

31.3.3      "Base Flood" means the flood having a one-percent possibility of being equaled or exceeded in any given year.

31.3.4      "Basement" means any area of a building having its floor sub grade on all sides.

31.3.5      "Building" - see "Structure".

31.3.6      "Breakaway Wall" mean a wall that is not part of the structural support of the building and is intended through its design and construction to collapse under specific lateral loading forces without causing damage to the elevated portion of the building or supporting foundation.

31.3.7      "Development" means any man-made change to improved or unimproved real estate, including but not limited to building or other structures, mining, dredging, filling, grading, paving, excavation, drilling operation, or storage of equipment or materials.

31.3.8      "FEMA" means the Federal Emergency Management Agency.

31.3.9      "Flood" or "Flooding" means a general and temporary condition of partial or complete inundation of normally dry land areas from:

31.3.9.1        The overflow of inland or tidal waters; or

31.3.9.2        The unusual and rapid accumulation of runoff of surface waters from any source.

31.3.10        "Flood Elevation Study" means an examination, evaluation, a determination of flood hazards and, if appropriate, corresponding water surface elevations, or an examination and determination of mudslide or flood-related erosion hazards.

31.3.11        "Flood Insurance Rate Map" (FIRM) means an official map incorporated with this Ordinance, on which FEMA has delineated both the special flood hazard areas and the risk premium zones applicable to the Town of Weare.

31.3.12        "Flood Insurance Study" - see "Flood Elevation Study"

31.3.13        "Floodplain" or "Flood-prone Area" means land area susceptible to being inundated by water from any source (see definition of "Flooding")

31.3.14        "Flood Proofing" means any combination of structural and non-structural additions, changes, or adjustments to structures which reduce or eliminate flood damage to real estate or improved real property, water and sanitation facilities structures and their contents.

31.3.15        "Floodway" - see "Regulatory Floodway".

31.3.16        "Functionally Dependent Use" means a use which cannot perform its intended purpose unless it is located or carried out in close proximity to water.  The term includes only docking and port facilities that are necessary for the loading/unloading of cargo or passengers, and ship building/repair facilities; but does not include long-term storage or related manufacturing facilities.

31.3.17        "Highest Adjacent Grade" means the highest natural elevation of the ground surface prior to construction next to the proposed walls of a structure.

31.3.18        "Historic Structure" means any structure that is:

31.3.18.1        Listed individually in the National Register of Historic Places (a listing maintained by the Department of the Interior) or preliminarily determined by the Secretary of the Interior as meeting the requirements for individual listing on the National Register;

31.3.18.2        Certified or preliminarily determined by the Secretary of the Interior as contributing to the historical significance of a registered historic district or a district preliminarily determined by the Secretary to qualify as a registered historic district;

31.3.18.3        Individually listed on a state inventory of historic places in states with historic preservation programs which have been approved by the Secretary of the Interior; or

31.3.18.4    Individually listed on a local inventory of historic places in communities with historic preservation programs that have been certified either;

31.3.18.4.1    By an approved state program as determined by the Secretary of the Interior, or

31.3.18.4.2    Directly by the Secretary of the Interior of states without approved programs.

31.3.19    "Lowest Floor" means the lowest floor of the lowest enclosed area (including basement).  An unfinished or flood resistant enclosure, usable solely for parking of vehicles, building access or storage in an area other than a basement area is not considered a building's lowest floor; provided, that such an enclosure is not built so as to render the structure in violation of the applicable non-elevation design requirements of these regulations.

31.3.20    "Manufactured Home" means a structure, transportable in one or more sections, which is built on a permanent chassis and is designed for use with or without a permanent foundation when connected to the required utilities.  For floodplain management purposes, the term "manufactured home" includes park trailers, travel trailer, and other similar vehicles placed on site for greater than one hundred and eight (180) days. This includes manufactured homes located in a manufactured home park or subdivision.

31.3.20.1    "Manufactured Home Park or Subdivision" means a parcel (or contiguous parcels) of land divided into two or more manufactured home lots for rent or sale.

31.3.21    "Mean Sea Level" means the Nation Geodetic Vertical Datum (NGVD) of 1929 or other datum, to which base flood elevations shown on a community's Flood Insurance Rate Map are referenced.

31.3.21.1    "New Construction" means for the purposes of determining insurance rates, structures for which the start of construction commenced on or after the effective date of an initial FIRM of after December 31, 1974, whichever is later, and includes any subsequent improvements to such structures.  For floodplain management purposes, new construction means structures for which the start of construction commenced on or after the effective date of a floodplain management regulation adopted by a community and includes any subsequent improvements to such structures.

31.3.22    "100 Year Flood" - see "Base Flood"

31.3.23    "Recreational vehicle" means a vehicle which is (a) built on a single chassis; (b) 400 square feet or less when measured at the largest horizontal projection; ( c ) designed to be self-propelled or permanently tow able by a light duty truck; and (d) designed primarily not for use as a permanent dwelling but as temporary living quarters for recreational, camping, travel or seasonal use.

31.3.24    "Regulatory Floodway" means the channel of a river or other watercourse and the adjacent land areas that must be reserved in order to discharge the base flood

without increasing the water surface elevation more than a designated height.

31.3.25    "Special Flood Hazard Area" means an area having flood, mudslide, and /or flood-related erosion hazards, and shown on an FHBM or FIRM as Zone A or AE. (See "Area of Special Flood Hazard".)

31.3.26    "Structure" means, for floodplain management purposes, a walled and roofed building, including a gas or liquid storage tank, that is principally above ground, as well as a manufacture home.

31.3.27    "Start of Construction" includes substantial improvements and means the date the building permit was issued, provided the actual start of construction, repair, reconstruction, placement, or other improvement was within one hundred eighty (180) days of the permit date.  The actual start means either the first placement of permanent construction of a structure on site, such as the pouring of slab or footings, the installation of piles, the construction of columns, or any work beyond the stage of excavation; or the placement of a manufactured home on a foundation.  Permanent construction does not include land preparation, such as clearing, grading and filling; nor does it include the installation on the property of accessory buildings, such as garages or sheds not occupied as dwelling units or part of the main structure.

31.3.28    "Substantial Damage" means damage of any origin sustained by a structure whereby the cost of restoring the structure to its before damaged condition would equal or exceed fifty (50) percent of the market value of the structure before the damage occurred.

31.3.29    "Substantial Improvement" means any combination of repairs, reconstruction, alteration, or improvements to a structure in which the cumulative cost equals or exceeds fifty (50) percent of the market value of the structure.  The market value of the structure should equal:

31.3.29.1    The appraised value prior to the start of the initial repair or improvement; or

31.3.29.2    In the case of damage, the value of the structure prior to the damage occurring. The purposes of this definition, "substantial improvement" is considered to occur when the first alteration of any wall, ceiling, floor, or other structural part of the building commences, whether or not that alteration affects the external dimensions of the structure.  This term includes structures which have incurred substantial damage, regardless of the actual repair work performed.  The term does not, however, include any project for improvement of a structure required to comply with existing health, sanitary, or safety code specifications which are solely necessary to assure safe living conditions or any alteration of an "historic structure," provided that the alteration will not preclude the structure's continued designation as an "historic structure".

31.3.30    "Water Surface Elevation" means the height, in relation to the National Geodetic Vertical Datum (NGVD) of 1929, (or other datum, where specified) of floods of

various magnitudes and frequencies in the floodplains.

31.3.31   "Violation" means the failure of a structure or other development to be fully compliant with the community's flood plain management regulations.  A structure or other development without the elevation certificate, other certifications, or other evidence of compliance required in 44CFR sub section 60.3 (b)(5), (c)(4), (c)(10), (d)(3), (e)(2), (e)(4), or (e)(5) is presumed to be in violation until such time as that documentation is provided.

## 31.4   PERMIT REQUIRED

All proposed development in any special flood hazard area shall require a building permit.

## 31.5   PERMIT PROVISIONS

The Building Inspector shall review all building permit applications for new construction or substantial improvements to determine whether proposed building sites will be reasonably safe from flooding.  If a proposed building site is located in a special flood hazard area, all new construction or substantial improvements shall:

31.5.1   Be designated (or modified) and adequately anchored to prevent floatation, collapse, or lateral movement of the structure resulting from hydrodynamic and hydrostatic loads, including the effects of buoyancy;

31.5.2   Be constructed with materials resistant to flood damage;

31.5.3   Be constructed by methods and practices that minimize flood damages; and

31.5.4   Be constructed with electrical, heating ventilation, plumbing and air conditioning equipment, and other service facilities that are designed and/or located so as to prevent water from entering or accumulating within the components during conditions of flooding.

