UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

*****************************************
Grace New England, et al.,                *
                                          *
           Plaintiffs,                    *
v.                                        *     Docket No. 1:24-cv-00041-PB-AJ
                                          *
Weare, NH, Town of, et al.,               *
                                          *
           Defendants.                    *
*****************************************

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
OBJECTION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants, the Town of Weare, New Hampshire, Craig Francisco, and Tony Sawyer, by and through counsel, Gallagher, Callahan & Gartrell, P.C., hereby submit this Memorandum of Law in Support of their Objection to Plaintiffs' Motion for Summary Judgment, and state as follows:

**SUMMARY OF OBJECTION**

Plaintiffs, Pastor Howard Kaloogian and Grace New England (collective, the "Church" or "Plaintiffs")[1], have taken a routine land use matter, uniformly applicable to all non-residential properties in the Town of Weare, and have attempted to shoehorn it into a violation of constitutional magnitude. The evidentiary records reflects a garden-variety land planning process, with neutral and generally applicable ordinances and regulations, which have been applied to properties regardless of their religious or secular use. The evidentiary record further establishes a complete lack of meaningful participation from the Church in this routine land

---

[1] Defendants do not concede that Grace New England has standing to bring this action. Howard and Martha Kaloogian are the record owners of the subject property, and, as property owners, bear the obligation of complying with local land use ordinances and regulations. Grace New England is merely a domestic non-profit corporation operating on the subject property, but holds no ownership interest.

1

planning process. The record is so devoid of any evidence that the Church was targeted on the basis of religion, that the Church has taken evidence out of context and relied on hypothetical fears to suggest the Town has targeted the Church.

The material facts in this matter are not in dispute. However, the significance of those facts, and their application to the relevant law, is where the Parties disagree. Contrary to the Church's position, the undisputed material facts do not permit Plaintiffs to recover on any claim, and no reasonable trier of fact could find in Plaintiffs' favor.

## RESPONSE TO CONCISE STATEMENT OF MATERIAL FACTS

The material facts that this case turns upon are not in dispute. However, the Church has mischaracterized certain facts, or provided facts without appropriate context, in order to draw an inference that the Town has particularized animus toward the Church's religious use. Defendants would be remiss to leave these facts unaddressed, and let these mischaracterizations remain.

**(a) Plaintiffs mischaracterize prior guidance from the Planning Board.**

Plaintiffs present a discussion that Howard Kaloogian purchased his home with the intention of hosting events. (Pl.s' Mem. of Law p. 3.) Plaintiffs then explain that, prior to hosting events, Howard Kaloogian and his wife presented their idea to the Planning Board, and the Town did not take any action to require a site plan review for the Property. (Pl.'s Mem. of Law p. 3.) Plaintiffs try to draw an inference that the Town took no issue when presented with secular events occurring at the Property, and only took action to require site plan review when the Property use became religious. (Pl.'s Mem. of Law p. 3.)[2] To the contrary of Plaintiffs' intended inference, the Planning Board previously <u>did</u> take issue with a change of use that would

---

[2] There is no support in the evidentiary record for this inference. Plaintiffs cite only to Howard Kaloogian's Affidavit, which was prepared prior to discovery in this matter, and which is demonstrably incorrect when compared to the meeting minutes and video recording of the prior Planning Board meeting, which speaks for itself.

introduce an increase of regularly scheduled secular events at the Property. On May 10, 2019, Howard and Martha Kaloogian participated in a Conceptual Review before the Planning Board to present their idea of an event venue. (Def.s' Supp. App. Ex. JJ, May 10, 2019 Planning Board Meeting Minutes.) The Kaloogians were informed that the event venue use was not permitted in the Residential Zoning District, and they would need to obtain a variance from the ZBA to pursue this concept. (Def.s' Supp. App. Ex. JJ, May 10, 2018 Planning Board Meeting Minutes.) Further, the Planning Board informed the Kaloogians that, after the ZBA granted a variance, they would need to return to the Planning Board for a site plan review of the event venue, to review parking, noise, and traffic. *See* May 10, 2018 Planning Board Recording, available at https://www.youtube.com/watch?v=2lsSboF5zy8.[3] Unlike the Plaintiffs' intended inference, the Town has taken issue with the Kaloogian's secular and religious changes of use that would increase intensity at the Property, and has required site plan review for both – the only distinguishing factor is that the Kalooigans abandoned the concept of their secular event venue (negating the need for site plan review), and fully effectuated their plans for the Church (necessitating site plan review).

