# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

GRACE NEW ENGLAND; and

PASTOR HOWARD KALOOGIAN,

        Plaintiffs,

    v.

TOWN OF WEARE, NEW HAMPSHIRE;

TONY SAWYER, in his individual and
official capacities; and

CRAIG FRANCISCO, in his individual and
official capacities,

        Defendants.

**Civil Action No.: 1:24-cv-00041-PB-AJ**

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

RESPONSE TO CONCISE STATEMENT OF MATERIAL FACTS ..........................................2

I.    The Church's Claims Are Ripe for Resolution by This Court.............................................3

II.   The Town's Application of its Regulations Violates RSA 674:76's Plain Text and History...................................................................................................................6

III.  The Town's Application of its Regulations Violates the First Amendment's Free Exercise Clause.................................................................................................10

IV.   The Town's Application of its Regulations Violates RLUIPA's Substantial Burden and Equal Terms Provisions................................................................17

      a. The Town's actions violate RLUIPA because they substantially burden the Church's religious exercise.................................................................................18

      b. The Town's actions violate RLUIPA because they treat the Church differently from similarly situated comparable activities. .................................................21

V.    The Town's Application of its Regulations Violates the New Hampshire Constitution.................................................................................................23

VI.   The Church's Claims Against Defendants Francisco and Sawyer Should Prevail Because Those Individuals Violated its Constitutional and Statutory Rights. ...............23

CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anchor Stone Christian Church v. City of Santa Ana*,
  2025 WL 1086360 (C.D. Cal. Apr. 7, 2025) .........................................................11, 13, 14, 15

*Burwell v. Hobby Lobby*,
  573 U.S. 682 (2014).............................................................................................................12, 20, 21

*Chamber of Com. of U.S. v. Whiting*,
  563 U.S. 582 (2011).......................................................................................................................9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993)........................................................................................................10, 12, 13, 14

*Dirrane v. Brookline Police Dep't*,
  315 F.3d 65 (1st Cir. 2002)............................................................................................................24

*Doucette v. Georgetown Pub. Sch.*,
  936 F.3d 16 (1st Cir. 2019)..............................................................................................................5

*Espinoza v. Mont. Dep't of Revenue*,
  591 U.S. 464 (2020)........................................................................................................................15

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005).........................................................................................................................9

*Forster v. Town of Henniker*,
  118 A.3d 1016 (N.H. 2015) ...........................................................................................................16

*Fulton v. City of Philadelphia*,
  593 U.S. 522 (2021)................................................................................................................. *passim*

*Goncalves v. Reno*,
  144 F.3d 110 (1st Cir. 1998)............................................................................................................6

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006).............................................................................................................12, 13, 17

*Groff v. DeJoy*,
  600 U.S. 447 (2023)..........................................................................................................................6

*Guru Nanak Sikh Soc'y v. County of Sutter*,
  456 F.3d 978 (9th Cir. 2006) ....................................................................................................18, 19

*Heck v. Humphrey,*
    512 U.S. 477 (1994)........................................................................................5

*Holt v. Hobbs,*
    574 U.S. 352 (2015)..........................................................................13, 16, 20

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022)..................................................................................10, 11

*Knick v. Twp. of Scott, Pennsylvania,*
    588 U.S. 180 (2019)........................................................................................5

*Kravitz v. Purcell,*
    87 F.4th 111 (2d Cir. 2023) .........................................................................10

*Kyllo v. United States,*
    533 U.S. 27 (2001)........................................................................................20

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
    591 U.S. 657 (2020)......................................................................................21

*Mast v. Fillmore County,*
    141 S. Ct. 2430 (Mem.) (2021).................................................................13, 17

*Monell v. Dep't of Soc. Services,*
    436 U.S. 658 (1978)..................................................................................23–24

*Murphy v. Zoning Comm'n of Town of New Milford,*
    223 F. Supp. 2d 377 (D. Conn. 2002)............................................................5

*Pakdel v. City & Cnty. of San Francisco, California,*
    594 U.S. 474 (2021)................................................................................1, 4, 5

*Rich v. Sec'y, Fla. Dep't of Corr.,*
    716 F.3d 525 (11th Cir. 2013) .....................................................................13

*Roman Cath. Bishop of Springfield v. City of Springfield,*
    724 F.3d 78 (1st Cir. 2013).................................................................4, 12, 18

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
    592 U.S. 14 (2020)..................................................................................10, 13, 17

*S. Bay United Pentecostal Church v. Newsom,*
    141 S. Ct. 716 (2021)...................................................................................12

*Sherbert v. Verner,*
    374 U.S. 398 (1963)......................................................................................10

*Signs for Jesus v. Town of Pembroke, NH,*
    977 F.3d 93 (1st Cir. 2020).................................................................21

*Sims v. City of Madisonville,*
    894 F.3d 632 (5th Cir. 2018) ............................................................24

*Solantic, LLC v. City of Neptune Beach,*
    410 F.3d 1250 (11th Cir. 2005) ........................................................13

*St. Paul's Found. v. Ives,*
    29 F.4th 32 (1st Cir. 2022)...........................................................18, 19

*State v. Mack,*
    249 A.3d 423 (N.H. 2020) ................................................................23

*Tagore v. United States,*
    735 F.3d 324 (5th Cir. 2013) ............................................................13

*Tandon v. Newsom,*
    593 U.S. 61 (2021)..............................................................16, 22, 23

*Tejada-Batista v. Morales,*
    424 F.3d 97 (1st Cir. 2005)..............................................................24

*Thai Meditation Ass'n of Ala., Inc. v. City of Mobile,*
    980 F.3d 821 (11th Cir. 2020) .....................................................18, 19

*Westchester Day Sch. v. Vill. of Mamaroneck,*
    504 F.3d 338 (2d Cir. 2007)......................................................13, 14, 19

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972)..........................................................................10

**Statutes**

42 U.S.C. § 1983....................................................................4, 5, 23

42 U.S.C. § 2000cc-5(5) ...............................................................17

42 U.S.C. § 2000cc(b)(1).................................................................21

N.H. Rev. Stat., Title 12..................................................................9

RSA 674:76...................................................................... *passim*

**Constitutional Provisions**

N.H. Const. Pt. I, Art. 5 .................................................................23

U.S. Const. amend. I ............................................................................................... *passim*

U.S. Const. amend. IV ..................................................................................................20

**Other Authorities**

SB 265, The General Court of New Hampshire (2025 Session),
    https://perma.cc/EYW2-R9TZ.................................................................................................6

