# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| GRACE NEW ENGLAND; and<br><br>PASTOR HOWARD KALOOGIAN,<br><br>               Plaintiffs,<br><br>    v.<br><br>TOWN OF WEARE, NEW HAMPSHIRE;<br><br>TONY SAWYER, in his individual and official capacities; and<br><br>CRAIG FRANCISCO, in his individual and official capacities,<br><br>           Defendants. | Civil Action No. 1:24-cv-00041-PB-AJ |

## <u>STATEMENT OF INTEREST OF THE UNITED STATES</u>

**TABLE OF CONTENTS**

I.BACKGROUND ................................................................................................ 2

   A.   Applicable Local and State Law ......................................................... 2

   B.   The Town Prohibits Plaintiffs' Church. ........................................... 6

II.     ARGUMENT ...................................................................................... 9

   A. Plaintiffs' RLUIPA Claims Are Ripe. ................................................ 10

   B.   There Is No Administrative Exhaustion Requirement for RLUIPA Land Use

Claims. ...................................................................................................... 15

III.    CONCLUSION .................................................................................. 17

# Table of Authorities

## Cases

**Pages**

*Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*,
   88 F.4th 344 (2d Cir. 2023) ................................................................. 17

*Dialura v. Ann Arbor Charter Twp.*, 30 F. App'x 501 (6th Cir. 2002) .................... 16

*Gethsemani Baptist Church*, No. CV-24-00534-PHX-GMS,
   2024 WL 4870509 (D. Ariz. Nov. 21, 2024) ................................................. 12, 14

*Guatay Christian Fellowship v. Cty. of San Diego*,
   670 F.3d 957 (9th Cir. 2011) ................................................................ 16

*Hunt Valley Baptist Church, Inc. v. Baltimore Cty.,* No. ELH-17-804,
   2017 WL 4801542 (D. Md. Oct. 17, 2017) ................................................... 16

*Lucas v. South Carolina Coastal Council*,
   505 U.S. 1003 (1992) ........................................................................ 15-16

*Micah's Way v. City of Santa Ana*, No. 8:23-cv-00183-DOC-KES,
   2023 WL 4680804 (C.D. Cal. June 8, 2023) ............................................... 14

*Opulent Life Church v. City of Holly Springs*, 697 F.3d 279 (5th Cir.2012) .......... 11

*Pakdel v. City & Cnty. of San Francisco*,
   594 U.S. 474 (2021) .......................................................................... 12

*Raskiewicz v. Town of New Boston*,
   754 F.2d 38 (1st Cir. 1985) ................................................................. 16-17

*Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78
   (1st Cir. 2013) ............................................................................. *Passim*

*St. Timothy's Episcopal Church v. City of Brookings*, 726 F. Supp. 3d 1231
   (D. Or. 2024) ................................................................................. 14

*Summa Humma Enters., LLC v. Town of Tilton*,
   151 N.H. 75, 849 A.2d 146 (2004) .......................................................... 6

*United States v. City of Walnut,* No. CV 10-6774-GW FMOX,
   2011 WL 12464619 (C.D. Cal. Jan. 13, 2011) ............................................. 16

**Statutes**

42 U.S.C. § 2000cc-2(f) ............................................................................ 1

28 U.S.C. § 517 ......................................................................................... 1

42 U.S.C. § 2000cc-2 ........................................................................... 1, 14

42 U.S.C. § 2000cc-3 .............................................................................. 16

New Hampshire Statute § 674:76 ..................................................... *Passim*

New Hampshire Statute § 674:43 ............................................................. 4

New Hampshire Statute § 674:44 ............................................................. 4

The United States respectfully submits this Statement of Interest to address the arguments made by the Defendants in their Motion for Summary Judgment, *see* ECF No. 37, concerning the ripeness of Plaintiffs' claims brought under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-2(f). The Town of Weare, New Hampshire ("Town") and its zoning officials (collectively, "Defendants") applied their Town's Site Plan Review Regulations to the Plaintiffs' home-based church despite the existence of New Hampshire statute § 674:76, which prohibits local zoning codes or "site plan review regulation[s]" from "prohibit[ing], regulat[ing], or restrict[ing] the use of land or structures primarily used for religious purposes." Defendants also made this demand even though they did not require Plaintiffs to submit a Site Plan to host numerous secular social and community gatherings like political rallies, backgammon tournaments, and weddings on their property. When Plaintiffs refused to undergo Site Plan Review to host religious gatherings, Defendants issued a cease-and-desist order backed by the threat of hundreds of dollars a day in fines. As alleged by Plaintiffs, and contrary to the argument made by Defendants, this constitutes actionable injury under RLUIPA, and Plaintiffs' RLUIPA claims are therefore ripe.[1]

