UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Grace New England, et al., | \* |
| | \* |
| Plaintiffs, | \* |
| v. | \*   Docket No. 1:24-cv-00041-PB-AJ |
| | \* |
| Weare, NH, Town of, et al., | \* |
| | \* |
| Defendants. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DEFENDANTS' SECOND SUPPLEMENTAL APPENDIX TO MOTIONS FOR SUMMARY JUDGMENT

Defendants, the Town of Weare, New Hampshire, Craig Francisco, and Tony Sawyer, by and through counsel, Gallagher, Callahan & Gartrell, P.C., hereby submit this Second Supplemental Appendix in conjunction with their Reply to Plaintiffs' Objection to Defendants' Motion for Summary Judgment and Supporting Memorandum of Law.[1]

### INDEX OF EXHIBITS

| Exhibit | Title | PDF Page No. |
|---|---|---|
| KK | December 3, 2024 Zoning Board of Adjustment Meeting Minutes | 491 |

---

[1] Defendants submitted an appendix in conjunction with their Motion for Summary Judgment and Supporting Memorandum of Law, and a Supplemental Appendix in conjunction with their Objection to Plaintiffs' Motion for Summary Judgment. Defendants have identified one record that was not previously submitted. For ease of reference, Defendants have presented the additional document sequentially with all prior exhibit lettering and bates numbering.

Defendants' MSJ 491

# EXHIBIT KK
## December 3, 2024 Zoning Board of Adjustment Meeting Minutes

**Defendants' MSJ 492**

**DRAFT**



WEARE ZONING BOARD OF ADJUSTMENTS
MEETING MINUTES
December 3, 2024

**PRESENT:** Malcolm Wright, Chair; Kurt Markarian, Vice Chair; Travis Corcoran; Matt Urie; Janice Mathews, Alternate.

**ABSENT:** Sean Gaffney; Mike Bauer-Alternate

**STAFF:** Naomi Bolton, Town Administrator

**GUESTS:** Attorney Steven Whitley, Esq.; Zeke Lemay; David Boddy; Gail Wescott; Ron Wescott; Danny Morse; Meghan Morse; Wayne Libby; Lisa Bailey; Kathy Libby; Ronald Boulanger; Diane C. Boulanger

I.   **INTRODUCTION/ADMINISTRATIVE ITEMS:** Chair Wright called the meeting to order at 7:00 PM. He stated that there are four items on the agenda tonight. He asked the board members to introduce themselves. Chair Wright announced that Janice Mathews will be appointed as a member of the Weare Zoning Board of Adjustments on this evening of December 3, 2024.

II.  **PUBLIC HEARINGS:**

**Request for Waiver**: Grace New England and Pastor Howard Kaloogian (owner); 217 Colby Road; Tax Map 412-012; Residential Zone. The owner is asking the Town to waive all site plan/change of use review requirements pursuant to New Hampshire law.

Chair Wright shared that he does not believe this request is within the purview of the ZBA. Travis Cocoran asked his fellow Board members for a discussion about what is within the ZBA purview.

Matt Urie asked if there should be a motion before the purview is discussed. Chair Wright clarified that because the request is not within the Board's purview, he would like to hear a motion to decline. Mr. Cocoran stated that he would like to have a discussion regarding what is, or is not, within the Board's purview as it relates to this request. Chair Wright welcomed discussion amongst Board members regarding their purview.

Travis Corcoran established for the record that there are three things within the ZBA's purview:

1. Variances
2. Special Exceptions
3. Appeals of Administrative Decisions

Mr. Corcoran's understanding that this request for waiver is a preemptive appeal of an administrative decision saying that some other Board should be curtailed in their normal powers. Given this understanding, no administrative decision has been made on this case, therefore, even if the ZBA wants to charitably call

