IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| GRACE NEW ENGLAND; and<br><br>PASTOR HOWARD KALOOGIAN,<br><br>  Plaintiffs,<br><br>  v.<br><br>TOWN OF WEARE, NEW HAMPSHIRE;<br><br>TONY SAWYER, in his individual and official capacities; and<br><br>CRAIG FRANCISCO, in his individual and official capacities,<br><br>  Defendants. | **Civil Action No.: 1:24-cv-00041-PB-AJ** |

**PLAINTIFFS' REPLY MEMORANDUM IN RESPONSE TO DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Pastor Howard Kaloogian and Grace New England, by and through counsel, hereby submit this Reply Memorandum in Response to Defendants' Objection to Plaintiffs' Motion for Summary Judgment, and state as follows:

## INTRODUCTION

The Town is unable to rebut the Church's four core arguments. *See generally* Dkt. 38-1 at 2. The Town's attempt to defend its treatment of the Church only illustrates its arbitrary and discriminatory application of its Regulations. One clear example: the Town claims both that it does not know how the Planning Board would regulate the Church, *see* Dkt. 40-1 at 8-11, 17-18, and also that it is entitled to prevent the Church from gathering without its permission because it is concerned about issues ranging from "lighting and pedestrian movement" and "vehicular and pedestrian movements and controls" to "fire safety," "parking," and "the Church's septic system," *id.* at 17. The Town cannot have it both ways. Apart from these inconsistent positions, as described in more detail below, the Town also advances conclusory and unsupported arguments to either back away from previous positions or to confuse the issues. The Court should pay close attention to the fact the Town's Memorandum of Law in Support of Objection cited only *three* cases to support each of its many arguments and positions. The first two of those citations appear in the Town's first substantive section about RSA 674:76's applicability and enforceability, but as explained below, those two cases have no relevance to very point the Town seeks to advance with those citations. *Id.* at 8. And the third citation is a merely for a general proposition to a case that the Church had previously cited. *Id.* at 13. This is a red flag for obvious reasons. Even more of a red flag is the Town's almost complete failure to support its positions with record evidence. Instead, the Town consistently relies on its counsel's unsupported assertions, which this Court can soundly reject. The Court should therefore grant the Church's Motion in its entirety.

1

# ARGUMENT

I.   **The Town's Arguments Aimed to Avoid RSA 674:76 Are Misguided**

The Town appears to have abandoned its initial argument outlined in its affirmative motion that this Court is not able to interpret and apply a state statute or should otherwise ignore the Church's statutory position because the RSA 674:76 is in legislative "flux." Dkt. 37-1 at 22. Now, in an effort to avoid having this Court declare that the Town is in plain violation of RSA 674:76's clear text and statutory requirements, the Town raises several novel arguments related to jurisdiction and ripeness, along with an ask for this Court to ignore the plain text of the statute. This Court should reject each of these arguments.

First, this Court has jurisdiction to determine this dispute. Citing no case law, the Town asserts that "RSA 674:76 does not, in itself, create a standalone private cause of action ." Dkt. 40-1 at 7. Apart from its usual exhaustion arguments, addressed below, the Town hangs it hat on the contention "that it is exceedingly rare for a Federal Court to exercise jurisdiction over land use matters." *Id.* at 8. The Town then cites two cases—*Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004), and *Nestor Colon Medina & Successores, Inc. v. Custudio*, 964 F.2d 32, 45 (1st Cir. 1992)—neither of which provides any support for its novel proposition. *Eichenlaub* simply noted that there is a demanding "shocks the conscience" standard for evaluating a zoning official's actions or inactions in the substantive due process context and that demanding standard makes sense in deference to local zoning decisions. 385 F.3d at 285. Even setting aside the fact that the Church does not advance a substantive due process claim, *Eichenlaub* says only that a high standard is needed when accessing local decisions; it does not say anything about a broad prohibition on federal courts addressing local property issues. The Town's citation to *Nestor Colon* makes even less sense. That case also related to a substantive due process claim and noted that

