## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| Grace New England, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | **Docket No. 1:24-cv-00041-PB-AJ** |
| | * | |
| Weare, NH, Town of, et al., | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' RESPONSE TO
## STATEMENT OF INTEREST OF THE UNITED STATES

Defendants, the Town of Weare, New Hampshire, Craig Francisco, and Tony Sawyer, by and through counsel, Gallagher, Callahan & Gartrell, P.C., hereby submit this Response to the Statement of Interest of the United States, and state as follows:

## INTRODUCTION

This matter was initiated in February 2024 by Plaintiffs Howard Kaloogian and Grace New England (collectively "Plaintiffs" or the "Church"), arising out of a local land use dispute with the volunteer Planning Board for the Town of Weare, New Hampshire. The Parties have both moved for summary judgment on all claims. Through the various pleadings on summary judgment, it has become clear that the Parties view this case through vastly different lenses. The Defendants contend, and the evidentiary record reflects, that Plaintiffs were required to go through the same site plan review process as any other place of recurrent public assembly, to ensure that the neutral and objective goals of public health, safety, and welfare are met, now that increasing numbers of the public are invited to gather on more than 200 occasions a year at Plaintiffs' property. Plaintiffs believe, without support in the evidentiary record, that the only reason they are being required to participate in site plan review is because they are a religious

1

organization. Plaintiffs' actions further establish that they believe they are exempt from any local land use review.

After the Parties filed their respective objections to summary judgment, the United States Department of Justice ("USDOJ") filed a Statement of Interest in this matter. The stated purpose for USDOJ becoming involved in this local land use matter is to ensure the correct and consistent interpretation of RLUIPA. Specifically, the Statement of Interest provides analysis of: (I) ripeness jurisprudence for RLUIPA claims, and (II) the lack of an administrative exhaustion requirement for RLUIPA claims.

Defendants note that, while USDOJ states that it does not address the non-RLUIPA claims or the merits of any claim, USDOJ appears to take a firm position as to the interpretation and application of New Hampshire state law RSA 674:76, as well as using language to infer that the Town has acted with impropriety, without evidence to support such a characterization. Defendants also note that USDOJ appears to have largely adopted Plaintiffs' factual recitation, without regard to what exists in the evidentiary record or the ways in which planning and zoning are administered in the State of New Hampshire. For example, the majority of record citations USDOJ relies upon are derived from the affidavit, declaration, or communications created by Plaintiff Howard Kaloogian himself, rather than relying on the ample and objective evidence in the record. Defendants have provided the entirety of deposition transcripts, meeting minutes for municipal boards, video recordings of prior municipal board meetings, and the complete form of all other documentary evidence so that this Court may appreciate statements and actions in the context in which they occurred. Defendants urge this Court to rely on the detailed factual recitation, supported by the evidentiary record, that appears in Defendants' underlying pleadings, rather than adopt USDOJ's unsupported characterization of events.

## DISCUSSION

**(I)**     ***Roman Catholic Bishop of Springfield v. City of Springfield* does not provide support that Plaintiffs' claim are ripe or have merit.**

The Parties and USDOJ appear to agree that *Roman Catholic Bishop of Springfield v. City of Springfield* is one of the seminal cases controlling RLUIPA disputes in the First Circuit. However, to Plaintiffs' detriment, this case does not support an argument that Plaintiffs have a ripe claim or any federal claim with merit. To the contrary, this case underscores that Plaintiffs' claims – arising out of hypothetical harms if they participated in land use review, as well as the basic requirement to undergo site plan review – are not ripe for adjudication.

*Roman Catholic Bishop of Springfield v. City of Springfield* concerned a church that was closed by the Roman Catholic Bishop as part of the routine pastoral planning process. 724 F.3d 78, 84 (1st Cir. 2013). Roman Catholic canon law requires that once a church has closed, it must be deconsecrated to protect religious iconography, which often requires altering the architecture of a former church or demolishing the church altogether. *Id*. at 84-85. In direct response to the possibility of the church being altered or destroyed, within three weeks of the church closing, the City of Springfield enacted a historic district applicable only to the church and no other property, which was, at the time, the first and only single-parcel historic district in the City. *Id*. at 85-86. The historic district was established for the singular purpose of prohibiting the religious activity of a specific church – i.e. preventing the church from deconsecrating its exterior consistent with Roman Catholic canon law. *Id*. at 86-87. Once the church became part of a historic district, it could not be altered in a way that affected the exterior architecture, without first obtaining approval from the Historic Commission. *Id*. at 85. A property in a historic district obtains such an approval to make alterations by filing an application, submitting supporting materials, and

participating in a public hearing. *Id*. at 85-86. Failure to do so may result in fines ranging from ten dollars to five hundred dollars per day. *Id*. at 85.