## 31.6   WATER SUPPLY AND WASTEWATER DISPOSAL

Where new or replacement water and sewer systems (including on-site systems) are proposed in a special flood hazard area, the applicant shall provide the Building Inspector with assurance that these systems will be designed to minimize or eliminate infiltration of the flood waters into the systems and discharges from the system into flood waters, and that on site wastewater disposal systems will be located to avoid impairment of them or contamination from them during periods of flooding.

## 31.7   ELEVATIONS AND FLOODPROOFING

For all new or substantially improved structures located in Zones A or AE, the applicant shall furnish the following information to the Building Inspector:

31.7.1   The as-built elevation (in relation to NGVD) of the lowest floor (including basement) and include whether or not such structure contains a basement

62

31.7.2      If the Structure has been flood proofed, the as-built elevation (in relation to NGVD) to which the structure was flood proofed.

31.7.3      Any certification of flood proofing.

31.7.4      The Building Inspector shall maintain the aforementioned information for public inspection, and shall furnish such information upon request.

**31.8      BUILDING PERMIT TO BE WITHHELD**

The Building Inspector shall not grant a building permit until the applicant certifies that all necessary permits have been received from those governmental agencies form which approval is required by federal or state law, including Section 404 of the Federal Water Pollution Control Act Amendments of 1972, 33, U.S.C. 1334.

**31.9      ALTERED OR RELOCATED WATERCOURSES**

31.9.1      In riverine situations, prior to the alteration or relocation of a watercourse, the applicant for such authorization shall notify the Wetlands Board of the New Hampshire Department of Environmental Services and submit copies of such notification to the Building Inspector, in addition to the copies required by N.H. RSA 482-A:3l.  Further, the applicant shall be required to submit copies of said notification to those adjacent communities as determined by the Building Inspector, including notice of all scheduled hearings before the Wetlands Board.

31.9.2      The applicant shall submit to the Building Inspector certification provided by a registered professional engineer assuring that the flood carrying capacity of all altered or relocated watercourses can and will be maintained.

31.9.3      The Building Inspector shall obtain, review, and reasonably utilize any floodway data available from federal, state, or other sources as criteria for requiring that all development located in Zone A meet the following floodway requirement:
"No encroachments, including fill, new construction, substantial improvements, and other development are allowed within the floodway that would result in any increase in flood levels within the community during the base flood discharge."

31.9.4      Until a Regulatory Floodway is designated along watercourse, no new construction, substantial improvements, or other development (including fill) shall be permitted within Zone AE on the FIRM, unless it is demonstrated by the applicant that the cumulative effect of the proposed development, when combined with all existing and anticipated development, when combined with all existing and anticipated development, will not increase the water surface elevation of the base flood more than one foot at any point within the community.

**31.10      BUILDING PROVISIONS**

31.10.1      In special flood hazard areas, the Building Inspector shall determine the 100-year flood elevation in the following order of precedence according to the date available:

31.10.1.1      In Zone AE, refer to the elevation date provided in the community's Flood Insurance Study and accompanying the FIRM or FHBM.

31.10.1.2      In unnumbered A Zones, the Building Inspector shall obtain, review, and reasonably utilize any 100-year flood elevation date available from any federal, state or other source, including date submitted for development proposals submitted to the community (i.e. subdivision and site plan approvals).

31.10.2      The Building Inspector's 100-year flood elevation determination will be used as criteria for requiring in Zones A and E that:

31.10.2.1      All new construction or substantial improvement of residential structure have the lowest floor (including basement) elevated to or above the 100-year flood elevation;

31.10.2.2      All new construction or substantial improvement of non-residential structures have the lowest floor (including basement) elevated to or above the 100-year flood elevations or together with attendant utility and sanitary facilities, shall;

31.10.2.2.1      Be flood proofed so that below the 100-year flood elevation the structure is watertight with walls substantially impermeable to the passage of water;

31.10.2.2.2      Have structural components capable of resisting hydrostatic and hydrodynamic loads and the effect of buoyancy; and

31.10.2.2.3      Be certified by a registered professional engineer or architect that the design and methods of construction are in accordance with accepted standards of practice for meeting the provisions of this section.

31.10.2.3      All manufactured homes to be placed or substantially improved within special flood hazard areas shall be elevated on a permanent foundation such that the lowest floor of the manufactured home is above the base flood level; and be securely anchored to resist floatation, collapse, or lateral movement. Methods of anchoring may include, but are not limited to, use of over-the-top or frame ties to ground anchors. This requirement is in addition to applicable state and local anchoring requirements for resisting wind forces.

     Recreational vehicles placed on site within Zones a1-30, AH, and AE shall either (I) be on the site for fewer than 180 consecutive days, (ii) be fully licensed and ready for highway use, or (iii) meet all standards of Section 60.3 (b) (1) of elevation and anchoring requirements for "manufacture homes" in paragraph ( c) (6) of the Section 60.3.

31.10.2.4      For all new construction and substantial improvements, fully enclosed areas below the lowest floor that are subject to flooding are permitted, provided they meet the following requirements:

31.10.2.4.1    The enclosed area is unfinished or flood resistant, usable solely for the parking of vehicles, building access or storage;

31.10.2.4.2.    The area is not a basement;

31.10.2.4.3    Shall be designed to automatically equalize hydrostatic flood forces on exterior walls by allowing for the entry and exit of floodwater.  Designs for meeting this requirement must either be certified by a registered professional engineer or architect, or must meet or exceed the following minimum criteria:  (a) a minimum of two openings having a total net area of not less than one square inch for every square foot of enclosed area subject to flooding shall be provided; (b) the bottom of all openings shall be no higher than one foot above grade; and (c ) openings may be equipped with screens, louvers, or other coverings or devices provided that they permit the automatic entry and exit of floodwater.

**31.11        VARIANCES AND APPEALS**

31.11.1        Any order, requirement, decision or determination of the Building Inspector made under these floodplain development regulations may be appealed to the Zoning Board of Adjustment as set forth under N.H.  RSA 676.5.

31.11.2        If the applicant, upon appeal, requests a variance as authorized by RSA 674:3, I (b), the applicant shall have the burden of showing in addition to the usual variance standards under state law that:

31.11.3        The Zoning Board of Adjustment shall notify the applicant in writing that: (I) The issuance of a variance to construct below the base flood level will result in increased premium rates for insurance up to amounts as high as $25 for $100 of insurance coverage and (II) Such construction below the base flood level increases risks to life and property.  Such notification shall be maintained with a record of all variance actions.

31.11.3.1     The variance will not result in increased flood heights, additional threats to public safety, or extraordinary public expense:

31.11.3.2     That if the requested variance is for activity within a designated regulatory floodway, no increase in flood levels during the base flood discharge will result; and

31.11.3.3     That the variance is the minimum necessary, considering the flood hazards, to afford relief.

31.11.4        The Town shall maintain a record of all variance actions, including their justification for their issuance, and report such variances issued on its annual or biennial report submitted to FEMA's Federal Insurance Administrator.

**ARTICLE 32**

**32.0**   **WIRELESS TELECOMMUNICATIONS FACILITIES OVERLAY DISTRICT**

**32.1**   **PURPOSE AND INTENT**:   It is the express purpose of this Article to restrict the location of wireless telecommunications facilities within the Town of Weare consistent with appropriate land use regulation that will ensure compatibility with the visual and environmental features of the Town.  Compatibility with the visual features of Weare is measured based on the change in community scale and character in relation to the height, mass, materials, contrasts, or proportion within the surroundings of a proposed facility.  This Article enables the review of the locating and siting of such facilities by the Town so as to eliminate or mitigate their visual and environmental impacts.  It is the intent of this Article to encourage carriers to locate on existing buildings and structures whenever possible.  New ground mounted wireless telecommunications facilities are permitted, but only when the use of existing structures and buildings is found to be infeasible.  Co-location is encouraged for all such facilities, and their review shall be on the basis of the site being built using all positions on the mount.

**32.2**   **APPLICABILITY**:  This Article shall apply to wireless communications facilities proposed to be located on property owned by the Town of Weare, on privately owned property, and on property that is owned by any other governmental entity that acts in its proprietary capacity to lease such property to a carrier.