    **(b) <u>Plaintiffs mischaracterize the increased use as a "home church."</u>**

At various points, Plaintiffs attempt to characterize the Church as a "home church" and merely an accessory to the primary use as a residence. Set aside the fact that the barn is used "primarily, and nearly solely" for the Church – opposed to any other residential purpose, such as storage, a workshop, or housing animals – and hosts well over 200 public gatherings a year for Church-related activities. (H. Kaloogian Dec. at ¶ 7, 8; Def.s' App. Ex. A, H. Kaloogian Depo at 32:8-18.) Plaintiffs attempt to characterize that the Church is a modest "home church" and

---

[3] General discussion regarding the event venue begins at 11:30. Discussion regarding the requirement to obtain site plan approval for the event venue begins at 32:00.

therefore a residential use, rather than a non-residential use that is subject to the Weare Site Plan Review Regulations. The record does not support this characterization. To the contrary, the record demonstrates that the Church has made significant and purposeful steps to expand beyond a residential or "home church" – such as corporate affiliation and formation, establishing separate bank accounts, routine advertising on multiple platforms, establishing a website, placing signage on public ways, modifying the Property to accommodate parking, and establishing a dedicated Church building in the barn. (Def.s' App. Ex. F, G, H, I , J, CC, DD, EE, FF, GG.) The record further reflects that, when the Kaloogians hosted smaller-scale gatherings more akin to a "home church," such as Bible studies in their family room and engaging in communion in the kitchen and dining room of the residence, the Town took no enforcement action and did not require site plan review. In other words, when the Kaloogians hosted small-scale gatherings and operated as a true "home church," the Town took no enforcement against this traditionally residential use, but when the Church significantly expanded and became a public-facing activity within a dedicated outbuilding, the use expanded beyond residential into a non-residential change of use.

**(c) Plaintiffs mischaracterize routine coordination between municipal departments as a coordinated effort against the Church.**

Plaintiffs attempt to characterize that there was a coordinated effort on behalf of the Town to "force the Church to obtain site plan approval before engaging in religious activities at Pastor Kaloogian's home." (Pl.'s Mem. of Law p. 4.) As an initial matter, Plaintiffs have not set forth any credible fact that demonstrates an improper effort by the Town to target the Church. Instead, Plaintiffs detail the coordination that is an inherent and proper part of municipal governance – a town administrator manages day-to-day operations of the Town, including directing various departments to address specific concerns; a code enforcement officer investigates areas of

4

concern, and initiates enforcement measures when there is noncompliance with local ordinances; a building code inspector reviews finished work for safety and code compliance, and reports conditions to the State Fire Marshal's Office when there is a potential life safety violation; a planning board reviews land use matters and determines what matters must come before it. Plaintiff has merely described the ways in which an organized government operates, not a coordinated effort against the Church.

Plaintiffs attempt to establish improper coordination by stating that the "Town initially refused to issue the permit forms to the plumber." (Pl.s' Mem. of Law p. 6.) Plaintiffs do not provide any true evidentiary support for this conclusion, and instead, cite to Howard Kaloogian's affidavit that was prepared at the outset of litigation, which is demonstrably incorrect when compared to the evidentiary record that was established through discovery. To the contrary of Plaintiffs' baseless assertion, the evidentiary record reflects that any delays in obtaining mechanical permits were due to the plumber/gas fitter voluntarily cancelling the permit and notifying the Town that he did not want to be associated with work done at the Kaloogians' property. (Def.s' App. Ex. Z, AA.) Plaintiffs try to draw an inference that the Town intentionally withheld mechanical permits to prevent the Church from improving its building. But the evidentiary record actually establishes that the condition of heating improvements in the barn – which were installed by Pastor Kaloogian – caused enough concern for the professional plumber/gas fitter that he turned down the project, cancelled the permit, and notified the Town that he wanted no association with the work. (Def.s' App. Ex. Z, AA.)