## INTRODUCTION

Federal courts are uniquely responsible for vindicating constitutional rights where "there is no question that the government's definitive position on the issue has inflicted an actual, concrete injury of requiring petitioners to choose between surrendering [use] of their property or facing the wrath of the government." *Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 478–79 (2021) (cleaned up). That is the situation here. Over and over, Defendants Town of Weare, New Hampshire, Tony Sawyer, and Craig Francisco (collectively, the "Town") have put Pastor Howard Kaloogian and Grace New England (collectively, the "Church") to that choice: cease their religious exercise or face the Town's wrath, in the form of daily fines, orders to cease-and-desist, intrusive visits without warning, and court action. The Town now asserts that the Church's religious exercise is not burdened because it is still meeting—failing to mention that is only because the Town agreed to stay enforcement of its penalties *due to this litigation*. Defs.' Ex. T. The four laws at issue here were enacted so that churches do not have to sue to meet freely. But when they do, as here, the Church should prevail.

The Town's other arguments fall flat. The Town has already defeated its own ripeness challenge by conceding that its position is final. The Town asserts that its ongoing efforts to stymie the Church's religious exercise haven't been burdensome enough, so the Church must submit to more burdens before bringing its claims to the only forum able to provide a true remedy: this Court. And it attempts to explain away the Church's careful comparators, which show differential treatment under both the Free Exercise Clause and RLUIPA's equal terms provision, all while relying on a broad and unsubstantiated health-and-safety rationale that is inconsistent with its actions toward others. The Court should deny the Town's motion for summary judgment and enter judgment for the Church.

**RESPONSE TO CONCISE STATEMENT OF MATERIAL FACTS[1]**

The Town concedes several key facts. Before forming the Church, Pastor Kaloogian hosted multiple secular events at his home, including a campaign event attended by roughly 300 people. Dkt. 37-1, Defs.' MSJ at 4; Dkt. 38-4, Pls.' MSJ Ex. 1, Kaloogian Dep. 34:7−9. The Town's Planning Board has discretion "to determine if further review will be required" and to allow "expedited review and waivers from criteria and/or document submissions." Defs.' MSJ at 7, 8. The Town admits that Town Administrator Naomi Bolton told Zoning Enforcement Officer Tony Sawyer to investigate the Church when she saw its advertisement in the "Weare in the World" publication, and that on October 23, 2023, "the Town Issued a Cease and Desist Letter through its Zoning Enforcement Officer, ordering the Kaloogians to immediately stop any assembly." *Id.* at 9. The Town confirms that its "current position remains the same, that the Church continues to be in violation of the Ordinance by failing to go through Conceptual Review to assess the non-residential change of use." *Id.* at 9. n.4.

A few clarifications are needed in response to the Town. First, the Kaloogians' renovations to accommodate the Church and other gatherings improved the safety and accessibility of the property, Dkt. 24-2, Kaloogian Aff. ¶¶ 5−8; Dkt. 38-2, Kaloogian Decl. ¶ 4, which should alleviate the Town's stated concerns. Also, Pastor Kaloogian pursued multiple administrative avenues of resolution before and after filing suit. In August 2023, he sent a letter to Chairman Craig Francisco documenting his concerns. Dkt. 38-8, Pls.' MSJ Ex. 5. He responded to the October 2023 Cease and Desist order, explaining how the order violated the Free Exercise Clause and the Town's own zoning ordinances. Dkt. 38-11, Pls.' MSJ Ex. 8. In August 2024, the Church submitted a written

---

[1] The Church's memorandum in support of its motion for summary judgment includes a more detailed statement of facts. Dkt. 38-1, Pls.' MSJ at 3-8.

request to the Town's Planning Board to waive the application of its Site Plan regulations to the Church. Dkt. 38-14, Pls.' MSJ Ex. 11. When the Town denied his request, Pastor Kaloogian appealed to the Zoning Board, which claimed it lacked jurisdiction. Dkt. 38-16, Pls.' MSJ Ex. 13.

The Town has consistently showed that its position is final. In August 2023, Mr. Sawyer told Pastor Kaloogian that the Church violated the Town's ordinances because he had not submitted a Site Plan. Dkt. 38-5, Pls.' MSJ Ex. 2, Sawyer Dep. at 73:8–23. In September 2023, the Town sent a letter telling him to apply for a Site Plan. Dkt. 38-9, Pls.' MSJ Ex. 6. In the October 2023 Cease and Desist letter, the Town stated that its order "will remain in effect until a site plan is submitted," threatening significant daily fines—$275 for the first offense and $550 for subsequent offenses *each day* that such violation is found. Dkt. 38-10, Pls.' MSJ Ex. 7. In December 2023, the Town again demanded that Pastor Kaloogian apply for Site Plan approval, this time threatening to "seek the assistance of the Hillsborough County Superior Court to require him to do so." Dkt. 1, Compl. Ex. G. In September 2024, the Town again directed him to fill out the Site Plan application. Dkt. 38-15, Pls. MSJ Ex. 12. Thus, the Town has made clear in writing at three times—in addition to this litigation—that its position is final: complete the burdensome Site Plan review process or face its wrath.

## ARGUMENT

### I.     The Church's Claims Are Ripe for Resolution by This Court.

Despite Pastor Kaloogian's multiple attempts to resolve this dispute amicably before litigating, the Town asserts that his claims are not ripe. The Town suggests that the Church must endure the burdensome Site Plan process in order to find out how burdensome it will be. But that gets the law exactly backwards, especially where the process itself is the punishment. The Town

has already made a final determination that its Regulations (as defined in Pls.' MSJ at 1) apply to the Church's religious exercise, thereby resolving any ripeness concern.

The Town ignores recent Supreme Court precedent on ripeness in the property dispute context, citing only *Roman Catholic Bishop of Springfield v. City of Springfield*, which supports finding ripeness here in any event. 724 F.3d 78, 91 (1st Cir. 2013) (applying "traditional notions of ripeness" to find that church's RLUIPA claim was ripe). In *Pakdel*, the Supreme Court announced a "relatively modest" "finality requirement" for constitutional claims to be ripe: a plaintiff need only show "there is no question about how the regulations at issue apply to the particular land in question." 594 U.S. at 478 (cleaned up). "Once the government is committed to a position . . . potential ambiguities evaporate and the dispute is ripe for judicial resolution." *Id.* at 479. *Pakdel* examined a regulatory taking where the government's definitive position "'inflict[ed] an actual, concrete injury' of requiring petitioners to choose between surrendering [use] of their property or facing the wrath of the government." *Id.* at 478–79.