The United States files this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United

---

[1] In this Statement of Interest, the United States does not address the other claims for relief brought by Plaintiffs or the specific merits of Plaintiffs' RLUIPA substantial burden and applied equal terms claims. Plaintiffs have represented that they have no objection to Defendants filing a response to the United States' Statement of Interest.

States in a suit pending in a court of the United States." The United States enforces RLUIPA and accordingly has an interest in how courts apply and interpret the statute. To help ensure the correct and consistent interpretation of RLUIPA, the United States has filed many statements of interest in RLUIPA cases with district courts, as well as amicus briefs with the courts of appeal.[2]

## I.  BACKGROUND

### A. Applicable Local and State Law

New Hampshire state law strictly limits the ability of localities to regulate the religious use of land. It prohibits any "zoning ordinance or site plan review regulation" from "prohibit[ing], regulat[ing], or restrict[ing] the use of land or structures primarily used for religious purposes," with limited exceptions. RSA 674:76. These limited exceptions, which are not implicated by Plaintiffs' claims, include "objective and definite regulations concerning the height of structures, yard sizes, lot area, setbacks, open space, and building coverage requirements" that "are

---

[2] *See, e.g.*, *Anchor Stone Christian Church v. City of Santa Ana*, No. 8:25-cv-215, ECF 56 (C.D. Cal. Mar. 14, 2025) (decision at 2025 WL 1086360 (C.D. Cal. Apr. 7, 2025)); *Gethsemani Baptist Church v. City of San Luis*, No. 2:24-cv-00534-GMS, ECF 39 (D. Ariz. July 29, 2024) (decision at 2024 WL 4870509 (D. Ariz. Nov. 22, 2024)); *St. Timothy's Episcopal Church v. City of Brookings*, No. 1:22-cv-00156-CL, ECF 73 (D. Or. Nov. 21, 2023) (decision at 726 F. Supp. 3d 1231 (D. Or. Mar. 27, 2024)); *Micah's Way v. City of Santa Ana*, No. 8:23-cv-00183-DOC-KES, ECF 25 (C.D. Cal. May 9, 2023) (decision at 2023 WL 4680804 (C.D. Cal. June 8, 2023)); *Ramapough Mountain Indians, Inc. v. Twp. of Mahwah*, No. 2:18-cv-9228 (CCC) (JBC), ECF 82 (D.N.J. Mar. 18, 2019); *Congregation Etz Chaim v. City of Los Angeles*, No. CV10-1587 CAS EX, ECF 134 (C.D. Cal. Apr. 28, 2011) (decision at 2011 WL 12472550 (C.D. Cal. July 11, 2011)); *Grand v. City of Univ. Heights*, No. 24-3876, ECF 36 (6th Cir. Mar. 31, 2025); Opulent *Life Church v. City of Holly Springs*, 697 F.3d 279 (5th Cir. 2012); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163 (9th Cir. 2011); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3d Cir. 2007); *Guru Nanak Sikh Soc'y of Yuba City* v. *Cnty. of Sutter*, 456 F.3d 978 (9th Cir. 2006); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004).

applicable regardless of the religious or non-religious nature of the use of the property and do not substantially burden religious exercise." *Id.*

The Town's zoning ordinance ("Zoning Ordinance") prescribes different kinds of zoning districts, including village, residential, rural agricultural, commercial, and others.[3] Zoning Ordinance, § 2.1. In residential ("R") zoning districts, certain uses are "permitted." *Id.*, § 17.2. Other uses require a conditional use permit or special exception from the Town's Zoning Board of Adjustment ("ZBA"), which is appointed by the Town's elected Board of Selectmen. *Id.*, §§ 6.1.1 (explaining ZBA), 6.1.3 (stating that "[t]he [ZBA] shall hear and may grant such special exceptions" if the ZBA finds, *inter alia*, that the site is in "an appropriate location for such a use or uses in terms of overall community development" and that "[t]he proposed use will not adversely affect the neighborhood"). The permitted uses in R districts include "[c]hurches, municipally owned and operated educational facilities, nursing homes, golf courses, or any municipally owned and operated facility." *Id.*, § 17.2.1. If the Zoning Ordinance "is in conflict with State law or local regulation, the more stringent provision shall apply." *Id.*, § 3.3.