47  this an appeal of administrative decision, it is not timely and that some other administrative decision would
48  have to be made.
49
50  Janice Mathews stated that this request is asking the Zoning Board to waive site plan review, which is not
51  within the purview of this Board. By Statute and by Town Ordinance, only the Planning Board can make
52  decisions to waive site plan reviews.
53
54  Chair Wright reiterated that this is a request for waiver of site plan review, as such a motion to deny the
55  request would be appropriate.
56
57  **Kurt Markarian motioned to deny the request to waive the site plan/change of use review**
58  **requirements per plan review regulations section 15 due to lack of jurisdiction. Matt Urie seconded**
59  **this motion. No further discussion. Passed 5-0-0.**
60
61  **Request for Rehearing:** David Boddy (applicant); Ezekial & Laura Lemay (Owners); Blake Road; Tax
62  Map 403-113 & 403-120; Residential Zone. The applicant is requesting a rehearing alleging mistake made
63  during cases 09-2024, 10-2024 & 17-2024.
64
65  Matt Urie stated that the letter submitted for this request does not supply evidence that constitutes holding
66  a rehearing of something that was approved by the Zoning Board.
67
68  Mr. Boddy interrupted the Board to ask what has been discussed up to this point and requested the Board
69  repeat what was just said. Chair Wright addressed Mr. Boddy's interruption to state that the Board must
70  first accept or deny this application and there can't be open discussion with the public at this time.
71
72  The Board continued their discussion. Chair Wright questioned the timeliness of the application. If this
73  request had been timely, then the Zoning Board would have held a meeting last month. Chair Wright
74  clarified that he does not recognize any new information, or any other compelling reasons warranting an
75  acceptance of this application.
76
77  Matt Urie recalled that the September 2024 Zoning Board meeting had the same request for a rehearing,
78  which failed 1-4. Travis Corcoran agreed that this is a second attempt for rehearing. Mr. Corcoran asked
79  the Chair to clarify if the ZBA processes allow for a second attempt for rehearing. Chair Wright clarified
80  that you get one chance for a rehearing, beyond that it needs to go to the Superior Court. He summarized
81  that the Zoning Board has held the hearing, granted the variances, and the prior request for rehearing was
82  denied. Chair Wright noted that these facts support a denial of this application.
83
84  Travis Corcoran noted that he can imagine two reasons for a rehearing request; one is new facts, or facts
85  that weren't adequately delivered or understood, and a second being allegations of procedural mistakes.
86  He noted there are some allegations of procedural mistakes, and he does not believe those allegations are
87  correct. Mr. Corcoran reiterated that he has not found any research to support a second attempt of a
88  rehearing in State Law, or Town Policy.
89
90  **Travis Corcoran motioned that the Zoning Board deny this application for a rehearing. Matt Urie**
91  **seconded. No further discussion. Motion passed 5-0-0.**
92
93  Mr. Boddy interrupted the meeting to express his frustration with the Board's decision. Chair Wright
94  responded that the decision has been made and the Board must move forward to the next agenda item.
95
96  **Case #22-2024**: Ron & Gail Wescott (owners & applicant); 48 Boyce Road; Tax Map 403-130; Residential
97  (R) Zone; Special Exception – Article 19.1.10 AND Variance – Article 19.1.10.1. The applicants would
98  like to add a new master suite and garage. The apartment in the detached garage needs to be enlarged (larger

Defendants' MSJ 494

than the ordinance allows) to make room for the owners when a family member takes over the main house. The original building permit was done in error, and they are looking to remedy this.

Travis Corcoran motioned to accept application 22-2024 as complete. Kurt Markarian seconded. Janice Mathews is not in favor. Discussion was invited amongst Board members. Ms. Mathews noted that the application checklist is not complete. She stated that the information provided on the ADU is not detailed, on the existing ADU on which they are asking for dimensional waiver; she noted there are three items in the application, but they are not separated and easy to identify. She believes there are three items in this case: a special exception, a variance, and a request for equitable dimensional.

Travis Corcoran recalled from his personal experience in cases with the Town of Weare, that when a variance is for a relief of dimensional requirements, that it requires not only a plan, but a stamped engineer plan. He referenced the first page, item 4, quoting: "In-scale, non-professional drawings may be acceptable. IF YOU ARE SEEKING RELAXATIONS FROM SETBACKS, LOT LINES, OR WETLANDS, A PROFESSIONAL STAMPED PLAN SHALL BE MANDATORY." Mr. Corcoran raised his concern that items in this application may be subject to the requirement of a stamped engineer plan in relation to relaxations. Janice Mathews stated that she does not believe the application is subject to the requirement of stamped engineer plans.

Mr. Corcoran asked Janice Mathews to clarify her concern regarding the application checklist. He asked if her assertion is that there are missing check marks on the checklist, or that the items that should have check marks are missing from the application. Ms. Mathews answered primarily the fact that there are missing check marks on the checklist, and that some items may be missing from the application. She corrected her earlier statement that this application includes an "equitable dimensional", and stated the proper term is an "equitable waiver of dimensional requirement". She reiterated that this application is for a special exception, a variance, and an equitable waiver of dimensional requirement.