using substantive due process's "virtually standardless reach" to scrutinize local planning disputes is often unjustified. 964 F.2d at 45. Even more, the Town ignores the following statement a few sentences later: "Should [the First Amendment] claim turn out to be viable in regard to the residential site permit, … there is obviously no need to enter the uncharted thicket of substantive due process to find an avenue for relief." *Id.* at 46. Not only does this again have nothing to do with the Town's original point, but it also notes that First Amendment-related actions are properly used to scrutinize a town's local zoning decision.

Further as to jurisdiction, under the Declaratory Judgment Act, this Court has the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," for any "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201. This Court indisputably has jurisdiction over the Church's claims under the U.S. Constitution, the New Hampshire Constitution, and federal law. The Town does not argue otherwise. Instead, it asks this Court to ignore its power under the Declaratory Judgment Act, without citing any legal authority or providing any substantive analysis, because RSA 674:76 does not contain an explicit private cause of action. Regardless of whether the Town is correct on this issue, the Court still can and must interpret RSA 674:76 to adjudicate the parties' dispute. The law is clear that this Court has the power to declare the Town's application of its ordinance preempted by RSA 674:76. *See, e.g.*, *Affordable Recovery Hous. v. City of Blue Island*, 74 F. Supp. 3d 875, 876 (N.D. Ill. 2014) (granting summary judgment for declaratory relief on basis that city ordinance was preempted by state law); *Prolerized New England Co. v. City of Manchester*, 103 A.3d 217, 221 (N.H. 2014) (explaining that "preemption exists when there is an actual conflict between State and local regulation").

3

Second, as discussed extensively by the Church and the U.S. Department of Justice, this dispute is ripe. *See* Dkt. 41 at 3-6; Dkt. 42 at 10–15. The Church has not only satisfied the "modest" requirement of showing that the Town intends to apply the "regulations at issue" to the Church, *Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 478 (2021), but it has shown much more. The Town has insisted from the outset that the Church "will need to apply for a Site Plan" to continue its religious gatherings. Dkt. 38-9 at 3; *see also* Pls.' MSJ, Ex. 2, Sawyer Dep. at 105:15-18 ("The town is saying that the site plan's required, and Mr. Kaloogian is saying he doesn't need to have one."); Dkt. 34, Defs.' Answer to Pls.' Compl. ¶ 5 (admitting that Pastor Kaloogian needs "to submit an application for site plan approval per the Town's ordinances"). It is about-faced and contradicts both the Town's arguments throughout this litigation and the record to now argue that the Town has no idea how or if the Site Plan regulations, in whole or in part, apply to the Church. Further, the First Circuit has rejected the Town's argument that the Church "must follow the procedures for requesting the applicable zoning relief" before seeking relief in federal court, *Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 91 (1st Cir. 2013). This principle is even more applicable where the Town has consistently required the Church to submit a site plan review, *expressly* forbidden by the statute at issue. *See* RSA 674:76.

While the Town says the Church "*assume*[*s*] that the Town would apply the full scope of its [Regulations]," Dkt. 40-1 at 8, the record is clear that the Town has consistently described in absolute terms its mandate that the Church submit to its arbitrary Regulations, a position the Town's counsel cannot now alter through a conclusory assertion in its brief with no record citation. *See, e.g.*, Pls.' Obj., Dkt. 41, Ex. 25, Naomi Bolton 30(b)(6) Dep. at 58:7-8, 59:8-13 (Town's corporate representative admitting the "purpose of the site plan review regulations," in general and as applied to the Church, is to undergo "*a full one* because of, you know, parking, safety, fire.