The church brought suit the day after the historic district was established, alleging claims arising under 42 U.S.C. § 1983, RLUIPA, the Massachusetts Constitution, and Massachusetts state laws. At the time the suit was filed, the church had not presented any plan or proposal to the City or the Historic Commission, and therefore the City had no opportunity to demonstrate whether or not it would approve the church's future plans or what changes could be made to the church building after going through the municipal review process. *Id*. at 91. The First Circuit found that this was a key piece of missing information, and without knowing what the church can or cannot do with its building, the court cannot know to what extent, if any, the church will suffer from a burden on its religious practice as a result of the City's review. *Id*. The First Circuit further found that claims are not fit for adjudication when they are premised on the feared inability to use property in accord to religious principles, or based on future governmental decisions that have not occurred. *Id*.

In accord with *Roman Catholic Bishop*, the Plaintiffs in the present case do not have ripe claims or a basis for recovery on their fears that their religious practices *could* be burdened, *if* they went forward with site plan review. Similarly, it is insufficient to assume that RSA 674:76 *could* be violated, *if* Plaintiffs participate in site plan review. Seemingly appreciating that there is a ripeness issue associated with the fact that Plaintiffs have not gone through any municipal review process – therefore it is unknown the extent to which the Site Plan Review Regulations or Zoning Ordinance could impact religious exercise – Plaintiffs have shifted their focus to argue that the mere existence of the site plan review requirement constitutes a violation of their religious exercise. In other words, that any requirement to undergo land use review is a violation.

In *Roman Catholic Bishop*, the First Circuit found that only one aspect of the church's claims were ripe – the enactment of the historic district itself. *Id*. at 90. It bears reiterating that the historic district in *Roman Catholic Bishop* was quickly enacted in direct response to the church's plans to deconsecrate pursuant to religious doctrine; was tailored to only be applicable to the church; and would take decision-making that is specifically governed by religious doctrine (i.e. the deconsecration process) and place it in the hands of a secular authority. The Court found that this narrow issue presented a ripe claim, because the Historic Commission would ultimately decide what could be done with the exterior of the church, when Roman Catholic canon law would traditionally dictate alterations to the exterior of the church. *Id*. at 92. In other words, the targeted enactment of the historic district created a direct conflict to the church exercising its sincerely held beliefs regarding deconsecration, therefore there was a discrete ripe claim. *Id*.

But even against an evidentiary record that demonstrated "troubling facts" with an ordinance that was enacted to specifically target the religious exercise of a single church, and a direct conflict between the purpose of the historic district and the exercise of religious belief, the First Circuit could not find a substantial burden on religious exercise by mere virtue of having the requirement to undergo municipal review. *Id*. at 99-100. The regulation itself only required that the church submit plans for review to the Historic Commission, and the existence of some expense during that application process, some potential delay, and the risk of statutory penalties for noncompliance were not enough to establish that the mere enactment of the historic district and its associated municipal review process substantially burdened religious exercise. *Id*. at 100. The Court drew a clear distinction: the existence of the regulation itself creates a process that may involve expense, delay, and fines, but that does not establish a substantial burden; if the church actually goes through the municipal review process at a later date, and is then, in fact,

prevented from undertaking any portion of its religious practices, it may have a claim that can be evaluated anew in the context of a later challenge to the regulation. *Id*. at 99-100.

The circumstances of the present case fit squarely within the analysis set forth in *Roman Catholic Bishop*, and, even more so, the present case does not have the type of "troubling facts" about the enactment of the regulation, or the direct conflict with religious doctrine, that were presented in *Roman Catholic Bishop*. Plaintiffs have been unable to articulate a sincerely held religious belief that is in conflict with the review process or decision-making of the Planning Board. Put differently, Plaintiffs have not articulated any aspect of Planning Board review or decision-making that impedes a sincerely held religious belief. This indisputable fact stands in stark contrast to the way that the *Roman Catholic Bishop* church could clearly identify that the Historic Commission reviewing exterior alterations conflicted with Roman Catholic canon law. Plaintiffs therefore cannot establish the narrow type of ripe claim presented in *Roman Catholic Bishop*, rendering their RLUIPA claims unfit for adjudication at the present time. Further, unlike the ordinance in *Roman Catholic Bishop* that was designed to only apply to one church to limit its religious exercise, the Weare Site Plan Review Regulations were enacted well-prior to the establishment of the Church, and are applicable to all non-residential, multi-family, or residential condominium properties in the Town of Weare. The process of site plan review requires the submission of an application with supporting documentation to explain a property owners' intentions for how they will develop their property. Thus, even assuming arguendo, there is a ripe RLUIPA claim due to the requirement to undergo site plan review, consistent with *Roman Catholic Bishop*, the mere existence of some expense, delay, or imposition of fines associated with the site plan review process does not support a substantial burden claim relating only to the