32.2.1   Amateur Radio:  Receive-Only Antennas:   This Article shall not govern any tower, or the installation of any antenna, that is under 70 feet in height and is owned and operated by a federally-licensed amateur radio station operator or is used exclusively for receive-only antennas.  This ordinance adopts the provisions and limitations as referenced in RSA 674:16, IV.

32.2.2   Essential Services and Public Utilities:   Wireless telecommunications facilities shall not be considered infrastructure, essential services or public utilities.  Siting for wireless telecommunication facilities is a use of land is addressed by this Article 32.

**32.3**   **DEFINITIONS:**  For the purpose of this Article, the following terms shall have the meaning given:

Antenna:  An apparatus designed for communications through the sending and/or receiving of electromagnetic waves of any bandwidth.

Antenna Array:  A collection of antennas attached to a mount.

Average Tree Canopy Height:   An average height found by inventorying the height of all trees over 20 feet high for a defined area.

Camouflaged:  A wireless communications facility that is disguised, hidden, part of an existing or proposed structure, or placed within an existing or proposed

structure.

Carrier:  A company that provides wireless telecommunications services.  Also sometimes referred to as a provider.

Co-location:  The use of a single mount on the ground by more than one carrier or provider or the same carrier or provider with multiple licenses, and/or the use of several mounts on an existing building or structure by more than one carrier or the same carrier with multiple licenses.

Equipment Shelter:  An enclosed structure, cabinet, shed, vault, or box near the base of the mount within which are housed equipment for wireless telecommunications service facilities, such as batteries and electrical equipment.  Equipment shelters are sometimes referred to as base transceiver stations.

Guyed Tower:  A monopole or lattice tower that is secured to the ground or other surface by diagonal cables for lateral support.

Height:  When referring to a tower or other structure, the distance measured from the natural grade of a site to the highest point on the tower or other structure, even if said highest point is an antenna.

Lattice Tower:  A type of tower with multiple legs and structural cross-bracing between the legs that is self-supporting and free-standing.

Mast:  A thin pole that resembles a street light standard or a telephone pole.  A dual-polarized antenna is typically deployed on a mast.

Monopole:  A thicker type of tower than a mast that is self-supporting with a single shaft of wood, steel or concrete, or other material that is designed for the placement of antennas and arrays along the shaft.

Mount:   The structure or surface upon which antennas are mounted, including four types of mounts:
     a.  Roof-mounted:  mounted on the roof of a building
     b.  Side-mounted:  mounted on the side of a building
     c.  Ground-mounted:  mounted on the ground
     d.  Structure-mounted:  mounted on a structure other than a building

Scenic Vistas:  Those areas designated by the Planning Board and on file at the Selectmen's Office at the time any application under this ordinance is submitted.

Security Barrier:  A wall, fence or berm that restricts an area from unauthorized entry or trespass.

Tower:  Any structure that is designed and constructed primarily for the purpose of supporting one or more antennas, including self-supporting lattice towers, guyed towers or monopole towers.  The term includes radio and television

transmission towers, microwave towers, common-carrier towers, cellular telephone towers, alternative tower structures, and the like.

Wireless Telecommunications Facilities:  Any antenna, tower or other structure, including an equipment shelter, which is intended for use in connection with the transmission or reception of radio or television signals or any other electromagnetic spectrum-based transmissions/receptions.

**32.4**　　　**DISTRICT REGULATIONS**

32.4.1　　Location:  Wireless telecommunications facilities shall be permitted in all zoning districts, except that (a) they shall be prohibited within 150 feet of town or state roads, within 300 feet of a scenic road, a scenic byway, an historic district or a village district, or within an historic district or village district; and (b) they shall not be sited in a manner which is readily visible from a scenic road or within a scenic vista.  Applicants seeking approval for such facilities shall first evaluate existing structures for siting such facilities.  Only after finding that there are no suitable existing structures pursuant to Section 32.4.3 shall an applicant propose a new ground-mounted facility. (Amended 3-13-2012)

32.4.2　　Existing Structures:  Policy - Wireless telecommunications facilities shall be located on existing structures, including but not limited to buildings, water, towers, existing telecommunications facilities, utility poles or towers, and related facilities, provided that such installation preserves the character and integrity of those structures.

32.4.3　　Existing Structures:  Burden of Proof - The applicant shall have the burden of proving that there are no existing structures which are suitable to locate its facilities and/or transmit or receive electromagnetic signals.  To meet the burden, the applicant shall take all the following actions to the extent applicable:

　　　a.　The applicant shall submit to the Planning Board a list of all contacts made with owners of potential sites regarding the availability of potential space for a wireless telecommunications facility.  If the Planning Board informs the applicant that additional existing structures may be satisfactory, the applicant shall contact the property owner(s) of those structures.

　　　b.　The applicant shall provide copies of all letters of inquiry made to owners of existing structures and letters of rejection.  If letters of rejection are not provided, at a minimum, unanswered "Return Receipt Requested" forms from the U.S. Postal Service shall be provided for each owner of existing structures that was contacted.

　　　c.　If the applicant claims that a structure is not capable of physically supporting a wireless telecommunications facility, this claim must be certified by a licensed professional civil engineer.  The certification shall, at a minimum, explain the structural issues and demonstrate that the structure cannot be modified to support the facility without unreasonable costs.  The estimated cost shall be provided to the Planning Board.

32.4.4 <u>Ground-Mounted Facilities Policy</u> - If the applicant demonstrates that it is not feasible to locate on an existing structure, ground-mounted wireless telecommunications facilities shall be designed so as to be camouflaged to the greatest extent possible, including but not limited to using compatible building materials and colors, screening, landscaping, and placement within treed areas.

**32.5** **USE REGULATIONS**:  A wireless telecommunications facility shall require a building permit in all cases and may be permitted as follows:

32.5.1 <u>Existing Tower Structures</u>:  Carriers may locate a wireless telecommunications facility on any guyed tower, lattice tower, mast, or monopole in existence prior to the adoption of the Article, or on any wireless telecommunications facility previously approved under the provisions of this Article, so long as the co-location complies with the approval site plan.  All the performance standards of this Article shall be met.  This provision shall apply only so long as the height of the mount is not increased, a security barrier already exists and the area of the security barrier is not increased.  Otherwise, site plan review is required.

32.5.2 <u>Reconstruction of Existing Tower Structures</u>:  An existing guyed tower, lattice tower, mast or tower, mast or monopole in existence prior to the adoption of this Article may be reconstructed with a maximum 20 foot increase in height so as to maximize co-location so long as the standards of this Article are met and so long as the 20 foot increase in height does not cause a facility previously existing to exceed the average tree canopy height by more than 25 feet in height.  The mount shall be replaced with a similar mount that does not significantly increase the visual impact on the community.  Site plan review is required.

32.5.3 <u>Existing Structures</u>:  Subject to the provision of this Article and site plan review and except as otherwise prohibited under Section 32.6, a carrier may locate a wireless telecommunications facility on an existing structure, building, utility tower or pole, or water tower.

32.5.4 <u>Ground-Mounted Facility</u>:  A wireless telecommunications facility involving construction of a ground mount shall require site plan review and be subject to the provisions of this Article.

**32.6** **DIMENSIONAL REQUIREMENTS**:  Wireless telecommunications facilities shall comply with the following requirements:

32.6.1 <u>Height, Maximum</u>:  In no case shall a wireless telecommunications facility exceed 25 feet over the average tree canopy height within a 150 foot radius of the mount, security barrier, or designated clear area for access to equipment, whichever is greater; provided, however, that if there are insufficient trees to calculate the average tree canopy height within that area, the maximum height shall not exceed 20 feet.

32.6.2 <u>Height, Existing Structures and Utility Poles</u>:  New wireless telecommunications

facilities located on water towers, electric transmission and distribution towers, utility poles and similar existing utility structures, guyed towers, lattice towers, masts and monopoles may be permitted with no increase in height.

32.6.3      <u>Height, Other Existing Structures</u>:  The height of a wireless telecommunications facility shall not increase the height of a structure unless the facility is completely camouflaged; for example, a facility completely within a flagpole, steeple, or chimney.  The increase in height of the structure shall be in scale and proportion to the structure as originally configured.  A carrier may locate a wireless telecommunications facility on a building that is legally nonconforming with respect to height, provided that the provisions of this Article are met.