    **(d) <u>Plaintiffs mischaracterize statutory processes and penalties as an individualized attack on the Church.</u>**

Plaintiffs next discuss that the Church was issued a cease and desist letter, and threatened with significant daily fines if it did not submit a site plan. (Pl.s' Mem. of Law p. 6.) Plaintiffs

5

seemingly try to draw an inference that the Church was subjected to a heavy-handed or disproportionate response from the Town. Both the issuance of cease and desist orders, and the monetary amount for daily fines, are clearly established by statue and further codified in the Weare Zoning Ordinance. RSA 676:17; RSA 676:17-a; Ordinance, Art. 9.1, Art. 32.10. Plaintiffs want to characterize the Town's actions as discretionary and specifically targeted at the Church to hinder religious exercise, but the record establishes that the Town was applying generally applicable enforcement mechanisms that are rooted in state statue and Town Ordinance. Further, the record establishes that the cease and desist letter was withdrawn after only three days, no fines have ever been assessed or collected from Plaintiffs, and this enforcement mechanism has been imposed upon secular uses as well. (Defs.' App. Ex. E, T. Sawyer Depo. at 34:2-35:9 (discussing that it is infrequent that the Town has to send a cease and desist letter, because most people come before the Planning Board or Zoning Board of Adjustment when a problem is identified, but the Town has issued cease and desist letters for an individual who had a porta potty near water, and for another individual who operated an Airbnb out of his house).)

## ARGUMENT

**(I)** **Plaintiffs have no basis to recover under RSA 674:76, therefore, Plaintiffs' request for summary judgment as to Count IV must be denied.**

Plaintiffs dedicate a considerable portion of their Memorandum to arguing various aspects of RSA 674:76. Yet none of these arguments is persuasive, and none of these arguments entitle Plaintiffs to summary judgment.

**(a)** **A Federal District Court lacks jurisdiction to hear disputes arising out of RSA 674:76.**

The statute at issue in this litigation, RSA 674:76, has been codified by the New Hampshire Legislature in Chapter 674, which dictates the contours of local land use planning

6

and regulatory powers. This Chapter sets forth the broad powers afforded to planning boards and zoning boards of adjustment, such as adopting regulations and ordinances and setting forth the authority to review development within a community. This Chapter also sets forth specific criteria that a planning board or zoning board of adjustment must consider for specific types of development and places some limits on the powers that have been granted to these boards. RSA 674:76 serves as one such limitation – within the broad powers to adopt a zoning ordinance and a site plan review regulation, a municipality has some limitations in adopting regulations as they pertain to land or structures used for religious purposes.[4]

RSA 674:76 does not, in itself, create a standalone private cause of action that a would-be plaintiff may recover under. Rather, an applicant comes before a planning board seeking approval of their site plan, or comes before a zoning board of appeals seeking relief from the local zoning ordinance. If an applicant is unsuccessful in obtaining that approval or relief, they may file a statutory appeal to the New Hampshire Superior Court pursuant to RSA 677:4 (zoning decisions) or RSA 677:15 (planning decisions). The standard upon which a statutory appeal is analyzed is whether the planning or zoning decision was illegal or unlawful. RSA 677:4, 677:15. At that point, with a final decision in hand from the municipal board, a plaintiff could argue through their statutory appeal that the application of a zoning ordinance or site plan review regulation was illegal or unreasonable based on the limitations arising out of RSA 674:76.

However, RSA 674:76 cannot be invoked in a vacuum, without an underlying decision from a land use board, to permit Plaintiffs' recovery. Rather, RSA 674:76 must be assessed in the context of a true and final decision from a local land use board, which can then be reviewed by the New Hampshire Superior Court through the prescribed appellate procedure. Plaintiffs have

---

[4] As detailed below, it is ambiguous to what extent this statute places limitations on local land use boards.

7

not obtained a final decision from the Weare Planning Board, nor have they attempted to bring a proper appeal. Instead, Plaintiffs have bypassed all required procedures for local land use matters and all adequate state law remedies, to impermissibly attempt to invoke the jurisdiction of this Court.