So too here. The Town of Weare has repeatedly put Pastor Kaloogian to a choice: endure its Regulations (including the Site Plan review process) or face onerous fines and threatened court action. Dkt. 1, Compl. ¶¶ 55–59. The Town has conceded that its position is final. Defs.' MSJ at 14 (admitting the September 2023 letter was the "final decision of the Planning Board involving interpretation and application of the terms of the Ordinance"); Pls.' MSJ Ex. 6 ("The board has *determined* that you will need to apply for a Site Plan to continue these gatherings.") (emphasis added). Thus, there is a concrete dispute that is ripe for this Court's review. *Pakdel*, 594 U.S. at 478–79. Because the Town's unlawful treatment of the Church by subjecting it to the Regulations is itself a statutory and constitutional violation, the Church should not be required to endure the entire process before bringing a claim to vindicate free exercise rights under 42 U.S.C. § 1983.

That the Town might subject the Church to *further* violations later does not bar suit over the extant violation.

The Town hints at a failure-to-exhaust argument without expressly making it. For good reason: it is settled law that "exhaustion of state remedies 'is *not* a prerequisite to an action under [42 U.S.C.] § 1983.'" *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019) (citing *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)). Instead, "constitutional claim[s] are guaranteed a federal forum under § 1983." *Id.* at 189. The Church's statutory claims do not require exhaustion either. RSA 674:76 contains no exhaustion requirement in its text or history, and neither do land-use suits under RLUIPA. *Murphy v. Zoning Comm'n of Town of New Milford*, 223 F. Supp. 2d 377, 382 (D. Conn. 2002) ("exhaustion of administration remedies is not required for RLUIPA claims"). Thus, the Town's failure-to-exhaust arguments fail.[2]

Even "administrative missteps do not defeat ripeness once the government has adopted its final position." *Pakdel*, 594 U.S. at 480. But here, Pastor Kaloogian has treaded carefully through multiple efforts to resolve this dispute amicably before resorting to litigation. Compl. Exs. B, E, I. For example, the Town faults him for not bringing "an administrative appeal to the ZBA." Defs.' MSJ at 14. But the Town concedes that Pastor Kaloogian did bring "this matter before the ZBA," which claimed to lack jurisdiction, and then concludes that he should have appealed that issue to a state court. *Id.* This argument distracts from clear Supreme Court precedent: the Church can bring its claims in federal court without navigating a maze of local and state procedures first.

---

[2] Even if there were an exhaustion requirement under RLUIPA, RSA 674:76, or § 1983, which there is not, "[p]laintiffs are not required to exhaust administrative remedies under [a statute requiring this] when exhaustion would be futile." *Doucette v. Georgetown Pub. Sch.*, 936 F.3d 16, 22 (1st Cir. 2019).

## II.     The Town's Application of its Regulations Violates RSA 674:76's Plain Text and History.

The only arguments the Town is able to create to skirt RSA 674:76's applicability to its actions are that (1) RSA 674:76 has yet to be interpreted and is otherwise in legislative flux; and (2) the Town has not regulated "beyond the enumerated list" of permissible areas defined in the statute or "in a way that distinguishes between a religious and non-religious use." Defs.' MSJ at 22−23. Both arguments fail.

As to the first point, on March 27, 2025, the day before the Town filed its summary judgment motion, the bill attempting to repeal RSA 674:76 was voted down ("BILL KILLED").[3] Thus, the contention that RSA 674:76 "is presently in a state of flux" is not only irrelevant, but wrong. Defs.' MSJ at 22. And the Town's suggestion that this Court is, for some reason, unable to interpret a straightforward statute because "there has been no decisional law to provide guidance on its interpretation" is offensive. *Id*. It matters not whether RSA 674:76 has been previously interpreted by a court, because this interpretive exercise involves a "pure question of statutory construction for the courts to decide." *Goncalves v. Reno*, 144 F.3d 110, 127 (1st Cir. 1998) (citation omitted).[4]

As to the second point, the Town appears to misunderstand what RSA 674:76 says and means. The Supreme Court has "stressed over and over again" that "statutory interpretation must begin with, and ultimately heed, what a statute actually says." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (cleaned up). The Church is not advocating an interpretation beyond the law's text. Nor is

---

[3] SB 265, The General Court of New Hampshire (Mar. 27, 2025), https://perma.cc/EYW2-R9TZ.

[4] While no court has yet interpreted RSA 674:76, courts in Massachusetts have interpreted a comparable statute known as the Dover Amendment and held that attempts by local governments to require a site plan violated the Dover Amendment. *See* Pls.' MSJ at 14. This Court should reach the same conclusion here.

the Church's position contrary to the Town's suggestion that "there are, at least some, objective and definite regulations that a municipality may consider." Defs.' MSJ at 23. Indeed, RSA 674:76 plainly allows regulation (subject to a few limitations, including that these regulations "do not substantially burden religious exercise") in defined areas: "the height of structures, yard sizes, lot area, setbacks, open space, and building coverage requirements." RSA 674:76. But at least one wrong turn the Town makes is apparent from the rest of sentence noted above—*i.e.*, "there are, at least some, objective and definite regulations that a municipality may consider, *regardless if the property is used primarily for religious purposes*." Defs.' MSJ at 23 (emphasis added). The final italicized clause is misguided. The text says: "No zoning ordinance or site plan review regulation shall prohibit, regulate, or restrict the use of land or structures primarily used for religious purposes; provided, however, that *such land or structures* may be subject to objective and definite regulations . . . ." RSA 674:76 (emphasis added). It is impossible to read the phrase "such land or structures" any other way besides referring immediately back to "land or structures primarily used for religious purposes." Accordingly, the Town's indication that the limited and definite areas of permissible regulation can be done "regardless if the property is used primarily for religious purposes," Defs.' MSJ at 23, is a fabrication in contravention of the text's plain language, which specifically requires a municipality to "regard" a property's use for religious purposes.