Separate from and in addition to its Zoning Ordinance, the Town's Site Plan Review Regulations govern "the review of non-residential site plan, multifamily

---

[3] The latest version of the Zoning Ordinance (effective March 2024) is available at: https://www.weare.nh.gov/sites/g/files/vyhlif5161/f/pages/2024_zoning_ordinance-searchable.pdf.

development and residential condominiums."[4] Site Plan Review Regulations, § I; *see also* RSA 674:43 & 44 (permitting local planning boards to enact site plan review regulations and exercise power under those regulations). The Site Plan Review Regulations have very broad and lofty goals including, in part, to "[p]rotect the public health, safety, welfare and prosperity," "[p]rovide for the safe, harmonious, compatible and aesthetically pleasing development of the site, and of the Town and its environs," and "[g]uard against such conditions that would involve danger or injury to health, safety or prosperity . . . ." Site Plan Review Regulations § II(A)-(C). The Town's Site Plan Review Regulations do not address or even acknowledge the exceptions for religious land use set forth in RSA 674:76. *Compare* RSA 674:76 *with* Site Plan Review Regulations, § XI.

The site plan review process is managed by the Town's Planning Board, appointed by the Town's elected Board of Selectmen. The Planning Board has full authority to determine whether site plan review is necessary and the discretion to approve or deny site plans. Site Plan Review Regulations, §§ III, VI.F-H. The site plan review process requires the applicant to:

> (1) submit a formal written application for approval to the Land Use Coordinator and Planning Board, containing multiple copies of a full, formal plat containing detailed information such as the location of parking; the size and location of water mains, sewers, culverts, existing or proposed waste disposal systems, wells; a soil survey date; and the location and copies of any existing or proposed easements, deed restrictions, and covenants;

---

[4] The latest version of the Town's Site Plan Review Regulations (effective April 2016) is available at: https://www.weare.nh.gov/sites/g/files/vyhlif5161/f/file/file/site_plan_regs_-_adopted_10-23-08-revised_to_chg_abutter_fee_and_preprinted_labels_-_4-5-16.pdf.

(2) provide a list of abutters' names and addresses; the names and addresses of holders of conservation, preservation, or agricultural preservation restrictions; and the names and addresses of professionals who have stamped the plans;

(3) submit a fee of at least $250, with additional fees incurred for additional design review and notification fees to abutters and the public;

(4) attend a scheduled, public meeting of the Planning Board to present the application for initial discussion.

*Id.*, §§ VI.A, VI.L-N, X.A-B.1.

As an initial step in the Site Plan Review process, an applicant can undergo an optional "Conceptual Consultation" or "Design Review" meeting to "discuss project proposals with the Planning Board in the early stages of consideration and design." Site Plan Review Regulations, § V. These meetings "must be scheduled on the Board's meeting agenda" and at the meeting, the "Board may review testimony . . . from the applicant, any abutter or any other person as permitted by the Board." *Id.* However, "[n]either conceptual or design review takes the place of filing a formal application to the Board if the project proceeds." *Id.*

The Planning Board can also require a site plan applicant to produce additional studies or documentation, such as environmental studies, legal review of documents, and "other matters necessary to make an informed decision"—all of which must be paid for by the applicant. *Id.*, § VI.N.3. The Planning Board can also require more public hearings and notification to other localities if it deems the development to "have regional impact" in terms of proximity to the borders of the neighboring community, effect on "transportation networks," or "other factors

which, in the sole discretion of the Board, are reasonably likely to have a substantial effect on another municipality." *Id.*, §§ VI.L.3, VIII.