Travis Corcoran shared his understanding of an equitable waiver of dimensional requirement being that an equitable waiver of dimensional requirement are situations where an error has been made previously and carried forward.

Ms. Mathews shared there are several things that outline an equitable waiver request:
1. Lack of discovery, the violation wasn't noticed
2. Good faith error in measurement or calculation, but not the outcome of ignorance of the law or ordinance, or failed to inquire obscuration, misinterpretation, or bad faith, but was instead an error in ordinance interpretation by a municipal agent when issuing the permit.
3. Good faith error in measurement or calculation by owner, or owner agent.

The Board continued discussion and review of the application. The Board decided that the application is complete, clarifying that the application includes an equitable waiver of dimensional requirement which was not noted on the agenda.

Travis Corcoran withdrew his motion. Kurt Markarian withdrew his seconding of the motion.

**Kurt Markarian motioned to accept the application as complete with the addition of the equitable waiver of requirement being noted as part of the application. Matt Urie seconded. No further discussion. Motion passed 5-0-0.**

Ron Wescott approached the Board. Chair Wright suggested the best way to proceed is to begin with the special exception, then proceed in order, ending with the equitable waiver portion. Beginning with the application for special exception as provided in Article 19.1.10, Mr. Wescott read aloud each item as follows:

1. **The specific site is an appropriate location for such a use or uses in terms of overall community development:** Mr. Wescott explained that the dwelling is a long-existing building. He stated that years ago when the original structure was built, it was supposed to be an office/apartment but it was recorded as storage.

2. **The proposed use will not adversely affect the neighborhood and shall produce no significant reduction of real estate values in the neighboring area:** Mr. Wescott stated that there will not be new residents inhabiting the dwelling. Currently he and his wife live in the main home on the property. Mr. Wescott's grandson currently lives in an existing apartment over the existing garage. Mr. Wescott's grandson will be moving into the main home, and Mr. Wescott and his wife will be moving into the space above the garage.

3. **The proposed use will not be a nuisance or serious hazard to vehicular traffic or pedestrians:** Mr. Wescott stated there will be no increase in the number of vehicles travelling to and from the property.

4. **The proposed use will not cause an undue burden on the Town through the provision of basic Town services:** No additional residents will be located at the property, therefore no additional burden on the Town through the provision of basic Town services.

5. **Adequate off-street parking be provided if determined necessary by the Zoning Board of Adjustment:** Mr. Wescott stated there is ample parking in the existing driveway, and the proposed garage addition will increase parking space.

6. **A buffer may be required to screen neighboring uses from the proposed use. Buffers may be fence screens, dense planning of suitable trees and shrubbery, or naturally occurring shrubs and trees:** Mr. Wescott stated that the dwellings are centrally located on their wooded lot of 15 acres, therefore he doesn't feel the need for any buffer zones.

7. **The Zoning Board of Adjustment, in granting any special exception, may include such restrictions or conditions to insure compliance with this section:** Mr. Wescott stated that he believes the proposed changes to the property are in compliance with Article 19.1.10 and that suggested improvements will increase the property's value, therefore increasing tax dollars paid to the Town.

Mr. Urie asked Mr. Wescott to clarify that there is an existing 3-bay garage with an existing apartment above it. Mr. Wescott confirmed that is correct, adding that this plan is to expand the existing 680 feet of living space and adding two bays to the existing garage. The end result will be a 5-bay garage with an expansion of the apartment living space, with note that there is no additional bedrooms being proposed with this plan.

Mr. Wescott supplied the Board with copies of a new, State-approved septic system. He also supplied a photo from the road that the house is not visible from the road.

Mr. Corcoran raised concern regarding the definition of an ADU. He stated that the definition is that an ADU is to be a unit separate from the primary living unit. The proposed addition onto the garage is an extension of existing living space there. It is marked on the plan as an ADU, but per the definition of an ADU this is not an ADU. Mr. Corcoran noted that Article 19.1.10.2 specifically states that the dwelling shall be attached. He stated that the proposed plan is effectively two houses on one lot.

Janice Mathews noted that the tax card does not reflect the existing unit as an apartment, rather that it is marked as storage.