*Whatever*" (emphasis added)); Pls.' MSJ, Dkt. 38-9, Ex. 6. Notwithstanding that the Church has attempted multiple times to avoid this dispute, including following the waiver process suggested by this Court, the Town indisputably has conceded that its position is final. *See* Defs.' MSJ at 14 (admitting the September 2023 letter was the "final decision of the Planning Board involving interpretation and application of the terms of the Ordinance"); Pls.' MSJ, Dkt. 38, Ex. 6 ("The board has *determined* that you will need to apply for a Site Plan to continue these gatherings." (emphasis added)). The scope of review is not "hypothetical," as the Town suggests, Dkt. 40-1 at 9; the Town, through both its corporate representative and the chairman of the Planning Board, has contended that RSA 674:76 does not change the reality that the Church must submit to its Regulations, which can be used to probe "[w]hatever" the Town desires. Pls.' Obj., Dkt. 41, Ex. 25, Naomi Bolton 30(b)(6) Dep. at 58:7-8, 59:8-13; *see* Pls.' MSJ, Dkt. 38-6, Ex. 3 at 83:7-84:22, 88:20-90:8 (Town's corporate representative explaining that RSA 674:76 does not prohibit the Town from seeking to require the Church to submit to its Regulations). And as noted in the Church's recent filing, the Court need only read the Regulations to understand that the Town's position is nonsensical. *See, e.g.*, Pls.' MSJ, Dkt. 38-25, Ex. 22. In sum, the parties' dispute is ripe.

Additionally, the Court's interpretation of RSA 674:76 goes directly to determining whether the Town's actions create a cognizable burden on the Church's religious exercise. *See Roman Cath. Bishop*, 724 F.3d at 97 (holding a cognizable burden may exist where municipality imposes land use regulation "unlawfully" or based on "misunderstandings of legal principles") Moreover, the correct interpretation of RSA 674:76 is essential to the Court's strict-scrutiny analysis. As the Church has previously discussed, the Town does not have a compelling interest in violating New Hampshire law, and the correct interpretation of RSA 674:76 demonstrates a less-restrictive means of achieving the Town's purported interests.

5

Third and finally, the Town's attempts to evade RSA 674:76's requirements are entirely off base. The Church will not belabor the fact that: (1) the Town admittedly seeks to apply its Regulations in a manner that prohibits, regulates, or restricts (2) the use of the Church's structure" (3) which is primarily used for religious purposes. *See* Dkt. 38-1 at 9-11. There is no dispute that there are a few defined areas where the Town may regulate. *Id.* at 12-13. But, as described in detail in the Church's Objection, Dkt. 41-1 at 7-9, the record is filled with examples showing that the Town seeks to apply its Regulations only for reasons *not* listed in RSA 674:76, including fire code, parking, and sanitation. *See, e.g.*, Pls.' Obj., Dkt. 41-3, Ex. 24, at 94:12-18 (Mr. Francisco, the chairman of the Town's Planning Board, explaining that he "could have done a site plan for [the Church] for less than 5 grand" because "the only thing [he is] worried about is septic standard, driveway permits, and parking"); Pls.' MSJ Ex. 16, Francisco Dep. at 42:5-44:3, 81:5-82:20. To be sure, the Town's corporate representative admitted that the "purpose of the site plan review regulations" is to undergo "a full one because of, you know, parking, safety, fire. *Whatever*." Pls.' MSJ, Ex. 25, at 58:7-8, 59:8-13 (emphasis added). And the Town's final one-paragraph section about the Church's reliance on "non-precedential and irrelevant sources" proves the very point the Church has consistently advanced—the Town cannot form a coherent position against the express statutory text and history so it can only resort to saying that a host of authorities (all adopting the Church's position and rejecting the Town's position) cited by the Church are not "binding" on this Court. Therefore, there is no question that what the Town seeks to do here is in clear violation of state law and the Court should issue a declaratory judgment finding on this issue.