enactment of the regulation.[1] *Id.* at 100. And, as with *Roman Catholic Bishop*, if Plaintiffs go through site plan review and it is determined at a later date that they cannot exercise some aspect of their religious practice, they can evaluate that claim anew in a later challenge, but it is not ripe for judicial review at this time.

In sum, *Roman Catholic Bishop* stands for the proposition that Plaintiffs do not have ripe claims for their speculative injuries if they went through site plan review, nor do they have a ripe claim based on the requirement to undergo site plan review, and the mere requirement of participating in site plan review, absent more harm, is meritless to recover under RLUIPA or the Free Exercise Clause.

**(II)** **Though traditional administrative exhaustion is not required to establish a RLUIPA claim, finality is a prerequisite to such claims, and is lacking in this matter.**

USDOJ oversimplifies the argument that Defendants have made regarding the need to participate in local or state processes. Defendants agree with the general proposition that administrative exhaustion is not ordinarily a prerequisite to bringing RLUIPA claims, such as a circumstance where the land use proceedings will, on their face, directly contradict a sincerely held religious belief. However, until Plaintiffs meaningfully engage in the administrative process, this Court cannot assess what provisions of the Site Plan Review Regulations or Zoning Ordinance could be applicable when reviewing Plaintiffs' change of use. There is therefore no record to establish the extent to which religious exercise has been or could be burdened by the application of the Site Plan Review Regulations or Zoning Ordinance.

---

[1] This same analysis is applicable and dispositive of Plaintiffs' Free Exercise claim. The mere existence of Site Plan Review Regulations, which may result in some expense, delay, or fines through the site plan review process, are not enough to constitute a substantial burden on the First Amendment right to free exercise of religion. *Roman Catholic Bishop of Springfield*, 724 F.3d 101.

To be certain, the Town has not made a final determination as to the extent that the Zoning Ordinance or Site Plan Review Regulations may be applied to Plaintiffs' property, which shapes the extent to which those regulations could impact Plaintiffs' use. That determination only occurs by coming before the Planning Board, which Plaintiffs have steadfastly refused to do. As with all Planning Board matters, it is an iterative process between the Town and a property owner to determine the scope of review. For example, applicants can participate in a conceptual review to determine whether further review is necessary, and if so, what areas of information are relevant to their project; applicants can present individualized waivers to narrow the scope of information submitted; and applicants can discuss their intentions with the Planning Board or land use staff to address or alleviate concerns, which narrows the scope of review.

Though the traditional doctrine of administrative exhaustion is not a prerequisite to raising RLUIPA claims, the government must be afforded an opportunity to commit to a definitive position about the extent of regulations applicable to a property before the claims are ripe. *Pakdel v. City and County of San Francisco, California*, 594 U.S. 474, 478-79 (2021) (discussing the finality requirement as a prerequisite to bringing suit because the court cannot assess if a regulation has gone too far until it knows how far the regulation goes).[2] The cases that USDOJ cites make this proposition clear. *Guatay Christian Fellowship v. Cty. Of San Diego*, 670 F.3d 957, 979-981 (9th Cir. 2011) (finding that a church's RLUIPA claims were not ripe because it failed to submit even one permit application, therefore the government had not rendered a final decision as to the ways in which the church could use its building, leaving the court unable to

---

[2] *Pakdel* sets forth the ripeness standard for regulatory takings claims. The First Circuit relies on traditional notions of ripeness and has not directly adopted ripeness doctrines arising from the Takings Clause. *Roman Catholic Bishop of Springfield*, 724 F.3d 91-92. However, Plaintiffs and USDOJ have cited *Pakdel*, and Defendants agree that it is informative in detailing the necessity of the government being afforded an opportunity to reach a final determination about the extent to which a regulation will be applied to a property.