32.6.4      <u>Setbacks</u>:  All wireless telecommunications facilities and their equipment shelters shall comply with the building setback provisions of the zoning district in which the facility is located.

32.6.5      <u>Fall Zone for Ground Mounts</u>:  In order to ensure public safety, the minimum distance from the base of any ground mount of a wireless telecommunications facility to any property line, public road, habitable dwelling, business or institution, or public recreational area shall be, at a minimum, the distance equal to the height of the facility.

**32.7      PERFORMANCE AND DESIGN STANDARDS**:  These standards shall apply to all applications.

32.7.1      <u>Visibility</u>
A.  Visual impacts are measured on the basis of:
1.  change in community scale, as exhibited in relative height, mass or proportion of the wireless telecommunications facility within their proposed surroundings
2.  new visible elements set against contrasting background
3.  different colors and textures contrasting against the existing background
4.  use of materials that are foreign to the existing built environment within their proposed surroundings creating visual blight.
B.  <u>Enhancements are measured on the basis of</u>:
1.  conservation of opportunities to maintain community scale, e.g. buffering areas and low-lying buildings should not be compromised so as to start a trend away from existing community scale
2.  amount and type of landscaping and/or natural vegetation
3.  continuation of existing colors, textures and materials

C.  <u>Visibility focuses on</u>:
1.  eliminating or mitigating visual impact
2.  protecting, continuing and enhancing the existing environment

D.  <u>Camouflage for Facilities on Existing Buildings or Structures- Roof Mounts</u>: When a wireless telecommunications facility extends above the roof height of

a building on which it is mounted, every effort shall be made to conceal or camouflage the facility within or behind existing or new architectural features to limit its visibility from public ways. Facilities mounted on a roof shall be stepped back from the front facade in order to limit their impact on the building's silhouette.

E. Camouflage for Facilities on Existing Buildings or Structures - Side Mounts: Wireless telecommunication facilities which are side-mounted shall blend with the existing building's architecture and, if individual antenna panels are over 5 square feet, the panels shall be painted or shielded with material consistent with the design features and materials of the building.

F. Camouflage for Ground-Mounted Facilities: All ground-mounted wireless telecommunications facilities shall be surrounded by a buffer of dense tree growth that extends continuously for a minimum distance of 50 feet from the mount, security barrier, or designated clear area for access to equipment, whichever is greatest, and screen views of the facilities in all directions. The buffer shall be in keeping with the surrounding vegetation and shall effectively screen the facilities 365 days a year. The buffers shall be on the subject property, protected by a landscape easement or be within the area of the carrier's lease. Any easement or lease shall specify that the trees within the buffer shall not be removed or topped, unless the trees are dead or dying, present a hazard to persons or property, or as approved during the site plan review.

32.7.2  Color and Camouflage: To the extent that any component of a wireless telecommunications facility extends above the height of the vegetation immediately surrounding it, it shall be a color that blends with the background of surroundings, including guy wires, and it shall have attached to it artificial branches matching as closely as possible those of surrounding trees or other trees native to the Town. The Board may waive either of these requirements upon demonstration by the applicant that the facility would still meet the performance and design standards set forth in Section 32.7.  (Amended 3-11-2008)

32.7.3  Equipment Shelters: Equipment shelters for wireless telecommunications facilities shall be designed consistent with one of the following design standards:
A. equipment shelters shall be located in underground vaults; or
B. equipment shelters shall be designed so that the shelters are architecturally consistent, with respect to materials and appearance, to the buildings in the area of the wireless telecommunications facility; or
C. equipment shelters shall be camouflaged behind an effective year-round landscape buffer, equal to the height of the proposed building, and/or wooden fence. The Planning Board shall determine the style of fencing and/or landscape buffer that is compatible with the neighborhood; or
D. if mounted on a roof top, the equipment shelter shall be concealed or camouflaged so that the shelter either is not visible at grade or appears to be a part of the original structure.

With respect to each design standard, all utilities to the site shall be underground.

32.7.4    Lighting, Signage and Security:
    A.  Lighting
        1.  The mounts of the wireless telecommunications facility shall be lighted only if required by the Federal Aviation Administration.
        2.  Lighting of equipment structures and any other facilities on site shall be shielded from abutting properties.  Foot-candle measurements at the property line shall be 0.00 initial foot candles.

    B.  Signage:  Signs shall be limited to those needed to identify the property and the owner and warn of any danger.  All signs shall comply with the requirements of the Weare sign ordinance.

    C.  Security Barrier:  A security barrier is required for all wireless telecommunications facilities.

32.7.5    Scenic Landscapes and Vistas:  Wireless telecommunications facilities shall not be located with scenic vistas or within open areas that are visible from public roads, recreational areas or abutting properties.  All ground-mounted facilities shall be surrounded by a buffer of dense tree growth, pursuant to section 32.7.1 (F).

32.7.6    Driveways:  Existing entrances and driveways to serve a wireless telecommunications facility shall be utilized, unless the applicant can demonstrate that a new entrance and driveway will result in less visual, traffic and environmental impact.  New driveways shall not exceed 12 feet width.

32.7.7    Antenna Types:  Any antenna array placed on an existing or proposed ground mount, utility pole or transmission line mount shall have a diameter of no more than 4 feet, exclusive of the diameter of the mount, unless the Planning Board finds a larger antenna array does not materially impair, the visual impact of the siting.

32.7.8    Ground and Roof Mounts:  All ground mounts shall be on a mast-type or monopole type mount. Lattice towers, guyed towers, and roof-mounted monopoles are expressly prohibited, unless constructed as part of a reconstruction project permitted under section 32.5.2.

32.7.9    Radio Frequency Radiation (RFR) Standards:  All equipment proposed for a wireless telecommunications facility shall be fully compliant with the FCC Guidelines for Evaluating the Environmental Effects of Radio Frequency Radiation (FCC Guidelines), under Report and Order, FCC 96-326, published on August 1, 1996, and all subsequent amendments.

**32.8    MONITORING AND MAINTENANCE:**

32.8.1    Maintenance:  The owner of the wireless telecommunications facility, shall

maintain the facility in good condition. Such maintenance shall include, but shall not be limited to, painting, structural integrity of the mount and security barrier, and maintenance of the buffer area and landscaping.

32.8.2    <u>Monitoring</u>:  As part of the issuance of the site plan approval or building permit, the property owner and the carrier shall agree that the Town of Weare may enter the subject property to obtain RFR measurements at the expense of the carrier. The Town shall provide reasonable written notice to the property owner and the carrier and provide them the opportunity to accompany the Town representatives when the measurements are conducted.

32.8.3    <u>Security for Removal</u>:    Recognizing the hazardous situation presented by abandoned and unmonitored wireless telecommunications facilities, the Planning Board shall set the form and amount of security that represents the cost for removal and disposal of abandoned telecommunications facilities in the event that the facility is abandoned and the facility owner is unwilling or unable to remove the facility in accordance with section 32.9.2.  The amount of security shall be based on the removal cost plus 15%, provided by the applicant and certified by an independent professional civil engineer licensed in New Hampshire at the time of application and every 5 years from the date of the Planning Board's approval of the site plan.  If the cost has increased more than 15%, then the owner shall provide additional security in the amount of the increase.  It shall be a condition of any approval granted under this ordinance that the name and address of the facility owner shall be accurately reported to the Town at all times during the life of the facility.  All transfers of ownership shall be reported in writing to the Town before such transfers occur.

**32.9**    ABANDONMENT OR DISCONTINUATION OF USE

32.9.1    <u>Notification</u>:  At such time that a carrier plans to abandon or discontinue operation of a wireless telecommunications facility, such carrier will notify the Town by certified US mail of the proposed date of abandonment or discontinuation of operations.  Such notice shall be given no less than 30 days prior to abandonment or discontinuation of operation.   In the event that a carrier fails to give such notice, the wireless telecommunications facility shall be considered abandoned upon such discontinuation of operations.