Further still, it is exceedingly rare for a Federal Court to exercise jurisdiction over local land use matters, even more so when it is a local land use matter that has yet to go through the municipal process or the state appellate process. Federal Courts have been clear that they are loathe to sit as super zoning tribunals. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). The rationale being that "in the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief." *Nestor Colon Medina & Successores, Inc. v. Custudio*, 964 F.2d 32, 45 (1st Cir. 1992).

Here, Plaintiffs have raised RSA 674:76 as a standalone cause of action, which would have been improper even at the state court level, because it is presented as divorced from any final decision by the Weare Planning Board or Zoning Board of Adjustment. But Plaintiffs take their fatal error one step further, by raising this matter in the Federal District Court, without having exhausted the adequate state law remedies. Against this backdrop, this Court lacks jurisdiction to decide matters arising out of RSA 674:76.

**(b) The Planning Board has not had an opportunity to determine which land use provisions are applicable to the Church, therefore any violation of RSA 674:76 is purely speculative.**

Even if this Court determines that it has jurisdiction to assess this local land planning dispute, Plaintiffs' arguments are flawed because they *assume* that the Town would apply the full scope of the Site Plan Review Regulations and the Zoning Ordinance to the Property, then further *assume* that the application of those provisions would violate RSA 674:76. Plaintiffs have

8

not submitted an application or other documentation to provide even basic land use information to the Planning Board, such as the nature and intensity of use, hours of operation, or improvements or modifications to the barn and property. Nor have Plaintiffs come in for a Conceptual Review, to have an informal conversation with the Planning Board about how the Church uses the property, to then determine if further municipal review is required, and, if so, the scope of that review. Nor have Plaintiffs participated in Site Plan Review, or truly requested waivers of application materials, in order to inform the Planning Board about the property use and determine the scope of municipal review.[5] It is the process of submitting an application – or some communication capturing the information of an application – that allows the Planning Board to publicly notice it's meeting, let the community know a matter will be heard, and in an open session discuss and determine the type of review a property may need to undergo. Until a property owner makes some affirmative step to participate with the Planning Board, the Planning Board cannot exercise its powers or make decisions. Plaintiffs have not participated in even the most basic degree of municipal review, therefore, the Planning Board has not yet made any determination about what Site Plan Review Regulation or Zoning Ordinance provisions would be applicable. In turn, the Planning Board has not had an occasion to actually apply any of the specific provisions of the Site Plan Review Regulation or Zoning Ordinance. It would be complete conjecture to assume what provisions the Planning Board would apply and how the Planning Board would vote on true waiver requests, to then draw a conclusion that the Planning Board has violated RSA 674:76 on the basis of that hypothetical scope of review.

---

[5] Plaintiffs characterize that they have sought waivers, but in actuality submitted a request to be exempted from the entirety of the Planning Board process. (Def.s' App. Ex. V.) This is distinguishable from a true waiver request, in which an applicant provides an itemized list of application materials/information that are inapplicable to their project, which allows the Planning Board to narrow the scope of submission materials and review to only those items that are pertinent to the project being reviewed. (Def.s' App. Ex. Y-1 (demonstrating a true waiver request filed by another local church regarding certain application materials, an itemized list of the specific items that are inapplicable to that project, and Planning Board discussion to grant the waiver and narrow the scope of review).)

**(c) <u>Plaintiffs' interpretation of RSA 674:76 is not supported by the text of the statute.</u>**

Plaintiffs' next flaw is making an interpretation of RSA 674:76 that is not supported by a facial reading of the statute, and which fails to recognize that Planning Board review is plainly contemplated by the language of the statute. Plaintiffs initially present an argument that RSA 674:76 operates as a total prohibition against municipalities regulating land and structures used for religious purposes, and any attempt at regulation constitutes a violation of the statute. (Pl.s' Mem. of Law p. 9-11.) The plain language of the statute does not support this reading. To the contrary, RSA 674:76 plainly contemplates that religious "land and structures may be subject to objective and definite regulations concerning the height of structures, yard sizes, lot area, setbacks, open space, and building coverage . . ." Therefore, there is no blanket prohibition that exempts a religious land or structure from municipal zoning ordinances or site plan review regulations. At most, the statute limits the scope of which provisions in a zoning ordinance or site plan review regulation could be applicable to religious land or structures.