Although the Town's interpretation rests on a clear misreading of RSA 674:76, it is still important to address the misleading contention that "[t]here is nothing in the evidentiary record to establish that the Town has applied any regulation beyond the enumerated list in this statute." Defs.' MSJ at 23. The record is replete with evidence showing that the Town seeks to apply its Regulations only for reasons *not* listed in RSA 674:76, including fire code, parking, and sanitation. The Town admittedly seeks to enforce its whole Site Plan Review Regulations and corresponding

requirements (*e.g.*, fill out a conceptual review form and attend a conceptual review hearing), which the evidence shows is much broader than the six enumerated permissible regulations. *See, e.g.*, Ex. 24, Craig Francisco Dep. at 94:12−18 (Mr. Francisco, the chairman of the Town's Planning Board, explaining that he "could have done a site plan for [the Church] for less than 5 grand" because "the only thing [he is] worried about is septic standard, driveway permits, and parking"); Pls.' MSJ Ex. 16, Francisco Dep. at 42:5−44:3, 81:5−82:20; Compl. Ex. G (the Town explaining that there are "issues such as parking, hours of operation, lighting, and the safety of those assembling" that can only be remedied by the Church "apply[ing] for site plan approval"); *see also* Pls.' MSJ Ex. 3 (the Town's corporate representative agreeing that the at-issue Regulations are much broader than RSA 674:76). To be sure, the Town's corporate representative admitted that the "purpose of the site plan review regulations" is to undergo "a full one because of, you know, parking, safety, fire. *Whatever*." Pls.' MSJ Ex. 25, Naomi Bolton 30(b)(6) Dep. at 58:7−8, 59:8−13 (emphasis added). While the Town may have overlooked these undisputed facts, it is clear that "parking," "safety," "fire," or "[*w*]*hatever*" else the Town deems fit to regulate through its Regulations have nothing to do with the permissible regulation areas—"the height of structures, yard sizes, lot area, setbacks, open space, and building coverage requirements." RSA 674:76. Finally, even putting the abovementioned evidence aside, the Court can simply look at the Regulations themselves to understand why the Town's position makes no sense and that its attempt to control the Church goes far beyond the six permissible regulations. *See* Pls.' MSJ Exs. 21, 22.

    Even if the Town's purported concerns were valid here (despite that the state fire marshal has shown no concern about the Church's operation and the renovations that the Kaloogians made significantly improved parking access), there are other ways of addressing them apart from contravening a clear statutory directive and impermissibly requiring compliance with the Town's

Regulations. *See, e.g.*, N.H. Rev. Stat., Title 12 (§§ 153:1−173-C:10); Pls.' MSJ at 12. The Church does not contend that RSA 674:76 completely strips the Town of its ability to require Site Plans or its zoning ordinance in *all* situations. The Church does contend, however, that under the *specific circumstances presented in this case*, RSA 674:76's clear text and history unquestionably prohibit the Town from requiring the Church to submit a Site Plan or succumb to its related zoning ordinance enforcement. *See generally* Dkt 38-1, Pls.' MSJ at 9−15.

Both the Town's reliance on a snippet of RSA 674:76's legislative history and its claim that there is "nothing in the evidentiary record to establish that the Town has applied regulations in a way that distinguishes between a religious and non-religious use," as described above, do nothing to skirt its statutory responsibility to refrain from enforcing its onerous Regulations on the Church. Defs.' MSJ at 23. The Court need not consider legislative history at all because a legislature's "authoritative statement is the statutory text, not the legislative history." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 599 (2011). "Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). Here, RSA 674:76's text unambiguously forbids the use of a "zoning ordinance" or "site plan review regulations" to regulate structures used primarily for religious purposes, which is undisputedly the case here. *See* Dkt. 38-2, Kaloogian Decl. ¶¶ 6−9. And while the Town seeks to do exactly what New Hampshire law forbids, should the Court review legislative history, it only confirms the Church's position. *See* Pls.' MSJ at 11–12. Thus, this Court should reject the Town's arguments and deny its motion for summary judgment on this basis.

### III.  The Town's Application of its Regulations Violates the First Amendment's Free Exercise Clause.

When a government entity burdens a plaintiff's sincere religious practice "pursuant to a policy that is not 'neutral' or 'generally applicable,'" the Free Exercise Clause is violated "unless the government can satisfy 'strict scrutiny' by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). Here, the Town attempts to dodge its First Amendment responsibilities by claiming that 1) it has not burdened the Church's religious exercise and 2) its interest in protecting public health and safety are compelling. Neither argument stands.

Under the Free Exercise Clause, the Supreme Court requires only a "burden," not a "substantial burden" as under RLUIPA. *Kennedy*, 597 U.S. at 525; *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Kravitz v. Purcell*, 87 F.4th 111, 124 (2d Cir. 2023) (finding "no justification for requiring a plaintiff to make a threshold showing of substantial burden" in free exercise context). Forcing a religious assembly to stop meeting or else face government fines is a burden on the free exercise of the individuals who would attend. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 27 (2020) (Gorsuch, J., concurring) ("Nor may we discount the burden on the faithful who have lived for months . . . unable to attend religious services"). In *Sherbert v. Verner*, the Supreme Court acknowledged fines as an obvious free exercise problem: "[g]overnmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship." 374 U.S. 398, 404 (1963); *see also Wisconsin v. Yoder*, 406 U.S. 205, 208–09 (1972) (fine of $5, roughly $38 today, if parents did not comply with the compulsory attendance law at issue was burden on religious exercise).

The Church has made clear that the Town's regulations, as applied, burden its religious exercise. This includes the Weare Site Plan Review Regulations and the Town's Zoning Ordinance, which requires a site plan review for nonresidential uses. The Town's Zoning Officer told the Church to stop engaging in its religious practice, Ex. 2, Sawyer Dep. at 105:12-18, and then demanded that Pastor Kaloogian "immediately stop any assembly regarding Grace New England Church"—under threat of escalating financial penalties. Ex. 8 ($275 for first offense; $550 per day subsequently). This burdens the Church's religious exercise. The Town says the Church has continued to meet despite its resistance, but that was only after the Church sought a preliminary injunction from this Court. The Town cannot rely on its temporary agreement to stay enforcement *due to this litigation* to escape liability for the burden it has imposed upon the Church's religious exercise. Defs.' MSJ Ex. T. *See, e.g.*, *Anchor Stone Christian Church v. City of Santa Ana*, 2025 WL 1086360 (C.D. Cal. Apr. 7, 2025) (order granting preliminary injunction to stop city from preventing church from holding services because "[g]overnment justifications for interfering with First Amendment rights must be genuine, not hypothesized or invented post hoc in response to litigation") (quoting *Kennedy*, 597 U.S. at 543 n.8).