In reviewing a site plan application, the Planning Board considers the general goals of the Site Plan Review regulations as well as landscaping, parking, an erosion and sediment control plan, proper illumination, and similar items. *Id.*, §§ II, XI. "[T]he board has authority under site plan review to impose requirements and conditions that are reasonably related to land use goals and considerations within its purview." *Summa Humma Enters., LLC v. Town of Tilton*, 151 N.H. 75, 78, 849 A.2d 146, 149 (2004). Those found to be in violation of the Site Plan Review Regulations can be subject to civil fines of up to $275 per day the violation continues or criminal penalties. Site Plan Review Regulations, § XXI.

### B. The Town Prohibits Plaintiffs' Church.

In 2015, Pastor Howard Kaloogian and his wife moved to their five-acre property, consisting of a house and renovated barn, in the Town of Weare, NH. Aff. of Howard Kaloogian, ECF 24-2 ¶¶ 3-4. This property is in a residential (R) zoning district. Ex. K, Tax Card for 217 Colby Road, ECF 37-3 at Defs.' MSJ 315-16; Ex. L, Subdivision Plan of Property, ECF 37-4 at Defs.' MSJ 318. After moving to their property, they hosted many social and community events there, including secular gatherings like political rallies, backgammon tournaments, and weddings, without issue from the Town. ECF 24-2, ¶¶ 8-11. They asked the Town's Planning Board if they needed special authorization to host these and similar events and were told it was not required. *Id.* ¶ 9; Ex. 1, Dep. of Howard James Kaloogian, ECF 38-4 at

45:15-23 ("They [the Town's Planning Board] gave us permission to do anything we wanted to do with our barn as long as we don't charge for it.").

In summer 2023, Pastor Kaloogian started a "church plant" of Texas-based Grace Community Church—Grace New England—on his property. ECF 24-2 ¶ 13. As part of the church plant, he hosted religious gatherings in his home and the barn on the property. *Id.* ¶ 14; Decl. of Howard Kaloogian, ECF 38-2 ¶¶ 6-8. In August 2023, a Zoning Enforcement Officer from the Town visited Plaintiffs' property and told Pastor Kaloogian he could not hold religious gatherings without obtaining Site Plan Review from the Planning Board and directed him to fill out a form and get on the agenda for an upcoming Planning Board meeting. Ex. 2, Dep. of Tony R. Sawyer, ECF 38-5 at 73:8 to 74:12; Ex. 5, Aug. 23, 2023 Letter from Howard Kaloogian to Craig Francisco, ECF 38-8. The Zoning Enforcement Officer made these demands despite Pastor Kaloogian's open use of his property to host numerous secular gatherings and events over the past eight years. ECF 38-8; ECF 24-2, ¶¶ 8-11.

The Zoning Officer's site plan demand began a controversy between Plaintiffs and the Town regarding a Site Plan Review. On September 30, 2023, the Chairman of the Planning Board informed Plaintiffs that they would need to apply for Site Plan Review. Ex. 6, Sept. 30, 2023 Letter from Town Planning Board to Howard Kaloogian, ECF 38-9 at 2. According to the Town, this determination was "a final decision of the Planning Board involving interpretation and application of the terms of the Ordinance." ECF 37-1 at 13-14. On October 23, 2023, the Town issued a

cease-and-desist letter to Plaintiffs, instructing them to "immediately stop any assembly regarding Grace New England Church" and that the order would "remain in effect until a site plan is submitted, reviewed and there is a decision made by the Town Planning Board." Ex. 7, Oct. 23, 2023, Cease-and-Desist Letter, ECF 38-10. The cease-and-desist letter also threatened fines starting at $275 after a thirty-day non-compliance period, with additional fines of $550 per day if the violation continued. *Id.* This cease-and-desist order was "temporarily lifted" on October 27, 2023, after Plaintiffs retained counsel and informed the Town that they considered the order—and the demand for Plaintiffs to submit a Site Plan—illegal and violative of Plaintiffs' constitutional religious liberty rights. Ex. 8, Oct. 27, 2023, Letter from Kaloogian counsel to Town Zoning Officer, ECF 38-11; Ex. T, October 2023 Emails, ECF 37-4 at Defs.' MSJ 345.