Defendants' MSJ 496

Travis Corcoran asked Janice Mathews what the equitable waiver applies to. Ms. Mathews stated that she believes it applies to the original ADU. Mr. Wescott stated that, which the footprint of the foundation may be 26x42, the he footprint of the foundation is 26 feet by 42 feet, the actual living space is 680 feet. Proposed plan is to increase the walkable floor space by 640 square feet, to create a total living space of 1,320 square feet.

Chair Wright inquired about setbacks. Mr. Wescott confirmed that the property is well withing setbacks.

Mr. Corcoran summarized that this application is asking the Board to approve two single family houses on the same lot. He suggested that maybe the application should be for a variance from the requirement that there only be one house per lot. Chair Wright agreed.

Chair Wright stated that this application is asking the Board to formalize a non-conforming use, but typically with a non-conforming use, they are not enlarged.

Mr. Wescott stated that he has a permit for doing the foundation, and the foundation for this plan has already been poured.

Mr. Corcoran identified that instead of three separate issues, as filed with the application, there is only one complete issue, which is that the applicant would like a variance from the regulation that limits one house per lot. Chair Wright agreed.

After considerable discussion about the appropriate procedural steps, it was noted that the current application could be withdrawn or revised in consultation with the planning board to address the non-conforming use issue.

Mr. Wescott requested to withdraw the application to allow for further consultation.

**Mr. Corcoran motioned that the Board accept the applicant's request to withdraw his application. Seconded by Matt Urie. Motion passed 5-0-0.**

**Request for Variance Extension:** Bailey Family Trust Variance Extension Request – Case #2504.

At the Board's request, TA Bolton approached the stand to discuss the original application for variance in 2004. The application was denied and the Town spent a lot of time in the courthouse with this case. As a result of the court hearings, the Town of Weare came to an agreement to create the variance for driveway access to their lot, which included on a curve on Route 149.

The Board invited Ms. Bailey to approach the Board. Ms. Bailey clarified that there is an existing driveway with access from a curvy portion of Route 149. The State of New Hampshire declined creating an additional driveway access from Route 149 because of the curvy nature of the road. This resulted in the variance request submitted to the Town of Weare to create a second driveway with access from the existing driveway, which has existing approval from the State of New Hampshire with access from Route 149.

The Board discussed the details before them. The primary driveway to the property exists, with approval from the State of New Hampshire for the main driveway to access Route 149. The Board expressed concern about the terminology of the approved variance, which was not presented for review at this meeting. Noted concern is that the variance may include terminology related to building structures, or other notable property adjustments, in conjunction with the build of a second driveway off the existing driveway. The owner of the property is encouraged to research the original variance. If they decide they want to extend the variance due to facts found, they can revisit this request for variance at the next ZBA meeting.

255  **Mr. Corcoran motioned that the Board continue this application until the next meeting of the ZBA.**
256  **Seconded by Mr. Urie. Vote passes 5-0-0**
257
258  Chair Wright discussed the need for clarity in the Town's ordinance regarding the expiration of variances.
259  TA Bolton stated NH State Law 674:33 I-A (a) includes language regarding a 2-year expiration of
260  variances.  Members agreed to consider a work session to revise the Town ordinance to include reference
261  of the applicable state law.
262
263  **Approval of Previous Meeting Minutes:**
264
265  The Board reviewed minutes of the September 10, 2024 meeting. Mr. Urie noted a typo on line 112,
266  suggesting it should read "minimum setback" instead of "minimum deep back."
267
268  **Mr. Corcoran motioned to accept the September 10, 2024 minutes as amended. Mr. Markarian**
269  **seconded the motion. Ms. Mathews abstained. Motion passed 5-0-1.**
270
271  The Board reviewed minutes of the October 1, 2024 meeting. Noted a typo on line 116 regarding the
272  distance that should be noted as "400 ft" instead of '400."
273
274  **Mr. Markarian motioned to accept the October 1, 2024 minutes as amended. Mr. Urie seconded the**
275  **motion. Motion passed 5-0-0.**
276
277  **Chair Wright called for a motion to adjourn. Travis Corcoran moved to adjourn the meeting. Mr.**
278  **Markarian seconded the motion. Motion passed 5-0-0.**
279
280  The meeting adjourned at 8:30 pm.
281  Next meeting: January 7, 2025
282
283  A True Record.
284  Carrie Goodwin
285  Carrie Goodwin, Minute Taker