**II.     The Town Has Violated the First Amendment's Free Exercise Clause**

The Town concedes that a "lower threshold of a burden" applies to the Church's First Amendment claim. Dkt. 40-1 at 17. Yet it claims the Church has no "evidentiary support" to satisfy

that burden. *Id.* at 12. Bizarrely, the Town asks the Court to ignore the undisputed fact that it ordered the Church to stop meeting and threatened Pastor Kaloogian with fines and a lawsuit if he did not comply, *see* Dkt. 38-1 at 6, claiming that because it withdrew the cease-and-desist letter after three days and did not assess any fines, there is no harm and no foul, Dkt. 40-1 at 12. But the Town backed has deigned to allow the Church to "continue to hold" its meetings, Dkt. 40-1 at 12, only because the Church retained representation and initiated this litigation, *see* Dkt. 41-1. In any event, the Town cannot deny that even three days of forbidding the Church to exercise its rights is a burden. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)).

The Town's attempt to avoid strict scrutiny fails. A government policy is not generally applicable when the policy includes "a formal mechanism for granting exceptions." *Fulton v. City of Philadelphia*, 593 U.S. 522, 537 (2021). The Site Plan Regulations contain a provision permitting the Planning Board to "waive the requirements for *any* of the specific items outlined in" the Ordinance. Ex. 22, Town of Weare Zoning Ordinance § XV. The Town concedes that "waivers are available to all applicants and assessed on what information is necessary to support the Board's review," Dkt. 40-1 at 15; *see also id.* at 16 (listing instances in which the Planning Board has granted individualized exemptions). That alone ends the inquiry. In *Fulton*, the US Supreme Court found an ordinance was not generally applicable when it contained a waiver provision that granted a city commissioner the "sole discretion" to grant an "exception" to the relevant ordinance. *Fulton*, 593 U.S. at 534. As in *Fulton*, the Town's Site Plan Regulation grants its Planning Board the sole discretion to waive "any" regulation, including those at issue in this case. Ex. 22, Town of Weare Zoning Ordinance § XV. Because the Zoning Ordinance permits the

Town "to grant exemptions based on the circumstances underlying each application," it is not generally applicable. *Fulton*, 593 U.S. at 533. The Town does not even *address* the Supreme Court's explication of that principle in *Fulton*, which clearly controls here.

Because the Town's policy is not generally applicable, "the focus shifts to the [Town] to show that" its actions survive strict scrutiny. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022). The Town makes no effort to satisfy that "demanding and rarely satisfied standard," *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021) (Mem.). Nor could it satisfy that standard, for the reasons the Church has already explained. *See* Dkt. 38-1 at 18-21; Dkt. 41-1 at 12-17. Because the Town has not shown that its policy "advances 'interests of the highest order' and is narrowly tailored to achieve those interests," *Fulton*, 593 U.S. at 541 (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993)), the Town has effectively conceded that if strict scrutiny applies under either the Free Exercise Clause or RLUIPA—which it does— the Church is entitled to judgment in its favor. Indeed, even if this Court were to assume the Town has a compelling interest in applying its Site Plan Regulations against the Church—an action that would directly defy RSA 674:76—such action would not be the least restrictive means, as demonstrated by the approach taken by numerous other municipalities. *See* Dkt. 38-1 at 13–14. "[S]o long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 593 U.S. at 541.

### III. The Town Has Violated RLUIPA

In an attempt to defend against the Church's RLUIPA claims, the Town again claims that "the Church has not identified any of its religious practices that have been burdened by the requirement to undergo Site Plan Review." Dkt. 40-1. Yet it is undisputed that the Town *banned the Church from gathering* unless and until the Church submitted to the Town's demands,

8

enforceable by fines. *See* Ex. 7. That the Town *later* walked back its threats does not erase the cease-and-desist order. It is difficult to imagine a burden on religious exercise more substantial than an order not just limiting, but outright forbidding religious gatherings to continue. Furthermore, the Town's application of its regulations imposes a substantial burden because it is applying its land use regulation "unlawfully" and based on "misunderstandings of legal principles" by enforcing its ordinances in a manner that directly conflicts with RSA 674:76. *See* Dkt. 38-1 at 21-22; *Roman Cath. Bishop*, 724 F.3d at 97; *see also St. Paul's Found. v. Ives*, 29 F.4th 32, 40 (1st Cir. 2022). Because the Town's actions have imposed a substantial burden on the Church's religious exercise, it now bears the heavy burden of satisfying strict scrutiny, but the Town makes no effort to defend its actions under that standard—nor could it.