discern whether there was a true case or controversy, whether there was any resulting injury, and leaving open the possibility that the claims would be mooted if the church submitted an application); *Dialurua v. Ann Arbor Charter Twp., 30 Fed.Appx*. 501, 504-08 (6th Cir. 2002) (discussing that a claim was ripe because the property owners had gone through the variance process and received a denial, therefore the conflict was fully manifested and plaintiffs suffered quantifiable harm, therefore no further administrative process was required to understand the extent of harm to the plaintiffs); *Hunt Valley Baptist Church, Inc. v. Baltimore County, Maryland*, No. ELH-17-804, 2017 WL 4801542 at *20-21 (D. Md. Oct. 24, 2017) (discussing that, while administrative exhaustion is not a prerequisite, some degree of finality is required before a RLUIPA claim is ripe for review); *U.S. v. City of Walnut, Cal*., No. CV 10-6774-GW(FMOx), 2011 WL 12464619 (C.D. Cal. Jan 13, 2011) (finding that a RLUIPA claim was ripe because the church had sought a conditional use permit, which the Planning Commission formally resolved to deny, therefore the government had reached a definitive position that allowed the court to evaluate if an actual, concrete injury had been inflicted).

Plaintiffs, and now USDOJ, have made an assumption that the site plan review process will be potentially long, expensive, discretionary, and unnecessary. (Statement of Interest p. 9.) Plaintiffs and USDOJ reach this conclusion on the basis that the Planning Board can require an applicant to produce additional studies or documentation, and can require additional public hearings and abutter notifications. (Statement of Interest p. 5.) Plaintiffs and USDOJ conflate what the Planning Board can require of any applicant in the most generalized terms, to what would be required of Plaintiffs in their specific application. It is, of course, unknown what provisions of the Site Plan Review Regulations or Zoning Ordinance would be applied to Plaintiffs' property, because Plaintiffs have not brought their intended use before the Planning

Board. They have not even been willing to come in and discuss individualized waivers or participate in conceptual review to explain their use and attempt to alleviate any concerns about public health and safety. As a result, the Planning Board has not taken a final or definitive position as to which regulations may apply, and this Court has no record to assess whether those regulations have gone too far.

As discussed above, Plaintiffs cannot overcome the ripeness barrier that prohibits their claims based on the speculative injuries they could sustain if they participate in site plan review. So, Plaintiffs have refined their focus, to argue that the mere act of having to participate in site plan review (irrespective of what the scope of the review may end up being), is enough to establish ripe RLUIPA and Constitutional claims. Consistent with *Roman Catholic Bishop*, the mere act of having to participate in local review – even if there is cost, delay, uncertainty, or threat of fines associated with that review – is not enough to prevail on a RLUIPA or Free Exercise claim. In the absence of a viable RLUIPA or Free Exercise claim, Plaintiffs have not set forth a cognizable federal claim that warrants this Court exercising its jurisdiction. Plaintiffs have seemingly acknowledged the infirmity with their federal claims, and focus heavily on their state law claim arising out of RSA 676:74. (Pl.s' Mem. of Law Supporting MSJ p. 9 "This matter beings, and likely ends, with the Town's blatant disregard of a state statute – RSA 674:76.".) Without a viable federal claim to tether their state law claim to, there is no basis for this Court to exercise jurisdiction over a matter of purely state law arising out of the local land use process. Nor a reason to allow Plaintiffs to circumvent state review of local decisions. Therefore, Plaintiffs' only recourse to appropriately address their grievances with the local land use process or interpretation of RSA 674:76 is through the administrative process or the New Hampshire state courts.

## CONCLUSION

While the Statement of Interest sets forth applicable law, that law does not support Plaintiffs' position, and, to the contrary, underscores and supports the arguments that Defendants have made. For the purposes developed more thoroughly in the Defendants' pleadings on summary judgment, and well-supported by the evidentiary record, the Defendants have not violated any provision of state or federal law, and Plaintiffs have no basis for recovery in this matter.

Respectfully submitted,

**TOWN OF WEARE, NEW HAMPSHIRE
CRAIG FRANCISCO
TONY SAWYER**

By Their Attorneys,

**Gallagher, Callahan & Gartrell, P.C.**

Dated: May 13, 2025              */s/ Emily C. Goering*
                                 Emily C. Goering, NH Bar No. 268497
                                 Robert J. Dietel NH Bar No. 19540
                                 214 North Main Street
                                 Concord, NH  03301
                                 603-545-3613 / 603-545-3613
                                 Goering@gcglaw.com
                                 Dietel@gcglaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was transmitted this date via electronic mail to all counsel of record.

Dated: May 13, 2025              */s/ Emily C. Goering*
                                 Emily C. Goering