32.9.2    <u>Removal</u>:    The owner of the facility shall physically remove the wireless telecommunications facility within 90 days from the date of abandonment or discontinuation of use.  Physically remove, shall include, but not be limited to:
   A.  removal of antennas, mount, equipment shelters and security barriers from the subject property
   B.  proper disposal of any waste materials from the site in accordance with local and state solid waste disposal regulations
   C.  restoring the location of the facility to its natural condition, except that any landscaping and grading shall remain in the after-condition

32.9.3    <u>Failure to Remove</u>:  If the owner of the facility does not remove the facility on the order of the Board of Selectmen, then the Board shall, after holding a public

hearing with notice to the owner and abutters, issue a declaration of abandonment. The owner of the facility shall dismantle and remove the facility within 90 days of receipt of the declaration of abandonment.  If the abandoned facility is not removed within 90 days, the Town may execute the security to pay for this action. The carrier shall be fined $100.00 per day starting the 91st day after the declaration until the facility is removed.

**32.10**    **ADMINISTRATION AND ENFORCEMENT:**  It shall be the duty of the Board of Selectmen, or the Building Inspector as its designee, to initiate immediate steps, to enforce this Article upon well-founded information of any violation thereof, by issuing due notice to cease and desist such violation and taking such necessary action as may be permitted by statute for both criminal and civil enforcement of the same including, but not limited to, seeking a civil fine of $100.00 per day for each day the violation continues after the owner has been notified of that violation; provided, however, that the failure by the Board to initiate enforcement under this Article will not constitute a waiver of the Town's right to take such action.

**32.11**    **TOWN USE**:  Every carrier shall make available to the Town at no cost the use of its wireless telecommunications facility for communication purposes by essential Town services, such as by the police and fire departments.  The Town shall be responsible for providing and maintaining the necessary equipment.  The carrier shall be responsible for installation and shall provide the Town access to the facility for maintenance purposes, in each case at no cost to the Town.  (Added 3/11/2008)

# ARTICLE 33

**33.0**    **GROWTH MANAGEMENT ORDINANCE** – (Removed 3-11-2008 Town Meeting)

# ARTICLE 34

**34.0**    **SIGN ORDINANCE**

**34.1**    **PURPOSE**: It is the intent of this Sign Ordinance to support the general provisions of the Weare Master Plan which seeks to enhance traffic safety and to preserve the visual rural character of Weare in accordance with the Weare Master Plan.  (Amended 3-7-2016)

**34.2**    Deleted (relocated in Article 4.1 – Definitions) (Amended 3-7-2016)

**34.3**    **PERMIT:**  A permit from the code enforcement officer shall be obtained before the installation of any permanent sign.  The permit number and date of issuance shall be affixed to each sign.  Permits are not required for temporary signs.  (Amended 3-8-2011)

34.3.1  Deleted (Amended 3-7-2016)

**34.4**    **ILLUMINATION STANDARDS**

34.4.1  The illumination of any sign shall be from a steady or continuous, non-flashing, white light.  Internally illuminated signs are allowed in the Commercial and Industrial

Districts only.  Externally illuminated signs shall have a shielded white light from above, and the lighting shall illuminate the sign only, without the light source being visible from any residential dwelling or any roadway; the light source shall be placed as close as practical to the message portion of the sign; and no light shall escape from above the fixture.  (Amended 3-7-2016)

34.4.2    In the Commercial and Industrial districts, signs may be illuminated at any time. In all other districts, signs may be illuminated between the hours of 5 AM and 10 PM.  (Amended 3-7-16)

34.4.3    From seven days before Thanksgiving to Jan. 10 only, displays containing illuminated bulbs or strings of lights that flash or change but do not contain a message are allowed in connection with a sign. (Amended 3-8-2011)

**34.5**    **LOCATION:**  A sign shall be placed in such a way that it is not a source of danger or hindrance to traffic and is not within a side setback.  As set forth in other articles, the side setbacks by zone are Residential:  25 feet; Rural Agricultural:  25 feet; Village:  20 feet; Commercial:  30 feet; Industrial:  30 feet. (Amended 3-8-2011)

**34.6**    **MAINTENANCE:** All permanent signs are to be constructed of durable materials and be well maintained.

**34.7**    **REPLACEMENT SIGNS**:  When an existing sign is substantially altered physically, the new sign shall conform to the provisions of this ordinance. (Amended 3-8-2011)

**34.8**    **FREE-STANDING SIGNS:**  Where a sign is attached to or part of an independent structure, the sign shall be the predominant visual feature in terms of size, scale, color and other aspects of appearance. (Amended 3-7-2016)

34.8.1    **OPEN SIGNS:**  Any business may be allowed two single-sided lighted signs not to exceed twelve inches by eighteen inches which indicates that the business is open or closed.  These signs (a) shall be in addition to any other sign the business is authorized to display, (b) may be internally illuminated by a steady, continuous, non-flashing light of more than two colors, (c) shall, where practicable, be placed within or at the entrance to the business facing and parallel to a public right of way and (d) shall in its placement and operation not unreasonably or unnecessarily distract vehicle operators.  No Permit shall be required for these signs.  (Amended 3-7-2016)

**34.9**    **PROHIBITED SIGNS:**  The following signs are not allowed in any zoning district: (Amended 3-8-2011)

34.9.1    Any sign unrelated to an activity conducted on the premises where the sign is located.  This shall not apply to signs approved by the Planning Board for the purpose of providing location directions, provided that written landowner approval is obtained, the sign not be illuminated, the sign has no more than two

surfaces and each surface contains no more than 3 square feet, and the sign is not higher than 6 feet from the centerline elevation of the adjacent road. (Amended 3-7-16)

34.9.2     Any sign erected on or above any part of the roof of a building, including any message or symbol on any roof of a building or design in any roofing material. This prohibition shall not apply to a sign that is mounted on, is parallel to and does not protrude beyond the edges of a vertical wall, nor shall it apply to a sign mounted on the roof of a so-called farmer's porch.  A farmer's porch means a one-story open shed which is attached either to a vertical wall of a building or at the eave of a roof of a building. (Amended 3-7-2016)

34.9.3     Any sign attached to a utility pole.

34.9.4     Deleted in its entirety (Deleted 3-8-2011)

34.9.5     Except as provided by Articles 34.10.3 and 34.10.4, all internally lit and electronic signs, including but not limited to animated, changing message or electronic moving or stationary letter signs, and signs containing reflective and/or phosphorescent or similar signs. (Amended 3-8-2016)

34.9.6     Except as provided by Articles 34.10.3 and 34.10.4, message board signs with manually changeable letters, excluding such signs that are portable, and that do not exceed six (6) square feet on each of two (2) sides. (Amended 3-8-2016)

34.9.7     Signs identifying residential developments other than those signs used during the construction and marketing of a residential project, unless approved by the Planning Board.  Such sign shall not exceed 4 feet in height and not exceed 6 feet.  In addition, they cannot be illuminated and must be constructed of durable, non-reflective material, preferable granite.  (Amended 3-7-2016)

34.9.8     Signs on school- or town-owned property except on any day on which town or state elections are held and except as otherwise allowed by the school district or town and which are in conformity to the other provisions of this ordinance. (Added 3-8-2011)

**34.10     DISTRICT REGULATIONS:**

34.10.1     <u>R and RA DISTRICTS</u>

34.10.1.1     In R and RA districts the following signs shall be allowed: (Amended 3-8-2011)

34.10.1.2     One (1) sign, to contain no more than two surfaces, and each surface to contain no more than six (6) square feet, shall be allowed on any one lot for each independently-owned business activity but not more than two (2) per lot.  If free-standing, the height of such sign shall not exceed six (6) feet from the centerline elevation of the road to the top of the sign. (Amended 3-8-2016)

34.10.1.3     Those uses which are granted a Special Exception by the Zoning Board of Adjustment may have a sign to contain no more than two surfaces, and each

surface to contain no more than sixteen (16) square feet.  If free-standing, the height of such sign shall not exceed six (6) feet from the centerline elevation of the road to the top of the sign. (Amended 3-8-2016)

## 34.10.2    VILLAGE DISTRICTS

34.10.2.1    In the Village Districts, the following signs shall be allowed: (Amended 3-8-2011)

34.10.2.2    One (1) sign to contain no more than two surfaces, and each surface to contain no more than eighteen (18) square feet with a maximum width of 6 feet, shall be allowed on a lot containing one business. If free-standing, the height of such sign shall not exceed six (6) feet from the center-line elevation of the road.  If attached to a building, the top of the sign shall be no more than 75% of the height of the building. (Amended 3-8-2016)