Plaintiffs ultimately concede this point, and discuss that the statute contains a limited and defined set of permissible areas of regulation. Plaintiffs try to distance themselves from this limited and defined set of permissible regulations by arguing that the barn is a 200-year-old structure that "cannot have issues" with those categories. (Pl.s' Mem. of Law p. 12.) Assuming, *arguendo*, that the enumerated list of regulations in the statute is a finite list of what items a municipality may review, the Weare Planning Board is entitled to require site plan review to assess those finite items.[6] Pastor Kaloogian has renovated the Property to accommodate visitors, such as installing a retaining wall and flattening roughly 180 feet of embankment to allow off-

---

[6] Defendants do not concede or advocate for a statutory reading that the enumerated list of regulations in RSA 674:76 are an exclusive list of items a municipality may review. To date, there is no decisional law to interpret whether the statute presents a finite list of land use regulations that may be applied or is illustrative of the types of regulations that may be applied.

10

street parking. (Pl.s' Mem. of Law p. 3; H. Kaloogian Aff. ¶ 7.) This type of property modification implicates yard size, setbacks, and open space, which are within the enumerated list of permissible regulations in RSA 674:76. In sum, it is pure speculation to assume what regulations the Planning Board would apply and whether those regulations are outside of the categories specifically contemplated in RSA 674:76, but the evidentiary record establishes that even the finite list of regulations in the statue would be applicable to the modifications made by the Church and subject to municipal review.

### (d) Plaintiffs rely on non-precedential and irrelevant sources to interpret RSA 674:76.

Plaintiffs' final flaw is relying on non-binding and irrelevant sources of information to support the proposition that the Town should interpret and apply RSA 674:76 in a specific way. It is irrelevant that the Town of Stratham has amended its zoning ordinance to reflect the language of RSA 674:76. The Stratham Zoning Ordinance is not at issue in this lawsuit, is not applicable to the Weare Planning Board, and is the product of that community proposing a zoning amendment, holding a public hearing, and the citizens of Stratham voting to adopt the amendment. The fact that another municipality has adopted certain zoning provisions has no bearing on the issues in this lawsuit. The materials from the New Hampshire Municipal Association are similarly unpersuasive. The NHMA provides general guidance and support for municipalities, but it does not render binding decisions and does not provide individualized legal advice. Until a court has rendered an interpretation of RSA 674:76, the NHMA is merely discussing its own interpretation of the law, which has no bearing on the issues in this case. Lastly, Plaintiffs point to a Massachusetts state law that has been interpreted by Massachusetts state courts to support the proposition that the Town should interpret RSA 674:76 in a particular way. The salient point is that the Town has not yet had an opportunity to interpret and apply the

contours of RSA 674:76, because the Church has yet to come before the Planning Board, but even when the Town is presented with a circumstance that requires interpretation of RSA 674:76, binding guidance does not come from other municipalities, the NHMA, or state laws from other jurisdictions.

**(II)** **Plaintiffs have no basis to recover pursuant to Free Exercise Clause of the First Amendment, therefore, Plaintiffs' request for summary judgment as to Count I must be denied.**

Plaintiffs fail to present any concrete or credible evidence that their religious expression has been burdened. Plaintiffs further fail to identify any relevant law that lacks neutrality or general applicability. On these grounds, Plaintiffs cannot prevail on their Free Exercise claim.

**(a) Plaintiffs have not established that their religious practices have been burdened.**

Plaintiffs rely on the baseless conclusion that their religious practice has been burdened, without providing any evidentiary support to reach that conclusion. The Church points to the September 30, 2023 letter from the Planning Board, requiring site plan review, as interfering with the Church's religious practice. (Pl.s' Mem. of Law p. 15.) Plaintiffs further point to the October 23, 2023 cease and desist letter (which was withdrawn after three days and for which fines have never been assessed or collected) as interfering with the Church's religious practice. (Pl.s' Mem. of Law p. 16.) In totality, the Church is relying on limited communications from the Town to claim that it has been burdened. But the Church never draws a connection to how these communications, or even the requirement of site plan review itself, burdens the Church's religious exercise. It is well established in the record that the Church has continued to hold every Saturday service, Bible study, movie night, and fellowship group, since the Church has opened and without disruption from the Town. The Church cannot credibly claim that its religious

practice has been hindered or altered in any way as a result of the Town enforcing the Zoning Ordinance.