The Town suggests that a government action must have a "religious motivation" or "animosity" to burden religious exercise. Defs.' MSJ at 15–16. That is not the standard. Animosity can constitute its own free exercise violation. *Kennedy*, 597 U.S. at 525 n.1. But there are at least two other paths to strict scrutiny here: "by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Id*. Government policies are not generally applicable if they "prohibit[] religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," or if they provide "a mechanism for individualized exemptions." *Fulton*, 593 U.S. at 533; *Roman*

11

*Cath. Bishop*, 724 F.3d at 98 (finding ordinance not "generally applicable" because city was "vested with discretion to decide when to create a historic district").

Notably, the Town makes only passing references to neutrality and does not argue that its regulatory actions are generally applicable. It thus seems to acknowledge that strict scrutiny is the standard here, focusing only on the "compelling interest" prong. Indeed, the Town's concession that the Planning Board "exercises a lot of discretion in determining when a site plan is required" and that discretion is "based upon individualized assessments" sends this case squarely to strict scrutiny under *Fulton.* Ex. 16, Francisco Dep. at 25:2−9. The Town has also repeatedly admitted it has a waiver process where property owners can bypass its site plan requirement. *Fulton*, 593 U.S. at 537 ("The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given . . . ."). Thus, strict scrutiny applies here.

The Town cannot meet this "demanding and rarely satisfied standard." *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021) (Mem.). "A government policy can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Fulton*, 593 U.S. at 541 (quoting *Lukumi*, 508 U.S. at 546). It is not enough for "the City [to] state[] these objectives at a high level of generality," because "the First Amendment demands a more precise analysis." *Id.* "Rather than rely on 'broadly formulated interests,' courts must 'scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants.'" *Id.* (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–432 (2006)). In other words, strict scrutiny "demands a "'more focused' inquiry . . . through application of the challenged law 'to the person'—the particular claimant whose sincere

exercise of religion" is burdened. *Burwell v. Hobby Lobby*, 573 U.S. 682, 726 (2014) (citation omitted).

Broad health and safety interests are not enough to meet this demanding standard. *Diocese of Brooklyn*, 592 U.S. at 18 (public health during pandemic); *O Centro*, 546 U.S. at 433 (enforcing federal drug laws); *Holt v. Hobbs*, 574 U.S. 352, 362 (2015) (prison safety); *Lukumi*, 508 U.S. at 543–44, 546 (prevention of animal cruelty); *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1267–68 (11th Cir. 2005) (traffic safety); *Tagore v. United States*, 735 F.3d 324, 330–31 (5th Cir. 2013) (protecting personnel in federal buildings); *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013) (controlling government costs). In *Mast v. Fillmore County*, the Supreme Court found it was error to "treat[] the County's *general* interest in sanitation regulations as 'compelling' without reference to the *specific* application of those rules to *this* community." 141 S. Ct. 2430, 2432 (2021) (Gorsuch, J., concurring). The question there—and here—"'is not whether the [City] has a compelling interest in enforcing its [septic system requirement] *generally*, but whether it has such an interest in denying an exception' from that requirement to the [Church] *specifically*." *Id.* (quoting *Fulton*, 593 U.S. at 541). In a similar case where a city refused to allow a church to meet in its building, another federal court recently applied the same analysis. The city maintained "that there is a 'public interest in the City's ability to zone and control land uses, such as by implementation of its updated General Plan.'" *Anchor Stone*, 2025 WL 1086360, at *14. But the court rejected "that interest [a]s unlikely to be compelling—it is too 'broadly formulated' to be 'of the highest order.'" *Id.* (quoting *Fulton*, 593 U.S. at 541). The city's interest was also "likely too attenuated from Anchor Stone's proposed religious assembly for the City's denial of Anchor Stone's CUP application to be considered a necessary, narrowly tailored action." *Id.*; *see also Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 353 (2d Cir. 2007) (rejecting Village's

13

argument that it had "compelling interest in enforcing zoning regulations and ensuring residents' safety through traffic regulations" because it failed to show how that interest applied "in the particular case at hand").

So too here. The Town has characterized its interest as "[m]aintaining public health and safety," and "ensuring that traffic safety, fire safety, and sanitation are adequately regulated." Defs.' MSJ at 16, 24. These interests, like the interests in *Mast*, *Anchor Stone*, and *Westchester*, are too "broadly formulated" to be compelling. *Fulton*, 593 U.S. at 541. The Town has not shown why it cannot grant a waiver to the Church when it allows waivers for other gatherings (or never regulates them at all). Nor has the Town shown how the Church's gathering harms its purported interests. It makes much of Pastor Kaloogian's renovations, including the transition from porta-potties to a restroom. But the Town never identifies any problems, conceding that porta-potties can "pos[e] health issues" of their own." Defs.' MSJ at 21. If problems arose, Pastor Kaloogian would work with a licensed plumber, as he already has to ensure the safety of his residence (despite the Town's intransigence). Compl. ¶ 53. As to the Town's alleged fire safety concerns, Pastor Kaloogian asked for an inspection of his new heater, but the Town refused to issue the necessary permits. Kaloogian Aff. ¶ 23. And the state fire marshal has not expressed any concerns regarding the heater. This undermines the Town's contention that its safety interests are compelling.

Further, the Town's interests are not compelling because it leaves similar conduct unregulated, impacting its purported health and safety goals. "[A] law cannot be regarded as protecting an interest 'of the highest order' . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." *Lukumi,* 508 U.S. at 547. Further, "[t]he creation of a system of exceptions under the contract undermines the City's contention that its non-discrimination policies can brook no departures." *Fulton*, 593 U.S. at 542. As in *Anchor Stone*, "to

the extent that the City's concerns are legitimate, it appears that the City has declined to act upon those concerns 'with respect to analogous nonreligious conduct.'" 2025 WL 1086360, at *15 (quoting *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 486 (2020)). Thus, the City failed strict scrutiny.