In January 2024, Plaintiffs sent a letter directly to the Town's Board of Selectmen, seeking to clear up the misunderstanding and assert their rights to operate their church on their property. ECF 24-2 ¶ 33; Compl. Ex. I, Jan. 29, 2024, Email from Howard Kaloogian to Town's Board of Selectmen, ECF 1-9. The Town's Board met on February 5, 2024, to discuss Plaintiffs' church and any possible application for site plan review.[5] At this February 5 meeting, one Board member noted the existence of RSA 674:76 and that it might limit the Town's ability to require Plaintiffs to submit a Site Plan, though the Board did not resolve the issue or withdraw a demand for Plaintiffs to submit a Site Plan. Video at 1:32:28-1:33:28,

---

[5] *See* Weare Channel 6, "Board of Selectmen – February 5, 2024," YouTube (Feb. 5, 2024) (the "Video"), *available at* https://www.youtube.com/watch?v=_-C6a4E46UQ.

1:34:44-49. At the meeting, the Board discussed February 10, 2024, as a "deadline" for Plaintiffs to respond to the Town's demands. Video at 1:28-37. Plaintiffs filed their Complaint on February 9, 2024. Compl., ECF 1. As the lawsuit progressed, in August 2024, Plaintiffs sought a waiver from the Town's Planning Board from the Site Plan Review Regulations. Ex. 11, Waiver Request, ECF 38-14. The Town's ZBA denied Plaintiffs' request, asserting that it did not have jurisdiction to waive Site Plan Review requirements before the Planning Board held a publicly noticed meeting and voted on the matter. Ex. 13, Dec. 4, 2024, ZBA Notice of Decision, ECF 38-16; ECF 37-1 ("Defs.' MSJ Br.") at 11, 14.

## II. ARGUMENT

Plaintiffs' RLUIPA claims are ripe for adjudication. The undisputed factual record demonstrates—and Defendants concede—that the Town made a final decision "involving interpretation and application of the terms of the [zoning] Ordinance." ECF 37-1 at 13-14. Specifically, the Town determined that Plaintiffs must apply to the Planning Board for Site Plan Review, despite Plaintiffs' claims that they were not required to under New Hampshire law. Defendants then issued a cease-and-desist order to Plaintiffs backed by the threat of monetary fines if they continued operating their church on Pastor Kaloogian's property. The Town's determination and enforcement action constitute actionable and not merely hypothetical injury to Plaintiffs, subjecting them to the potentially long, expensive, discretionary, and unnecessary Site Plan Review process. Under First Circuit precedent, Plaintiffs' RLUIPA claims are ripe. And contrary to the Town's claims,

RLUIPA does not require Plaintiffs to exhaust administrative remedies before they seek to vindicate their religious liberty rights in federal court.

### A. Plaintiffs' RLUIPA Claims Are Ripe.

Defendants argue that Plaintiffs' claims are not ripe because Plaintiffs have "not participated in any level of municipal review, so it is purely speculative which provision of the Ordinance would be applied to the Church, or how the Ordinance may interplay with religious expression." Defs.' MSJ Br. at 12-13. But this misses the entire thrust of Plaintiffs' RLUIPA claims. Plaintiffs allege that forcing them to undergo Site Plan Review violates state law, RSA 674:76, and therefore imposes a substantial burden on their free exercise of religion and treats them worse than comparable secular gatherings, which do not require Site Plan Review. Compl., ¶¶ 105-118; ECF 38-1 ("Pls.' MSJ Br.") at 21-25. Plaintiffs contend that the application of the Site Plan Review provision is "arbitrary, capricious, and unlawful," and that Site Plan Review would subject their church to "micromanage[ment of] the details of how the Church may operate within Pastor Kaloogian's home." Pls.' MSJ Br. at 22; Ex. 16, Dep. of Craig Francisco, ECF 38-19 at 105:18-106:21 (site plan requires review by multiple government departments).

Indeed, under the "traditional notions of ripeness" standard set out by the First Circuit in *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 91 (1st Cir. 2013), Plaintiffs' RLUIPA claims are ripe. There, the church challenged a zoning law that restricted it from making any changes to the exterior of the church without permission from the City's historical commission. *Id*. at 83.