The Town's argument against the Church's equal-terms claim also fails. The Town asserts that the secular events on the Kaloogians' property that the Church has identified, *see* Dkt. 38-1 at 24-25; Dkt. 41-1 at 21-23, are distinguishable because, for example, they were "one-time events," "required an RSVP to have a finite number of attendees," and "utilized porta-potties." Dkt. 40-1 at 18. Some of those purported distinctions are simply inaccurate. The Pine Tree Riot is a repeated event that has been held every year for nine years. *See* Ex. 1, Kaloogian Dep. 39:2-15. And Pastor Kaloogian did not receive any advance headcount. *Id.* The Pine Tree Riot, the campaign event, and the wedding all brought *far* more guests than the Church's meetings. *See* Dkt. 41-1 at 22. Comparability depends on "the risks various activities pose." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). To the extent that the Town's concerns relate to issues like "number of attendees" and "parking," as the Town claims, Dkt. 40-1 at 17, those secular comparators indisputably pose much greater "risk" than the Church's gatherings. Furthermore, that the Town *now* knows the details that it claims make those events distinguishable—such as the duration of the events—does not save the

9

Town because the issue is that the Town did not require the Kaloogians to submit any such information to the Town in advance as part of the site plan review process, unlike its treatment of the Church. The Church is therefore entitled to summary judgment on its RLUIPA claims.

## IV. The Town Has Violated the New Hampshire Constitution

The Town does not dispute that the New Hampshire Constitution's protection of religious liberty is even more expansive than the U.S. Constitution's Free Exercise Clause. *See* Dkt. 40-1 at 19; *State v. Mack*, 249 A.3d 423, 442-43 (N.H. 2020). The state constitution "obliges the accommodation of religious practices that do not 'disturb the public peace.'" *Mack*, 249 A.3d at 440 (quoting N.H. Const. pt. I, Art. 5). The Town has not argued, much less proven, that the Church's gatherings disturb the public peace and cannot be accommodated. The Town's conduct violates the New Hampshire Constitution for the same reasons that it violates the U.S. Constitution.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Summary Judgment in its entirety, enter judgment in the Church's favor and against the Town, and grant such other and further relief as it deems just and proper.

Dated:  May 5, 2025

David J. Hacker (pro hac vice)
Jeremiah G. Dys (pro hac vice)
Ryan Gardner (pro hac vice)
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
Tel: (972) 941-4444

Respectfully Submitted,

 /s/  Connor R. Brewer
Phillip E. Marbury (Bar # 267645)
THE LAW OFFICES OF MARBURY & MARBURY, PLLC
P.O. Box 2122
Wolfeboro, NH 03894
Tel.: (603) 569-4111
Fax: (603) 941-3180
*pm@marblaw.com*

M. Sean Royall (pro hac vice)
E. Caroline Freeman (pro hac vice)
KING & SPALDING LLP

10

1700 Pennsylvania Ave. NW, Suite 900
Washington, D.C. 20006
Tel.: (202) 737-0500
*sroyall@kslaw.com*
*cfreeman@kslaw.com*

Connor R. Brewer (pro hac vice)
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
Tel.: (214) 764-4420
*cbrewer@kslaw.com*

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I electronically filed the foregoing document using CM/ECF system, which will send notification of such filing(s) to all those registered with the ECF system.

Dated: May 5, 2025                         */s/ Connor R. Brewer*