34.10.2.3    If there are two or more businesses on a lot, one (1) free-standing sign to contain no more than two surfaces and each surface to contain no more than eighteen (18) square feet, with a maximum width or 6 feet, plus an additional 6 square feet per business, shall be allowed on the lot.  Such sign shall not exceed eight (8) feet in height from the centerline elevation of the road to the top of the sign and shall not exceed 36 square feet.   In addition, each business may erect one (1) sign to contain not more than two surfaces, each surface to contain not more than twelve (12) square feet, to be attached to its building on the lot either parallel or perpendicular to a vertical wall of the building or to be placed on the roof of a farmer's porch.  No part of any sign attached to a wall shall be higher than 75% of the height of the building.  (Amended 3-8-2016)

34.10.2.4    Signs shall be designed to the extent reasonably practicable to be consistent with the style of certain existing signs in Weare Center.  (See Code Enforcement Officer for photographs of the signs of the Town Offices, Center Woods Elementary School, Town Hall, Historic Society and Library.) (Amended 3-8-2011)

34.10.2.5    See Article 34.10.5 for additional restrictions in the Clinton Grove Historical Overlay District. (Amended 3-8-2011)

## 34.10.3    COMMERCIAL DISTRICT

34.10.3.1    In the Commercial District, the following signs shall be allowed: (Amended 3-8-2011)

34.10.3.2    One (1) primary sign, to contain no more than two (2) surfaces, and each surface to contain no more than thirty-two (32) square feet, shall be–allowed on a lot containing one business. This sign may be internally illuminated. There may be one (1) internally illuminated manually changeable letter sign, to contain no more than two (2) surfaces, and each surface to contain no more than sixteen (16) square feet mounted under the primary sign for a total of forty-eight (48) square feet.  No part of any sign attached to a wall shall be higher than 75% of the height of the building.  The height of any sign shall not exceed twelve (12) feet from the center line elevation of the road.  (Amended 3-7-2016)

34.10.3.3      Deleted in its entirety (Deleted 3-8-2011)

34.10.3.4      If there are two or more businesses on the lot, one (1) free-standing sign to contain no more than two surfaces and each surface to contain no more than thirty-two (32) square feet, plus an additional 16 square feet per business, identifying the lot/plaza and each business, shall be allowed on the lot.  The maximum size is 96 square feet.  This sign may be internally illuminated.  In addition, there may be one (1) internally illuminated manually changeable letter sign, to contain no more than two (2) surfaces, and each surface to contain no more than sixteen (16) square feet mounted under the primary sign for a total of one hundred twelve (112) square feet.  In addition, each business shall be allowed a sign not to exceed sixteen (16) square feet, each such additional sign to be attached to its building on the lot either parallel or perpendicular to a vertical wall of the building or to be placed on the roof of a farmer's porch.  This sign may be internally illuminated.  No part of any sign attached to a wall shall be higher than 75% of the height of the building.  The height of any free-standing sign shall not exceed twelve (12) feet from the centerline elevation of the road to the top of the sign.  (Amended 3-7-2016)

34.10.4      <u>INDUSTRIAL DISTRICTS</u>

34.10.4.1      In the Industrial Districts, the following signs shall be allowed: (Amended 3-8-2011)

34.10.4.2      A maximum number of two (2) signs, the total combined surface area of which shall not exceed one hundred (100) square feet, shall be allowed on any one lot containing one business.  This sign may be internally illuminated.  In addition, there may be one (1) internally illuminated manually changeable letter sign, to contain no more than two (2) surfaces, and each surface to contain no more than sixteen (16) square feet mounted under the primary sign for a total of one hundred sixteen (116) square feet.  No part of any sign attached to a wall shall be higher than 75% of the height of the building.  If there are two or more businesses on the lot, then in addition each business shall be allowed a sign not to exceed twenty (20) square feet, each such additional sign to be attached to a building on the lot either parallel or perpendicular to a vertical wall of the building.  This sign may be internally illuminated.  No part of any sign attached to a wall shall be higher than 75% of the height of the building.  The height of a free-standing sign shall not exceed twelve (12) feet from the center line elevation of the road. (Amended 3-8-2016)

34.10.4.3      Deleted in its entirety. (Deleted 3-8-2011)

34.10.5      <u>CLINTON GROVE HISTORICAL OVERLAY DISTRICT</u>

34.10.5.1      In the Clinton Grove Historical Overlay District, the following additional limits and restrictions shall apply to signs:

34.10.5.2      On any one (1) lot there shall be no more than:
a) one (1) sign, the surface area of which shall not exceed twelve (12) square feet per side, and
b) one (1) additional sign, the surface area of which shall not exceed five (5) square feet per side.

34.10.5.3       Any sign shall be stationary, square or rectangular in share, with a maximum of two (2) sides and shall be constructed of durable natural materials to the greatest extent possible.  Any sign shall be of modest design, coloration, and appearance to be compatible with the purpose and intent of the GCHOD and shall contain no fluorescent or neon elements.  No sign shall exceed eight (8) feet in height from the ground level to the top of the sign.  Unlighted historical markers and "circa" plaques constructed of wood, brass or bronze of modest and restrained design and measuring less than three (3) square feet in surface area shall be exempt.  Nameplates, warnings, land postings and similar displays not exceeding two (2) square feet in area and customarily associated with residential use shall be exempt. (Amended 3-8-2011)

34.10.6        <u>WEARE CENTER VILLAGE DISTRICT</u> - Deleted in its entirety. (Deleted 3-8-2011)

**34.11**        **APPLICABILITY**: This article does not apply to signs legally in place before the effective date of this article, provided however that all signs conform to articles 34.4.2, 34.4.3 and 34.7. (Replaced 3-11-2008)

**34.12**        **SEVERABILITY:**   If any provision of this Article 34 is determined to be unconstitutional, the other provisions shall continue in effect. (Amended 3-7-2016)

# <u>ARTICLE 35</u>

**35.0**        **SMALL WIND ENERGY SYSTEMS**

**35.1**        **PURPOSE:**  The small wind energy systems ordinance is enacted in accordance with RSA 674:62-66, and the purposes outlined in RSA 672:1-III-a.  The purpose of this ordinance is to accommodate distributed generation/small wind energy systems in appropriate locations, while protecting the public's health, safety and welfare.  In addition, this ordinance provides a permitting process for small wind energy systems to ensure compliance with the provisions of the requirements and standards established herein.

**35.2**        **DEFINITIONS:**
Meteorological Tower (met tower):  Includes the tower, base plate, anchors, guy wires and hardware, anemometers (wind speed indicators), wind direction vanes, booms to hold equipment for anemometers and vanes, data loggers, instrument wiring, and any telemetry devices that are used to monitor or transmit wind speed and wind flow characteristics over a period of time for either instantaneous wind information or to characterize the wind resource at a given location.  For the purpose of this ordinance, met towers shall refer only to those whose purposes are to analyze the environmental factors needed to assess the potential to install, construct or erect a small wind energy system.

Net metering: The difference between the electricity supplied over the electric distribution system and the electricity generated by the small wind energy system that is fed back into the electric distribution system over a billing period.

Power grid:  The transmission system, managed by ISO New England, created to balance the supply and demand of electricity for consumers in New England.

Shadow flicker:  The visible flicker effect when rotating turbine blades cast shadows on the ground and nearby structures causing the repeating pattern of light and shadow.

Small wind energy system:  A wind energy conversion system consisting of a wind turbine, a tower, and associated control or conversion electronics, which has a rated capacity of 100 kilowatts or less and will be used primarily for onsite consumption.

System height: The vertical distance from ground level to the tip of the wind turbine blade when it is at its highest point.

Tower: The monopole, guyed monopole or lattice structure that supports a wind turbine.

Tower height: The height above grade of the fixed portion of the tower, excluding the wind turbine.

Wind turbine:  The blades and associated mechanical and electrical conversion components mounted on top of the tower whose purpose is to convert kinetic energy of the wind into rotational energy used to generate electricity.

**35.3          PROCEDURE FOR REVIEW**

35.3.1        <u>Building Permit</u>:  Small wind energy systems and met towers are a permitted accessory use**.** No small wind energy system or met tower shall be erected, constructed, or installed without first receiving a building permit from the Building Inspector.   A building permit shall be required for any physical modification to an existing small wind energy system that materially alters the size and/or type of the small wind energy system or its location.   Like-kind replacements shall not require a building permit to be modified.  Met towers that receive a building permit shall be permitted on a temporary basis not to exceed 3 years from the date the building permit was issued.