Even more so, the Church does not establish how site plan review could burden religious exercise. The evidentiary record establishes that site plan review is ordinarily concerned with parking, traffic, and septic. The Church offers no explanation for the ways in which assessing adequate parking, traffic, or septic could, or has, impacted any aspect of the Church's religious practices. Plaintiffs' arguments amount to being bothered that they are required to participate in the local land use process, but fail to establish a cognizable burden upon their religious exercise.

**(b) <u>The provisions of law at issue are neutral and generally applicable.</u>**

Plaintiffs next try to argue that the Weare Zoning Ordinance and/or Weare Site Plan Review Regulations are not neutral or generally applicable, therefore, this case turns on a strict scrutiny analysis. (Pl.s' Mem. of Law p. 17.) It is well established that a law which is neutral and of general applicability need not be justified by a compelling governmental interest, even if the law has the incidental effect of burdening a particular religious practice. *Church of Lukumi Babalu Aye, Inc. v. city of Hialeah*, 508 U.S. 520, 530 (1993). The protections of the Free Exercise Clause only pertain when a law discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons. *Id*. at 531. Here, the provisions of the Weare Site Plan Review Regulation do not make any distinction on the basis of religious conduct, and any grievances the Church raises are merely incidental effects from generally applicable and neutral regulations.

This dispute arose from the requirement that, when a property has undergone a change of use, it must come before the Planning Board to ensure that the new use is compatible with the public health, safety, welfare, and prosperity objectives of the Weare Site Plan Review

Regulations. In this particular circumstance, Plaintiffs' change of use – from a single-family residence to a public-facing place of assembly gathering multiple times a week – triggered the need for Planning Board review to ensure that the new non-residential use is compatible with the protections in the Weare Site Plan Review Regulations. The provisions at issue are triggered solely on the basis that a property features non-residential uses, and there has been a change from a prior use to the current use. These provisions do not contain any statement or inference that site plan review turns on whether a use is religious or secular.

The Weare Site Plan Review Regulations plainly state "the Weare Planning Board adopts the following regulations governing the review of non-residential site plan, multifamily development and residential condominiums, whether or not such development includes a subdivision or re-subdivision of the site." (Def.s' App. Ex. N, Art. I.) The Weare Site Plan Review Regulations are generally applicable to any property use that is categorized as non-residential, multifamily, or residential condominium. The Site Plan Review Regulations are devoid of any language or suggestion that applicability turns on whether a use is religious or secular.

The Weare Site Plan Review Regulations further, and plainly, state "whenever any development or change or expansion of use of a site governed by these regulations is proposed or whenever any changes are proposed which differ from an existing site plan as previously approved by the Planning Board; and before any construction, land clearing, building development or change is begun; and before any permit for the erection of any building or authorization for development on such site shall be granted, the owner of the property or his authorized agent shall apply for and secure from the Planning Board approval for such proposed site development in accordance with the procedures outlined in this regulation." (Def.s' App. Ex.

14

N, Art. III.) Again, the regulation broadly applies to any property undergoing a change of use, regardless if the use is religious or secular.

Plaintiffs attempt to argue that, because there is discretion in whether site plan review is required of a property owner, and there is discretion in whether waivers/exemptions are granted to an applicant, the provisions at issue are not generally applicable. (Pl.s' Mem. of Law pp. 17-18.) As addressed above, there is no facial reading of the Site Plan Review Regulations that supports an argument that site plan review is required on the basis of religious versus secular uses. Similarly, there is no facial reading of the waiver procedure that supports an argument that waivers/exemptions are assessed on the basis of religious versus secular uses. "The Planning Board may waive the requirements for any of the specific items outlined in these Regulations. Before granting a waiver, the Board shall find that requiring all the information would be inconsistent with the intent of these regulations, and the lack of such information will not impair or prejudice the Board's review." (Def.s' App. Ex. N, Art. XV.) The plain language of the provision is clear, that waivers are available to all applicants and assessed on what information is necessary to support the Board's review, but there is no distinction about waiver procedures on the basis of religious versus secular applicants.