Here, if the Town's interests in regulating each non-residential use of property through its Site Plan process were so critical to public health and safety, it would not allow property owners to apply for waivers. But it does. Compl. Ex. H ("The Planning Board may waive the requirements for *any* of the specific items outlined in these regulations") (emphasis added). It also allowed Pastor Kaloogian to host non-religious gatherings for years, including events with a much greater impact on the Town's asserted interests. *See* Kaloogian Aff. ¶ 11 (detailing 9 years of hosting the well-attended Pine Tree Riot, a political event for Robert F. Kennedy, Jr. with over 300 attending, and at least one wedding). The Town knew about all these events, ostensibly impacting its purported concerns about parking, fire safety, and sanitation much more than a small weekly church gathering of 30–40 members. Yet it never required a Site Plan from Pastor Kaloogian until he expressed interest in hosting religious activities. The Town has not required Site Plan reviews for other residents' secular assemblies either. See Ex. 3, 30(b)(6) Dep. at 130:13−19 ("We don't – we don't regulate that."); Ex. 16, Francisco Dep. at 30:1-14 (when asked about "when people gather for birthday parties, holidays, and the like," the Town's determination "depends on . . . what the purpose of the gathering is"). The Town's selective enforcement of its Regulations undermines its emphasis on health and safety here, and Mr. Francisco's admission that Town officials use their discretion depending on *the purpose of the gathering* cannot survive strict scrutiny. Finally, the Town has no compelling interest in applying its ordinances in a manner inconsistent with New Hampshire state law. Indeed, any application of a local ordinance that is "repugnant to, or

15

inconsistent with, [New Hampshire] State law" is preempted and therefore invalid as a matter of state law. *Forster v. Town of Henniker*, 118 A.3d 1016, 1024 (N.H. 2015).

Even if the Town's generic interests in health and safety were compelling, the Town has not chosen the least restrictive means to pursue them. That "exceptionally demanding" standard requires the government to "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt*, 574 U.S. at 364–65 (internal citation omitted). In other words, "[i]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* In the public health and safety context, "[w]here the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Tandon v. Newsom*, 593 U.S. 61, 63 (2021).

The Town has at least four ways of furthering its interests that would be less restrictive on the Church's religious exercise. First, it could simply allow the Church to exist because the Zoning Ordinance allows Churches as of right in residential zones. Compl. ¶ 47; Ex. 16, Francisco Dep. 26:14–25 ("churches in residential zones are permitted under the zoning ordinance"). Second, it could treat the Church's use as a permissible accessory use. Ex. 16, Francisco Dep. at 29:1–16. Third, it could grant the Church's waiver request. Ex. 11; Ex. 16, Francisco Dep. at 104:22–105:3 ("there are certain regulations that I'm sure we could waive in this site"). Fourth, it could treat the Church's gathering the same way it treats other secular gatherings and address issues as they arise, using other means of regulation at its disposal. For example, if a Church member parks illegally or in a way that obstructs the road (which to date has not happened), a police officer could give a parking ticket. If the heater truly posed a fire safety issue, the state fire marshal could inspect it and recommend changes (but he has not). If the septic system is overloaded (which to date has not

16

occurred), a licensed plumber could address it. Mr. Francisco testified that the Site Plan process is an opportunity for multiple town departments to give input, including fire, highway, conservation commission, historic commission, and police. Ex. 16, Francisco Dep. at 105:18−106:21 ("every department has their own purview"; site plan review process is "opportunity to identify issues"). But there's no reason why these departments cannot address issues when they arise, as they already do. Facilitating the Town's convenience in bringing departments together is neither a compelling interest nor the least restrictive means. Finally, the Town could follow the lead of multiple towns across New Hampshire and exempt religious land use from its site plan regulations. *See* Pls.' MSJ at 13–14. "[I]t is hard to see how" the Town's law "can be regarded as 'narrowly tailored'" when it is "much tighter than those adopted by many other jurisdictions." *Diocese of Brooklyn*, 592 U.S. at 18; *Mast*, 141 S. Ct. at 2433 (Gorsuch, J., concurring) (stating the government must offer a "compelling reason" why it cannot offer religious adherents alternatives available in other jurisdictions).

In sum, the Church is not seeking immunity from all regulation or flouting the Town's health and safety goals. It merely seeks the freedom for its members to gather for religious exercise in a home in a way comparable to numerous secular gatherings that occur across the state each day. Strict scrutiny "'is a workable test for striking sensible balances between religious liberty and competing prior governmental interests.'" *O Centro*, 546 U.S. at 436. Here, the Court can strike that balance by upholding the Church's free exercise claim.

## IV. The Town's Application of its Regulations Violates RLUIPA's Substantial Burden and Equal Terms Provisions.

The Town does not contest that its land use regulations are within the scope of RLUIPA. 42 U.S.C. § 2000cc-5(5) (land use regulation includes "a zoning or landmarking law, or the application of such a law"). Neither does the Town contest that its conduct affects the religious

exercise of both Pastor Kaloogian and Grace New England Church. Thus, the only questions for this Court are whether the Town's application of its regulations poses a substantial burden and whether the Town has treated the Church on unequal terms with a secular comparator. Either ground is sufficient to deny summary judgment to the Town and enter judgment for the Church.

a.    **The Town's actions violate RLUIPA because they substantially burden the Church's religious exercise.**

The Town makes two arguments: (1) the Church had continued to meet so its exercise has not been hindered, and (2) the Site Plan review process is not very burdensome. The first argument is irrelevant because the Town agreed to stay enforcement only due to this litigation. *See* Dkt. 31. The second is refuted by the Town's own testimony and unsupported by case law.

The Town's insistence that the Church submit to the entire Site Plan process or face daily fines and court enforcement is a substantial burden. The Supreme Court and the First Circuit look to the text and ordinary meaning of RLUIPA when defining "substantial burden." *See, e.g.*, *Roman Cath. Bishop*, 724 F.3d at 96 ("A 'burden' is '[s]omething that hinders or oppresses,' 'something oppressive or worrisome,'" such as an "obligatory expense") (citations omitted). "A burden does not need to be disabling to be substantial," or to involve "coercion to change or abandon one's religious beliefs." *Id.* A regulation imposes a substantial burden if it was "imposed on the religious institution arbitrarily, capriciously, or unlawfully." *Id.* "'[L]ocal regulators' may be found to have acted arbitrarily and capriciously when they . . . 'base their decisions on misunderstandings of legal principles.'" *St. Paul's Found. v. Ives*, 29 F.4th 32, 39–40 (1st Cir. 2022) (internal citation omitted). "Conduct also may be deemed to be arbitrary and capricious if it is unlawful under state or local law . . . or where it "evince[s] animus or otherwise suggests that the plaintiffs have been, are being, or will be (to use a technical term of art) jerked around." *Id.* (quoting *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 980 F.3d 821, 832 (11th Cir. 2020)); *see also Guru Nanak*

*Sikh Soc'y v. County of Sutter*, 456 F.3d 978, 989–91 (9th Cir. 2006) (substantial burden where government officials "inconsistently applied" specific policies, disregarding relevant findings "without explanation"). The substantial burden and equal terms provisions should be viewed together, especially "[w]here the arbitrary, capricious, or unlawful nature of a defendant's challenged action suggests that a religious institution received less than even-handed treatment." *Westchester Day Sch.*, 504 F.3d at 350–51 (finding substantial burden where zoning board's concerns about traffic, parking, and expansion were unsupported by evidence and thus showed "arbitrary blindness to the facts").