The City claimed that none of the church's RLUIPA claims were ripe because the City had not yet applied the new ordinance to the church. *Id*. at 87-88. In addressing the ripeness of the Church's claims, the court explained that "[t]he basic rationale of the ripeness inquiry is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id*. at 89 (cleaned up). To establish ripeness, both a "fitness" and "hardship" factor must be satisfied. *Id*. (explaining that "fitness" has jurisdictional and prudential components while "hardship" is "wholly prudential"). Fitness requires that there be a "sufficiently live case or controversy" and asks whether "resolution of the dispute should be postponed" because "elements of the case are uncertain" or delay may "dissipat[e]" the legal dispute. *Id*. Hardship requires that there be a "direct and immediate dilemma for the parties," and that a "mere possibility of future injury" is not hardship. *Id*. at 90 (cleaned up).

The First Circuit found that even though the ordinance had yet to be applied, the church's RLUIPA claim that the enactment of the ordinance substantially burdened its religious exercise was ripe because "[t]here is no doubt that the City intends to enforce the Ordinance against the [church] and that [the church] must submit several categories of its decisionmaking, otherwise governed by religious doctrine" to the City commission. *Id*. "[T]he requirement of submitting to the [City historical commission] authority presently imposes delay, uncertainty, and expense, which is sufficient to show present injury." *Id*. at 92 (citing *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir.2012)).

11

Here, both the "fitness" and "hardship" elements are met. First, the case is fit for judicial review because there is a "live case or controversy." Plaintiffs allege that state law prohibits the Defendants from imposing Site Plan Review and its concomitant discretionary review that will "micromanage . . . the details of how the Church may operate within Pastor Kaloogian's home." Pls.' MSJ Br. at 22. Plaintiffs have further alleged that Defendants' enforcement actions have substantially burdened their religious exercise and treated their religious use unequally compared to secular assembly use, in violation of RLUIPA. Defendants, on the other hand, insist—on pain of fines—that despite RSA 674:76, Plaintiffs are required to apply for Site Plan Review. This is not an "abstract disagreement," and additional delay will not "dissipate[e] . . . the legal dispute without need for decision." *Roman Cath. Bishop of Springfield,* 724 F.3d at 89 (internal quotations omitted); *see also Gethsemani Baptist Church*, 2024 WL 4870509, at *5 (finding that City's decision that church was no longer a nonconforming use and therefore had to apply for a conditional use permit established that the church's RLUIPA claims were ripe); *cf. Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 478 (2021) (noting, in takings context, "[t]he finality requirement is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question.") (cleaned up).[6]

---

[6] In their brief, Defendants attempt to minimize their Site Plan Review regulations, contending that Plaintiffs need only submit a one page "Conceptual Review" form to the Planning Board as part of Site Plan Review, which is just a "ticket to go to the Planning Board." Defs.' MSJ Br. at 7-9. However, as discussed above, "Conceptual Review" is part of the Site Plan Review process and, as acknowledged by Defendants, requires a public hearing where testimony may be taken. Site Plan Review Regulations, § V. As alleged by

Similarly, withholding federal court jurisdiction would present a "hardship" to Plaintiffs. *Roman Cath. Bishop of Springfield,* 724 F.3d at 89. Defendants' Site Plan Review demand has produced a "direct and immediate dilemma for the parties" that poses current injury to Plaintiffs. *Id.* at 90. Defendants have already issued a cease-and-desist order to Plaintiffs backed by the threat of fines to coerce them to undergo the Site Plan Review process, despite the existence of RSA 674:76. While Defendants have chosen to "temporarily" suspend this order, Defendants can just as easily reimpose the order and require Plaintiffs to undergo Site Plan Review, subjecting Plaintiffs to fines if they refuse. *See* Defs.' MSJ Br. at 9 n.4 (noting that though "[t]he Cease and Desist Letter has remained lifted throughout the pendency of this litigation . . . the Town's current position remains the same, that the Church continues to be in violation of the Ordinance. . . ."); *see also Roman Cath. Bishop of Springfield,* 724 F.3d at 90 (finding RLUIPA claim ripe when "[t]here is no doubt that the City intends to enforce the Ordinance against" the church).