35.3.2        It is important that small energy systems have the ability to perform properly. Therefore, systems will not be approved and sized based on the average wind speeds at that site location.  It shall be a requirement of this process to first obtain a building permit for a met tower to collect wind speeds in miles per hour (mph) for a minimum 12-month period.  The final size of the wind turbine: i) will be determined on the basis of the average wind speeds collected based on manufacturers specifications; and ii) cannot be sized larger than the primary needs for onsite consumption based on manufacturers specifications and applicant's monthly electricity usage.  While tower heights cannot exceed 150 feet, tower heights will only be as tall as necessary to perform properly based on met tower test heights and collected data.

35.3.3    <u>Application</u>:  Applications submitted to the Building Inspector shall contain a site plan with the following information:

i.      Property lines and physical dimensions of the applicant's property

ii.     Location, dimensions, and types of existing major structures on the property

iii.    Location of the proposed small wind energy system, foundations, guy anchors and associated equipment

iv.     Tower foundation blueprints or drawings

v.      Tower blueprint or drawings

vi.     Setback requirements as outlined in this ordinance

vii.    The right-of-way of any public road that is contiguous with the property

viii.   Any overhead utility lines

ix.     Small wind energy system specifications, including manufacturer, model, rotor diameter, tower height, tower type, nameplate generation capacity

x.      Small wind energy systems that will be connected to the power grid shall include a copy of the application for interconnection with their electric utility provider

xi.     Sound level analysis prepared by the wind turbine manufacturer or qualified engineer

xii.    Electrical components in sufficient detail to allow for a determination that the manner of installation conforms to State, Federal and International building or electrical codes or laws

xiii.   Evidence of compliance or non-applicability with Federal Aviation Administration requirements

xiv.    List of abutters to the applicant's property

35.3.4    <u>Abutter and Regional Notification</u>:  In accordance with RSA 674:66, the building inspector shall notify all abutters by certified mail upon application for a building permit to construct a small wind energy system.  The public will be afforded 30 days to submit comment to the building inspector prior to the issuance of the building permit.  The building inspector shall review the application for regional impacts per RSA 36:55. If the proposal is determined to have potential regional impacts, the building inspector shall follow the procedures set forth in RSA 36:57, IV.

**35.4    STANDARDS**

35.4.1    The Building Inspector shall evaluate the application for compliance to the following standards;

a.      Setbacks:  The setback shall be calculated by multiplying the minimum setback requirement number by the system height and measured from the center of the wind turbine base to property line, public roads, or nearest point on the foundation of an occupied building.

Minimum Setback Requirements

| Occupied Buildings on | Occupied Buildings on | Property lines of Abutting Property | Public |
|---|---|---|---|

| Participating Landowner Property | Abutting Property | and Utility Lines | Roads |
|---|---|---|---|
| 0 | 1.5 | 1.1 | 1.5 |

a.   Tower:  In no situation shall the tower height exceed 150 feet.

b.   Sound Level:  The small wind energy system shall not exceed 60 decibels using the A scale (dBA), as measured at the site property line, except during short-term events such as severe wind storms and utility outages.

c.   Small Flicker:  Small wind energy systems shall be sited in a manner that does not result in significant shadow flicker impacts.  Significant shadow flicker is defined as more than 30 hours per year on abutting occupied buildings.  The applicant has the burden of proving that the shadow flicker will not have significant adverse impact on neighboring or adjacent uses.  Potential shadow flicker will be addressed either through citing or mitigation measures.

d.   Signs:  All signs including flags streamers and decorative items, both temporary and permanent, are prohibited on the small wind energy system, except for manufacturer identification or appropriate warning signs.

e.   Code Compliance:  The small wind energy system shall comply with all applicable sections of the New Hampshire State Building Code.

f.   Aviation:  The small wind energy system shall be built to comply with all applicable Federal Aviation Administration including but not limited to 14 C.F.R. part 77, subpart B regarding installations close to airports, and the New Hampshire Aviation regulations, including but not limited to RSA 422-b and RSA 424.

g.   Visual Impacts:  It is inherent that small wind energy systems may pose some visual impacts due to the tower height needed to access the wind resources.  The purpose of this section is to reduce the visual impacts, without restricting the owner's access to the optimal wind resources on the property.

   i.   The applicant shall demonstrate through project site planning and proposed mitigation that the small wind energy system's visual impact will be minimized for surrounding neighbors and the community.  This may include, but not be limited to information regarding site selection, turbine design or appearance, buffering, and screening of ground mounted electrical and control equipment.  All electrical conduits shall be underground.

   ii.   The color of the small wind energy system shall either be a non-reflective, unobtrusive color that blends in with the surrounding environment.

iii.    A small wind energy system shall not be artificially lit unless such lighting is required by the Federal Aviation Administration (FAA).  If lighting is required, the applicant shall provide a copy of the FAA determination to establish the required markings and/or lights for the small wind energy system.

h.    Approved Wind Turbines:  The manufacturer and model of the wind turbine to be used in the proposed small wind energy system must have been approved by the California Energy Commission or the New York State Energy Research and Development Authority, or a similar list approved by the State of New Hampshire, if available.

i.    Utility Connection:  If the proposed small wind energy system is to be connected to the power grid through net metering, it shall adhere to RSA 362-A: 9.

j.    Access:  The tower shall be designed and installed so as not to provide step bolts or a ladder readily accessible to the public for a minimum height of 8 feet above ground.  All ground-mounted electrical and control equipment shall be labeled and secured to prevent unauthorized access.

k.    Clearing:  Clearing of natural vegetation shall be limited to that which is necessary for the construction, operation and maintenance of the small wind energy system and as otherwise prescribed by applicable laws, regulations, and ordinances.

**l.**    Small wind energy systems shall be allowed in the rural agricultural, commercial, residential, residential manufactured housing and industrial districts only.  They shall not be allowed in any wetland district or in or within 300' of any historic overlay village.  They may be allowed in the rural conservation overlay district and in the aquifer protection zone if they are allowed in the underlying district**.**

## 35.5    ABANDONMENT:

35.5.1    At such time that a small wind energy system is scheduled to be abandoned or discontinued, the applicant will notify the Building Inspector by certified US mail of the proposed date of abandonment or discontinuation or operations.

35.5.2    Upon abandonment or discontinuation of use, the owner shall physically remove the small wind energy system within 90 days from the date of abandonment or discontinuation of use.  This period may be extended at the request of the owner and at the discretion of the Building Inspector.  "Physically remove" shall include, but not be limited to:

a.    Removal of the wind turbine and tower and related above-grade structures.

b.  Restoration of the location of the small wind energy system to its natural condition, except that any landscaping, grading or below-grade foundation may remain in the after-conditions.

35.5.3   In the event that an applicant fails to give such notice, the system shall be considered abandoned or discontinued if the system is out-of-service for a continuous 12-month period.  After the 12 months of inoperability, the Building Inspector may issue a Notice of Abandonment to the owner of the small wind energy system.  The owner shall have the right to respond to the Notice of Abandonment within 30 days from Notice receipt date.  After review of the information provided by the owner, the Building Inspector shall determine if the small wind energy system has been abandoned.  If it is determined that the small wind energy system has not been abandoned, the Building Inspector shall withdraw the Notice of Abandonment and notify the owner of the withdrawal.

35.5.4   If the owner fails to respond to the Notice of Abandonment of if, after review by the Building Inspector, it is determined that the small wind energy system has been abandoned or discontinued, the owner of the small wind energy shall remove the wind turbine and tower at the owner's sole expense within 3 months of receipt of the Notice of Abandonment.  If the owner fails to physically remove the small wind energy system after the Notice of Abandonment procedure, the building inspector may pursue legal action to have the small wind energy system removed at the owner's expense. (New Article 3-10-2009)

# **ARTICLE 36**

**36.1**      **DRIVEWAYS** (new article added 3-10-2015)

**36.2**      **PURPOSE:** Driveways are, in effect, intersections. Therefore, they require certain controls to ensure safe access and exits to and from the property, as well as provide control and discharge of surface drainage in and around the entrance. The driveway standards in this section shall apply to the entire driveway, from the roadway to the structure, including any parking areas. For authority see RSA 236:13. All driveways connecting to the Town roads must be built and maintained in accordance with these specifications. A driveway permit must be obtained from the Code Enforcement Officer for every driveway, and any driveway over 400 feet must also receive approval from the Fire Chief.