A facial reading of the provisions at issue does not support Plaintiffs' argument that the Site Plan Review Regulations lack general applicability and neutrality. But more important to the inquiry, the Town's practices in applying these provisions demonstrate general applicability and neutrality that run contrary to Plaintiffs' assertions. Both secular and religious uses have been required to undergo site plan review when the property has changed or expanded use. For example, the Planning Board has required review when a woman had a secular change of use from a single-family residence to a book club and swap shop in the basement of her home.

(Def.s' App. Ex. E, T. Sawyer Depo at 63:21-65:21.) The Planning Board has also required a Conceptual Review – the precursor to determine if full site plan review is required – for the secular uses of opening a farm stand to the public, opening a stand to sell firewood to the public, and placing a cooler to sell eggs to the public. (Def.s' App. Ex. D, C. Francisco Depo at 30:15-19; 73:17-75:19.)

Further, both secular and religious uses have been granted waivers for specific application materials that were unnecessary for the associated site plan review. For example, the Holy Cross Episcopal Church was granted waivers from materials related to solid waste disposal, signage, soil surveys, easements, and construction timetables because those items were irrelevant to that church's project. (Def.s' App. Ex. Y-1.) Similarly, the Christ Community Church requested waivers from nine application items that were irrelevant that church's project, and the Planning Board unanimously granted the waivers. (Def.s' App. Ex. Y-3.)

As demonstrated by a plain reading of the Weare Site Plan Review Regulations, the regulations are neutral and generally applicable to all non-residential uses, without consideration to whether the use may be religious or secular. And, as demonstrated by the evidentiary record, the regulations have been applied neutrally to properties, whether the use may be religious or secular. There is no textual or evidentiary basis to give credence to Plaintiffs' argument that the Planning Board utilizes its discretion to treat religious uses any differently than secular uses.

**(III)** **Plaintiffs have not, and cannot, establish a violation of the Substantial Burden provisions of RLUIPA, therefore, Plaintiffs' request for summary judgment as to Count II must be denied.**

As addressed above, the Church has not identified any of its religious practices that have been burdened by the requirement to undergo Site Plan Review. It follows that, if Plaintiffs are

16

unable to put forth evidentiary support for the lower threshold of a burden, they have no evidentiary support for the heightened standard of a substantial burden.

Plaintiffs again rely on speculation to argue that a hypothetical set of substantial burdens will arise if they participate in site plan review. Speculation about a future set of burdens, is, of course, insufficient to establish a ripe RLUIPA claim.

But further, there is nothing arbitrary or unlawful about the potential list of items that the Planning Board *could* consider, *if* the Church participated in site plan review. Chairman Franciso explained that Site Plan Review explores information about hours of operation, number of attendees, parking areas, and impacts to septic. (Pl.s' Mem. of Law p. 22.) These potential areas of review are not arbitrary, rather, they follow closely with the stated purposes of the Weare Site Plan Review Regulation. Inquiries about the hours of operation are directly related to issues of lighting and pedestrian movement (Art. II(C)(3) and (5)); inquiries about congregation size are directly related to vehicular and pedestrian movements and controls, as well as adequate fire safety (Art. II(C)(4) and (5)); inquiries about parking are directly related to vehicular and pedestrian movements, as well as ensuring adequate access for firefighting and emergency equipment (Art. II(C)(3) and (4), Art. II(G)); inquiries about the Church's septic system are directly related to guarding against inadequate groundwater protection and burdens on private facilities (Art. II(C)(3) and (6)). (Def.s' App. Ex. N, Art. II.) Plaintiffs attempt to characterize that the Town has expressed a desire to "micromanage the details of how the Church may operate . . . regarding everything from when services are hosted to how the worship space is appointed." (Pl.s' Mem. of Law pp. 22-23.) There is no support in the evidentiary record to suggest that the Town has any intent of micromanaging religious exercise and the Church's operations. To the

17

contrary, the Town has identified routine land planning matters that speak directly to protecting public health, safety, and welfare.