      The Town's application of its Regulations has been arbitrary, capricious, and unlawful. As explained above, the Town's attempt to impose its Site Plan review regulation on the Church plainly violates RSA 674:76. Because the Town's position is based on "misunderstandings of legal principles" and is "unlawful under state . . . law," the Town's application of its Regulations to the Church constitutes a substantial burden. *St. Paul's Found.*, 29 F.4th at 40. The Town's demand that Pastor Kaloogian jump through its hoops of requesting a Site Plan review and asking the Board's permission to continue his Church's religious exercise is also a substantial burden. The Town attempts to collapse its requirements into just "filling out a one-page form," promising that waivers are available for many of the processes. Defs.' MSJ at 17, 18. But the Town already denied Pastor Kaloogian's waiver request and ignored his letter, and the Zoning Board claimed to lack jurisdiction when he appealed. Not only has he been "jerked around," *Thai Meditation Ass'n of Ala., Inc.*, 980 F.3d at 832, but Town officials have "inconsistently applied" specific policies. *Guru Nanak Sikh Soc'y*, 456 F.3d at 989–91. They have also showed an "arbitrary blindness to the facts," *Westchester Day Sch.*, 504 F.3d at 350–51, because no actual problems with parking, fire safety, or sanitation have arisen in over a year of biweekly church meetings in Pastor Kaloogian's home.

Further, testimony from Town officials shows the process is much more burdensome than a one-page form. *See, e.g.*, Compl. Ex. G (Town will subject the Church to scrutiny regarding "parking, hours of operation, [and] lighting"); Ex. 16, Francisco Dep. at 42:5–44:3, 81:5–82:20 (Site Plan review would entail detailed inquiry into Church's hours of operation, number of congregants attending, where they would park, and how the Church's activities would affect septic use). The Town announced its intention to micromanage the details of how the Church operates within Pastor Kaloogian's home.

Grace New England's identity as a small house church is significant because if he starts the Site Plan review process, Town officials can enter Pastor Kaloogian's home at any time and violate his privacy rights. Ex. 16, Francisco Dep. at 71:6–73:2. Such intrusions may not have been significant for the other churches operating in commercial buildings who went through the Town's Site Plan review. Defs.' Ex. Y (3 churches with larger buildings along with extra school and office buildings). But such intrusion into Pastor Kaloogian's own home is significant, especially considering the special protection the U.S. Constitution gives to homes. *Cf. Kyllo v. United States*, 533 U.S. 27, 31 (2001) ("'At the very core' of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.")

The Supreme Court has rejected similar arguments in the RFRA context, under the "same standard" as RLUIPA. *Holt*, 574 U.S. at 356, 358. In *Hobby Lobby*, the government argued that the plaintiff could avoid the substantial burden of escalating daily fines by dropping health insurance coverage altogether. The Court found it was not "a tolerable result to put family-run businesses to the choice of violating their sincerely held religious beliefs or making all of their employees lose their existing healthcare plans." 573 U.S. at 723. Here, the Town put the Church to a similar choice: submit to their Site Plan review process or pay daily fines. That the Church

could avoid the fines by stopping their gathering is irrelevant, because that would pose an even greater burden. In *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, the government urged Catholic nuns to fill out a form so other entities could provide contraceptives for their employees. 591 U.S. 657, 668 (2020). The court of appeals found no substantial burden, but the Supreme Court held that the agency action was "arbitrary and capricious for failing to consider an important aspect of the problem," since forcing the nuns' complicity in the contraceptive scheme would violate RFRA. *Id.* at 682. Here, the Town has acted arbitrarily by failing to consider that the Church meets in Pastor Kaloogian's home, and that submitting to the Site Plan process would involve micromanaging by multiple Town departments of when services are hosted, how many can attend, and whether certain religious activities would be approved. *See supra* at 20. Thus, the Town's application of its Regulations to the Church substantially burdens its religious exercise.

  **b.** **The Town's actions violate RLUIPA because they treat the Church differently from similarly situated comparable activities.**

The Equal Terms Provision provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The first step is to "identify a relevant secular comparator" which is "similarly situated with respect to the purpose of the underlying regulation." *Signs for Jesus v. Town of Pembroke, NH*, 977 F.3d 93, 109 (1st Cir. 2020). The stated purposes of the Regulations here include guarding conditions related to health and safety, protecting public welfare, and controlling vehicle and pedestrian traffic.

  Though RLUIPA requires only one comparator, the Church has identified several, including nonreligious events at Pastor Kaloogian's home and nonreligious events hosted by others. Contrary to the Town's argument, Defs.' MSJ at 20–21, the relevant standard of

21

comparison is the impact on the Town's asserted purposes. Here, Pastor Kaloogian's secular events were much larger than his religious gathering, with greater impacts on health, safety, and traffic. *See Tandon*, 593 U.S. at 62 ("Comparability is concerned with the risks various activities pose, not the reasons why people gather."). First, the Pine Tree Riot (hosted for 9 years without any Town regulation) brings about 150 guests. Ex. 1, Kaloogian Dep. 39:2–15. It is irrelevant that RSVPs were involved, because Pastor Kaloogian did not receive any advance headcount. *Id.* Second, the campaign event for Robert F. Kennedy, Jr., brought 300 guests, and Pastor Kaloogian had to ask three neighbors for permission to park on their properties. *Id.* at 36:13-37:2; 34:18-35:7 (no advance headcount or special use permit). Third, the wedding hosted by the Kaloogians drew more than 100 guests, but they did not need to use any neighbors' property for parking. Kaloogian Dep. 44:1–6. In contrast, the Church brings about 30–40 attendees on Sundays and a smaller group for midweek Bible study. This smaller number has a negligible impact on the Town's stated purposes*. Id.* at. 55:18-57:40. The Town draws an irrelevant distinction between one-time events and the Church's recurring gatherings. But that favors the Church, because its predictable meetings make it easy to address any parking, fire safety, or sanitation issues that may arise. Neighbors know what to expect, and in over a year of biweekly gatherings, there have been no documented issues or complaints relating to the Church.