And Defendants' threat of fines "put[s] pressure on" Plaintiffs "to modify their behavior and to violate their beliefs," demonstrating both the controversy at issue and the immediate injury imposed on Plaintiffs. *See St. Timothy's Episcopal Church*

---

Plaintiffs, applying the Town's Site Plan Review process to religious assembles is not permitted by RSA 674:76. Moreover, the Site Plan Review Regulations state that "Conceptual Review" is "optional" and "[n]either conceptual or design review takes the place of filing a formal application to the Board if the project proceeds." Site Plan Review Regulations, § V. In any case, Defendants' September 30, 2023, demand letter sent to Plaintiffs does not invite a one-page Conceptual Review Form or explain that Site Plan Review is a formality. *See* ECF 38-9. Instead, it quotes at length the purpose of the Site Plan Regulation and states that "[t]he board has determined that you will need to apply for *a Site Plan* to continue these gatherings." *Id.* at 3 (emphasis added).

*v. City of Brookings*, 726 F. Supp. 3d 1231, 1244-45 (D. Or. 2024) ("By limiting the number of days per week that St. Timothy's can provide benevolent meal service, the Ordinance forces Plaintiffs to choose between acting in accordance with their faith or facing a fine of $720 per day."); *see also Gethsemani Baptist Church*, 2024 WL 4870509, at *6 (finding that allegations of fines and cease and desist letters sent by the City established "a well and specifically defined case and controversy that alleges both a real dispute between real parties and the concrete factual setting necessary to satisfy both jurisdictional and prudential ripeness."); *Micah's Way v. City of Santa Ana*, No. 8:23-cv-00183-DOC-KES, 2023 WL 4680804, at *5 (C.D. Cal. June 8, 2023) (finding plaintiff alleged substantial burden under RLUIPA when city threatened fines if ministry continued distributing food to the needy).

In their opposition brief, ECF 40-1, Defendants claim that Plaintiffs' RLUIPA claims are unripe because Plaintiffs did not file a Site Plan Review application, which would have allowed the Town to review the six specifically enumerated characteristics allowed for by RSA 674:76. *Id.* at 10. This argument is meritless. Defendants never offered to circumscribe Site Plan Review to these six enumerated items, even after this lawsuit was filed. *See* ECF 38-14. Instead, Defendants have consistently insisted that the entirety of the Town's Site Plan Review regulations apply to Plaintiffs. *See* ECF 38-9 at 3; ECF 1-7; ECF 40-1 at 10, n.6. In light of the Town's position that 674:76 doesn't limit their Site Plan review, *see* ECF 40-1 at 10, n.6, it would be pointless for Plaintiffs to submit a Site Plan application so that the Town could go through the theater of reviewing these six enumerated items. *Lucas*

*v. South Carolina Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992) (in Takings case, stating that an application for a variance is not required to establish ripeness when it would be "pointless").

### B. There Is No Administrative Exhaustion Requirement for RLUIPA Land Use Claims.

Defendants' argument that Plaintiffs' RLUIPA claims are not ripe because they failed to exhaust administrative remedies is similarly unavailing. *See* Defs.' MSJ Br. at 13-15. RLUIPA's land use provisions have no exhaustion requirement. *See* 42 U.S.C. § 2000cc-2 (RLUIPA section regarding judicial relief with no administrative exhaustion requirement for land use cases).

Defendants specifically contend that Plaintiffs' RLUIPA claims are not ripe because they needed to make "an administrative appeal to the ZBA pursuant to RSA 676:5" and then appeal to the New Hampshire Superior Court. Defs.' MSJ Br. at 14. As to an appeal to the ZBA, the requirement that RLUIPA plaintiffs must avail themselves of all available zoning relief before filing a claim was specifically rejected in *Roman Catholic Bishop of Springfield*. 724 F.3d at 91-92 (rejecting claim that a RLUIPA plaintiff "must follow the procedures for requesting the applicable zoning relief, and have its request denied, before bringing a claim in court" as required in Takings Clause cases because that requirement "is compelled by the very nature of the inquiry required by the Just Compensation Clause" and was not implicated by the church's religious rights claims) (quoting *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 190–91 (1985) overruled on other grounds by *Knick v. Township of Scott*, 588 U.S. 180 (2019)). And even if an

appeal was required here—which it was not—Plaintiffs *did* appeal to the ZBA when they asked the ZBA to waive the site plan requirements. ECF 38-14, Pls.' MSJ Br. at 8. The ZBA denied the appeal in one sentence finding that it lacked jurisdiction to do so. *See* ECF 38-16. Any additional appeals to the ZBA would have been pointless. *Lucas*, 505 U.S. at 1012 n.3 (1992).