The construction authorized by the issuance of a permit hereunder shall be completed within one year from the date of issuance, at which time the permit shall expire.  Renewals may be granted by the CEO for good cause shown, provided, however, that no more than 3 one-year renewals may be issued.

**36.3**      **PERMIT REQUIRED:**

36.3.1   Temporary Driveway Construction: Permits are required for temporary access to any designated Class V, Class VI or proposed public roadway, such as for logging

and other activities. Permits for temporary access shall expire one year after issuance. Upon expiration, all temporary driveways must be regraded to original conditions and the access obstructed. Temporary driveways are exempt from the entrance specifications (f) through (j) and from the geometric standards in this section. The person or entity seeking such a permit shall complete an application for such permit which shall be accompanied by a sketch, drawing or plan identifying the proposed work on the driveway, and the applicant may be required to provide security to ensure that any damage or alteration to the public highways of the Town of Weare occasioned by such construction  or use will be repaired as required.

36.3.2       Permanent Driveway Construction: A permit shall be obtained from the Code Enforcement Officer for the construction or reconstruction of a permanent driveway connecting to any designated Class V, Class VI or proposed public roadway. The person or entity seeking such a permit shall complete an application for such permit which shall be accompanied by a sketch, drawing or plan which will identify the proposed work on the driveway and demonstrate to the CEO that the proposed driveway will conform to the specifications contained below in this ordinance.

36.3.3  Driveway Modifications: A permit must be obtained before beginning any modification, paving or repaving of an existing driveway.  Only that portion of these regulations relating to the area within the town right of way shall apply.

36.3.4       Entrance Specifications:

36.3.4.1       No part of any driveway, including flares, shall be constructed outside of the applicant's frontage.

36.3.4.2       Driveways cannot interrupt the natural or ditch-line flow of drainage water.  In some cases where shallow ditch lines or natural drainage courses exist, driveways may be swaled at a point beyond the road shoulder to accommodate the flow of storm water.  In all other cases, driveways must have sufficiently sized culverts installed and maintained by the landowner. In any case in which a driveway is being installed relative to a lot that was part of a subdivision plan approved by the planning board, the driveway construction shall be consistent with and not interfere in any way with appropriate storm water management plans that are applicable to that subdivision. Additionally, such driveway construction shall comply with storm water statutes, rules and regulations.

36.3.4.3       Public Works Department shall determine if a culvert is necessary to carry storm water runoff from the town roadway. The size is to be determined by Public Works Department; the minimum size is 15" diameter.

36.3.4.4       An all-season safe sight distance of 200 feet in each direction is required unless the Public Works Department determines a lesser distance is satisfactory under the particular circumstances.

36.3.4.5    Driveways shall intersect the roadway at a preferred angle of 90 degrees but in no case shall the intersecting angle be less than 60 degrees.

36.3.4.6    Return radii for driveway flares shall not exceed 25 feet.

36.3.4.7    No centerline of a driveway will be permitted to be constructed within 100 feet of the centerline of a street intersection unless the Public Works Department determines a lesser distance will suffice to protect public safety.

36.3.4.8    Driveways must be constructed 30 feet wide where they meet the traveled way, tapered to 16 feet with a -2% slope from the traveled way for a distance of 8 feet or to the centerline of ditch, whichever distance is less.

36.3.4.9    Any driveway entering a paved road must have an 8-foot paved apron from edge of pavement.

36.3.5      Geometric Standards

36.3.5.1    The minimum allowable unobstructed width of a driveway shall be 16 feet, consisting of a 12-foot travel way with a 2-foot shoulder on each side.

36.3.5.2    An erosion and sedimentation control plan is required for all portions of every driveway that drains towards the roadway. Driveways over 100 feet and with a down slope towards the road, must address the additional runoff with either remediation or off-site improvements. This plan is to be prepared by a Professional Engineer or Certified Professional in Erosion and Sedimentation Control. The Code Enforcement Officer may waive this requirement, if conditions warrant.

36.3.5.3    The maximum allowable grade of a driveway (positive or negative) shall be 10%, provided, however, that the planning board may grant a conditional use permit in accordance with Weare Zoning Ordinance Article if the board determines that construction does not adversely affect the environment or the public interest  and the applicant has secured a favorable recommendation from the Fire Chief.

36.3.5.4    Access must be to within 50 ft. of each dwelling.

36.3.5.5    Minimum vertical clearance height must be 13 ft. 6 in.

36.3.5.6    The minimum centerline radius is 42 feet. An additional 4 ft. of travel way width is required for curves with a horizontal inside radius of less than 100 ft. and a central angle greater than forty-five degrees.  This additional width shall begin at the point of curvature and continue to the point of tangency and includes any subsequent reverse curve.  A 5:1 taper shall be used to transition from the base width into and out of the widened width.



36.3.5.7    An all-weather travel way surface shall be capable of supporting load imposed by fire apparatus. An approved all-weather driveway surface means suitable aggregate material over compacted sub-grade soil.

36.3.5.8    All driveways exceeding 150 ft. in length shall have a turnaround constructed. If a turnaround is required it must conform to the following:

36.3.5.8.1    Be within 150 ft. of dwelling.  Can be T-, Y-, or circular in shape, T- and Y-shapes require minimum 40 ft. legs as measured from driveway centerline.

36.3.5.8.2    Circular shape requires minimum 42 ft. radius on the driveway centerline.

36.3.5.9    All driveways exceeding 800 ft. in length shall have a turnout constructed at approximately the midpoint of the driveway and continuing approximately every 400 ft. along the entire length of the driveway. If a turn-out is required it must conform to the following:

36.3.5.9.1    Minimum 50 ft. long to create travel width of 20 ft. allowing two-way travel on driveway.

36.3.5.9.2    Reasonably located, based on sight distance, road curvature, and grade.

36.3.5.10    All gate entrances and similar structures shall have a net clear opening of 16 feet. All gates providing access from a public road shall be located at least 30 ft. from the roadway and shall open to allow a vehicle to stop without obstructing traffic on the roadway. Where a gated entrance is locked, a lock box or other emergency release device approved by the Fire Chief shall be provided for emergency access.

36.3.5.11    When a bridge is required as part of a driveway, it is to be constructed and maintained in accordance with nationally recognized standards and have a designed live loading capacity sufficient to carry the imposed load of fire

apparatus. An evaluation by a professional engineer will be required to determine the imposed load rating for all of the responding fire apparatus and shall be approved by the Fire Chief. Vehicle load limits shall be posted at both entrances to the bridge.

36.3.6          <u>Compliance Inspections</u>

36.3.6.1        The Code Enforcement Officer may require a certification or as-built plans prepared by a licensed land surveyor to demonstrate actual centerline grade. The CEO may issue a cease and desist order if this requirement is not met.

36.3.6.2        A pre-paving inspection is required in order to verify compliance. The CEO may issue a cease and desist order if this requirement is not met.

36.3.6.3        Both the Fire Chief and Public Works Department shall inspect the driveway for compliance with these specifications prior to the issuance of the Certificate of Occupancy.

36.3.6.4        A certificate of occupancy shall be issued only if all of the provisions of these driveway regulations, and in particular the requirements of 6a, 6b, and 6c, have been satisfactorily completed. (Added 3-10-2015)

| | |
|---|---|
| Adopted: | March 1988 |
| Revised: | March 1989 |
| Revised: | March 1990 |
| Revised: | March 1991 |
| Revised: | March 1992 |
| Revised: | March 1993 |
| Revised: | March 1994 |
| Revised: | March 1995 |
| Revised: | March 1998 |
| Revised: | March 1999 |
| Revised: | March 2000 |
| Revised: | March 2002 |
| Revised: | March 2003 |
| Revised: | March 2004 |
| Revised: | March 2005 |
| Revised: | March 2006 |
| Revised: | March 2007 |
| Revised: | March 2008 |
| Revised: | March 2009 |
| Revised: | July 6, 2009 (BOS public hearing-per OEP for FIRM map adoption) |
| Revised: | March 2010 |
| Revised: | March 2011 |
| Revised: | March 2012 |
| Revised: | March 2013 |
| Revised: | March 2014 |
| Revised: | March 2015 |
| Revised: | March 2016 |
| Revised: | March 2017 (Article 30-C) |
| Revised: | March 2019 (Article 4 Travel Trailer, Article 3.13.3 corrected/moved to 29.13 & correction Article 5.1.2) |

A true copy, Attest: _____Clerk of Weare, NH dated September, 2017