### (IV) **Plaintiffs have not, and cannot, establish a violation of the Equal Terms provisions of RLUIPA., therefore, Plaintiffs' request for summary judgment as to Count III must be denied.**

Plaintiffs have failed to set forth viable secular comparators that have a high-degree of similarity to the Church. The Church has made a concerted effort to advertise and invite any member of the public, who may arrive in unknown quantities, to visit the Property on a twice-weekly basis, year-round. This year-round increase in attendees creates increased traffic to reach the Church, and an increased number of vehicles parking along a rural road, sometimes at evening hours during dark winter months. The Church also presents an increased number of people assembling in an antique barn that has not been reviewed for fire safety or means of access for emergency vehicles. The Church presents an overall increase to the intensity of use at the Property.

Plaintiffs do not identify any secular use on any other property in Weare that has received more favorable treatment than the Church. Plaintiffs rely only on other secular events that have been hosted at the Kaloogians' property. The fundamental flaw in Plaintiffs' arguments is that these other events are highly distinguishable from the Church. The Robert F. Kennedy, Jr. event, the backyard wedding, and the Pine Tree Riot event are all one-time events, that required an RSVP to have a finite number of attendees, that utilized porta-potties, that were held for a brief number of hours during daylight, and were held during times of the year when attendees could be outside. These isolated events are a far cry from the ongoing and recurrent intensity that is presented by the Church. In the absence of true secular comparators, the Church cannot credibly claim that secular uses are receiving more favorable treatment.

**(V)** **Plaintiffs have not, and cannot, establish a violation of Pt. 1, Art. 5 of the New Hampshire Constitution, therefore, Plaintiffs' request for summary judgment as to Count V must be denied.**

For the same reasons set forth in more detail in Section II above, the Town has not violated Pt. 1, Art. 5 of the New Hampshire Constitution. The Church's religious exercise has not been burdened or restrained in any manner. Further, the Weare Zoning Ordinance and Weare Site Plan Review Regulations make no distinction of applicability on the basis of religious use, and have not been enforced or applied in practice on the basis of religious use. Because the Church's religious exercise has not been restrained or altered as a result of the local regulations, and because the regulations are neutral and generally applicable, Plaintiffs cannot establish a violation of the New Hampshire Constitution.

**(VI)** **Plaintiffs provide no argument or evidentiary support to warrant Defendant Sawyer or Franscisco's inclusion in this lawsuit.**

Plaintiffs have sued Defendants Tony Sawyer and Craig Francisco in their individual and official capacities. Plaintiffs have not put forth any argument, or any evidentiary support, to even suggest that either of these Defendants should be held individually liable in this matter. The scant allegations regarding each Defendant fall squarely within the routine and expected duties in their respective roles as Code Enforcement Officer and Planning Board Chair. In the absence of any argument or credible allegation of wrongdoing, there is no basis for either Defendant to remain in this action.

## CONCLUSION

For the reasons set forth herein, and the reasons set forth in additional detail in the Defendants' Motion for Summary Judgment and Supporting Memorandum of Law, the Plaintiffs have not demonstrated any basis for recovery. Therefore, Plaintiffs' Motion for Summary Judgment must be denied.

Respectfully submitted,

**TOWN OF WEARE, NEW HAMPSHIRE**
**CRAIG FRANCISCO**
**TONY SAWYER**

By Their Attorneys,

**Gallagher, Callahan & Gartrell, P.C.**

Dated: April 28, 2025                    */s/ Emily C. Goering*
                                         Emily C. Goering, NH Bar No. 268497
                                         Robert J. Dietel NH Bar No. 19540
                                         214 North Main Street
                                         Concord, NH  03301
                                         603-545-3613 / 603-545-3613
                                         Goering@gcglaw.com
                                         Dietel@gcglaw.com


**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was transmitted this date via electronic mail to all counsel of record.


Dated: April 28, 2025                    */s/ Emily C. Goering*
                                         Emily C. Goering