The Town's differential treatment is obvious in its response to Pastor Kaloogian when he asked to host ongoing, repeated events (but before he used the word "church"). "[T]hey gave us permission to do *anything we wanted to do with our barn* as long as we don't charge for it." *Id.* at 45:21−23 (emphasis added). Not only did the Town decline to regulate Pastor Kaloogian's secular events, but it gave him *carte blanche*—until he planted a church. That unequal treatment violates RLUIPA.

The Town's gesture toward other properties that have endured the Site Plan process is equally unavailing. The swap shop, farm stand, and Airbnb examples have a key difference from the Church: they are commercial activities, not protected religious exercise. Moreover, "[i]t is no answer that [the Town] treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue." *Tandon*, 593 U.S. at 62. And the Town has no explanation for secular assemblies hosted by Pastor Kaloogian's neighbors, which go completely unregulated. *See, e.g.*, Ex. 16, Francisco Dep. at 30:1−14 ("when people gather for birthday parties, holidays, and the like," the Town's determination "depends on . . . what the purpose of the gathering is."). Choosing to treat gatherings differently depending on their purpose (and singling out a religious purpose for disfavored treatment) violates the Equal Terms provision.

## V.     The Town's Application of its Regulations Violates the New Hampshire Constitution.

New Hampshire's Constitution is more protective than the federal Free Exercise Clause. *See State v. Mack*, 249 A.3d 423, 442–43 (N.H. 2020). Thus, the Town's conduct violates Part I, Article 5 of the New Hampshire Constitution for the same reasons that it violates the federal Constitution. *See supra* Section III. Even if it did not rise to the level of a violation of the federal Constitution, it still would violate the New Hampshire Constitution.

## VI.    The Church's Claims Against Defendants Francisco and Sawyer Should Prevail Because Those Individuals Violated its Constitutional and Statutory Rights.

The Town's attack on the Church's claims against Defendants Francisco and Sawyer is surprising, because the Town did not move to dismiss these defendants under qualified immunity or any other doctrine. The Court should ignore this belated request, because Defendants Francisco and Sawyer have primary authority for enforcing the Town's zoning regulations which are directly at issue in this case. Thus, the Church's official-capacity claims against them are not duplicative.

Under *Monell v. Department of Social Services*, "local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government

would be suable in its own name." 436 U.S. 658, 691 (1978). *Monell* does not foreclose suits against local government officials in their official capacities. When a plaintiff seeks injunctive relief, "the injunction can be issued against the official in his official capacity." *Dirrane v. Brookline Police Dep't*, 315 F.3d 65, 71–72 (1st Cir. 2002). Here, the Church seeks declaratory relief against "Defendants' application of the Town's ordinances," and injunctive relief to "[e]njoin Defendants from taking any further steps to enforce the Town's ordinances against Plaintiffs." Compl. ¶ 26. This relief must involve the people tasked with implementing and enforcing the Town's ordinances: Craig Francisco, Chairman of the Planning Board Committee, and Tony Sawyer, Zoning Enforcement Officer. They are necessary parties to the litigation because they have authority to enforce the Town's regulations or implement injunctive relief.

The Church's individual-capacity claims are also viable, because Defendants Francisco and Sawyer directly participated in the Town's attempts to regulate the Church. Animus or discriminatory intent is not required; "individual liability for a government official who violates constitutional rights . . . turns on traditional tort principles of 'but-for' causation." *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018) (citing *Tejada-Batista v. Morales*, 424 F.3d 97, 98 (1st Cir. 2005) (affirming official and individual-capacity claims where defendants caused plaintiff's termination, regardless whether motives were "pure")).

Here, Defendants Francisco and Sawyer were both personally involved in the Town's efforts to regulate the Church. Mr. Francisco oversees the Town's Planning Board Committee, which "administers local ordinances; prepares, amends, and updates the Town's Master Plan; and recommends changes to zoning ordinances." Compl. ¶ 19. After Mr. Sawyer's visit in August 2023, Pastor Kaloogian sent a letter to Mr. Francisco expressing his concerns about violations of constitutional rights. *Id.* ¶ 45. Mr. Francisco signed the Town's letter on September 30, 2023,

24

telling the Church it must apply for a Site Plan to continue meeting. *Id.* ¶ 50. As Zoning Enforcement Officer, Mr. Sawyer is the "principal official responsible for granting permits and variances and exceptions to the Town Zoning Ordinances." *Id.* ¶ 18. When Mr. Sawyer's supervisor saw the Church's ad in the local paper, he showed up uninvited to Pastor Kaloogian's door and said he could no longer use his home for religious assemblies, claiming that would constitute a change in use and require Pastor Kaloogian to complete a Site Plan application. *Id.* ¶ 5. Mr. Sawyer handed Pastor Kaloogian the form to initiate Site Plan review. *Id.* ¶¶ 42–43. Mr. Sawyer then signed the Town's Cease and Desist letter on October 23, 2023. Compl. Ex. A. Thus, Mr. Sawyer and Mr. Francisco easily meet the "but-for" test for individual liability, both directly involved in the Town's application of its regulations toward the Church. But for their actions, the Church's constitutional rights would not have been violated.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion in its entirety, enter judgment in the Church's favor and against the Town, and grant such other and further relief as it deems just and proper.

Dated:  April 28, 2025

Respectfully Submitted,

  _/s/  Connor R. Brewer_

David J. Hacker (pro hac vice)
Jeremiah G. Dys (pro hac vice)
Ryan Gardner (pro hac vice)
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
Tel: (972) 941-4444

Phillip E. Marbury (Bar # 267645)
THE LAW OFFICES OF MARBURY & MARBURY, PLLC
P.O. Box 2122
Wolfeboro, NH 03894
Tel.: (603) 569-4111
Fax: (603) 941-3180
*pm@marblaw.com*

M. Sean Royall (pro hac vice)
E. Caroline Freeman (pro hac vice)
KING & SPALDING LLP
1700 Pennsylvania Ave. NW, Suite 900
Washington, D.C. 20006

Tel.: (202) 737-0500
*sroyall@kslaw.com*
*cfreeman@kslaw.com*

Connor R. Brewer (pro hac vice)
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
Tel.: (214) 764-4420
*cbrewer@kslaw.com*

*Attorneys for Plaintiffs*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, I electronically filed the foregoing document using CM/ECF system, which will send notification of such filing(s) to all those registered with the ECF system.

Dated:  April 28, 2025                                    */s/  Connor R. Brewer*