As to an appeal to state court, neither is this required as a prerequisite to filing RLUIPA claims in federal court. Courts have uniformly rejected the notion that land use claims under RLUIPA require exhaustion. *See, e.g.*, *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 979 (9th Cir. 2011) (exhaustion of administrative remedies not required before finding RLUIPA claims ripe); *Dialura v. Ann Arbor Charter Twp.*, 30 F. App'x 501, 507 (6th Cir. 2002) ("[E]xhaustion of administrative remedies is not required for RLUIPA claims when brought as part of a § 1983 action."); *Hunt Valley Baptist Church, Inc. v. Baltimore Cty.*, No. ELH-17-804, 2017 WL 4801542, at *21 (D. Md. Oct. 17, 2017) ("Nor is exhaustion required before pursuit of a claim under RLUIPA."); *United States v. City of Walnut*, No. CV 10-6774-GW FMOX, 2011 WL 12464619, at *3 (C.D. Cal. Jan. 13, 2011) ("RLUIPA's land-use provisions contain no express requirement that administrative remedies be exhausted before a plaintiff may file suit . . . . Accordingly, RLUIPA does not require plaintiffs in land use cases to exhaust administrative remedies.").

Defendants cite *Raskiewicz v. Town of New Boston*, 754 F.2d 38 (1st Cir. 1985), for the proposition that "federal courts do not sit as a super zoning board or a zoning board of Appeals," and then assert that "[w]hether Site Plan Review is

required, and whether specific provisions of the Ordinance should be waived, are squarely matters of local land permitting that this Court should decline to entertain." Defs.' MSJ Br. at 14-15. *Raskiewicz* was decided forty years ago—fifteen before RLUIPA was passed—and has never been applied to a RLUIPA case. But more importantly, Defendants' argument ignores that "federal courts have an obligation to adjudicate cases that invoke our jurisdiction, and we do not close our doors to litigants properly seeking federal review simply because their grievances touch on local zoning matters." *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 351 (2d Cir. 2023) (rejecting argument that plaintiff's RLUIPA claims were not ripe). RLUIPA was enacted to "broadly protect religious land use." 42 U.S.C. § 2000cc-3(g). And that includes situations when "local regulators base their decisions on misunderstandings of legal principles." *Roman Cath. Bishop of Springfield*, 724 F.3d at 97 (citing *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 899 (7th Cir. 2005)). Plaintiffs have therefore shown that their RLUIPA claims are ripe for adjudication.

## III.    CONCLUSION

For all these reasons, the Court should find that Plaintiffs' RLUIPA claims are ripe when evaluating the Complaint and evaluating the parties' cross motions for summary judgment.

17

Dated: April 29, 2025

Respectfully submitted:

JOHN J. MCCORMACK
Acting United States Attorney
District of New Hampshire

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division

By: */s/ Raphael Katz*
   Raphael Katz
   Assistant U.S. Attorney
   NY Bar No. 4371688
   United States Attorney's Office
   53 Pleasant Street
   Concord, NH 03301

*/s/ Adam M. Wesolowski*
CARRIE PAGNUCCO
Chief
JENNIFER SLAGLE PECK
Deputy Chief
NOAH SACKS (CA Bar No. 246694)
ADAM M. WESOLOWSKI (IL Bar No. 6314252)
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, DC 20530
Tel.: (202) 718-8821
Fax: (202) 514-1116
Noah.Sacks@usdoj.gov
Adam.M.Wesolowski@usdoj.gov

Attorneys for United States of America

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 29, 2025, I filed the foregoing via the CM/ECF system, which sends notice to all counsel of record.

<u>*/s/ Adam M. Wesolowski*</u>
ADAM M. WESOLOWSKI
