**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Grace New England et al.</u>

    v.

<u>Town of Weare et al.</u>

Case No. 1:24-cv-41-PB-AJ
Opinion No. 2026 DNH 093

## <u>MEMORANDUM AND ORDER</u>

Howard Kaloogian and the church he founded, Grace New England,[1]

have filed a motion to vacate my summary judgment order, Doc. 50, and the

corresponding judgment, Doc. 52. I deny the motion.

## I.  <u>BACKGROUND</u>

Kaloogian holds church services in a converted barn on his residentially

zoned property in Weare, New Hampshire. Although churches are permitted

in the zoning district where his property is located, the Town's Site Plan

Review Regulations require its Planning Board's approval for his church to

operate because it qualifies as a change of use. This lawsuit stems from

Kaloogian's claim that he cannot be made to comply with that requirement.[2]

---

[1]    These plaintiffs sued the Town of Weare, New Hampshire, its zoning enforcement officer, and the chairman of its Planning Board. I collectively refer to the plaintiffs and defendants as "Kaloogian" and "the Town," respectively.

[2]    I spare the reader a full recounting of the facts, which are detailed in my prior order. See Doc. 50 at 3-17.

I ultimately resolved Kaloogian's lawsuit on cross-motions for summary judgment. See Doc. 50 at 49. After carefully reviewing the history of his interactions with the Town, I concluded that his as-applied challenge to the Town's review requirements was not ripe to the extent that it addressed any phase of review subsequent to a "Conceptual Consultation"—an elective, "pre-application review" in which a property owner submits a one-page form and meets with the Planning Board about his proposal for "[a] discussion in conceptual form and general terms only." Id. at 9-10, 19-27 (quoting Doc. 1-8 at 6). I rested this conclusion on my reading of the Town's Site Plan Review Regulations and the Board's demonstrated willingness (in other cases) and ability (under state law and Section XV of the review regulations) to waive "any further review" of properties' changes of use after a Conceptual Consultation. Id. at 24-26. As I explained, the Town's ability to waive subsequent phases of review at a Conceptual Consultation meant that, to resolve Kaloogian's challenge as applied to subsequent phases of review, I would have to assume that the Town would not grant a request from him for such a waiver. See id. However, as of my order's issuance, Kaloogian had refused to participate in a Conceptual Consultation, much less apply for a waiver through one, leaving me to guess whether the Town would relieve him

2

from further review if he did.[3] See id. Thus, because proceeding on such speculation would contravene First Circuit precedent, I concluded that his challenge was not ripe as applied to the waivable phases of the Town's review. See id. at 26-27 (citing Roman Cath. Bishop of Springfield v. City of Springfield, 724 F.3d 78, 91 (1st Cir. 2013)).

Still, I agreed with the parties that Kaloogian's claims were ripe insofar as they targeted the process for obtaining a waiver, so I reached the merits of his challenge within that frame. See id. at 21-24. For reasons that I explained there, I ultimately granted summary judgment to the Town on all counts but one, which I dismissed without prejudice. Id. at 28-49. I issued my order to that effect on November 10, 2025, id. at 50, and judgment was entered on December 2, 2025, Doc. 52.

About a week later, apparently, Kaloogian's counsel finally appeared before the Planning Board for a Conceptual Consultation. Doc. 53-4 at 2. There, his counsel asked the Board to "simply waive any site plan

---

[3]     Seven months after suing the Town, ostensibly recognizing his justiciability problem, Kaloogian sent an unsigned, undated letter "asking the Town . . . to waive all site plan/change of use review requirements pursuant to New Hampshire law." Doc. 50 at 16 (quoting Doc. 37-4 at 36). But when the Town responded by asking Kaloogian to apply for and attend a Conceptual Consultation to "discuss face to face the request," he demurred, instead simply submitting his letter to other Town boards. See id. at 16-17 (quoting Doc. 37-4 at 38).

requirements that are required of [Kaloogian] to be consistent with the zoning code of the Town." Doc. 53-5 at 6. Speaking for the Board in response, its vice chairman declined "to waive those things today," asserting that "[t]hey can only be waived when" accompanied by "either a change of use application or site plan application" after abutters to Kaloogian's property are "identified and notified." Id. at 8. He further opined that while Kaloogian could "ask for . . . specific waivers," it remained "negotiable" whether the Board is required by law "[t]o cart [sic] blanche waive everything." Id. at 9.

Seeking to clarify, Kaloogian's counsel emphasized that "[t]he request [they]'re making is the waiver of the site plan review in its entirety." Id. at 11. The vice chairman held firm, responding that "[t]he only way that [a waiver] can happen is if you make a formal application" and that "there needs to be a public hearing in order for those waivers to be legal." Id. This, notwithstanding Kaloogian's completion and submission of the Board's written application for a Conceptual Consultation, see Doc. 53-3 at 2, and the Board's public notice of the scheduled discussion of his request for "a waiver under Site Plan Review Regulations Section XV of all site plan regulations," see Doc. 53-4 at 2. Instead, the vice chairman directed Kaloogian's counsel to complete a full site plan application, only upon review of which the Board "would review those waivers [requested] and the . . . value of those waivers, or the merit of those waivers, and act on those waivers at that time." Doc.

4

53-5 at 15-16. The vice chairman ultimately agreed that Kaloogian's waiver request had "neither been approved nor denied" because that night's meeting "[was] not a formal meeting in which that can take place." Id. at 17.

Later that month, Kaloogian filed the instant motion, asking this Court to vacate its order, Doc. 50, and judgment, Doc. 52, and "grant Pastor Kaloogian's motion for summary judgment now that the supporting arguments are ripe for review." Doc. 53 at 2. The Town objects. Doc. 55. I turn to their arguments now.

## II.  STANDARD OF REVIEW

Kaloogian bases his motion to vacate primarily on Rule 59.[4] That rule allows a party to file "[a] motion to alter or amend a judgment . . . no later than 28 days after the entry of judgment." Fed R. Civ. P. 59(e). A Rule 59

---

[4]   Kaloogian also purports to ground his motion on Rule 52(b), which authorizes a court to "amend its findings—or make additional findings— and . . . amend the judgment accordingly." Fed. R. Civ. P. 52(b). Because this case was resolved on summary judgment, however, I made no findings of fact, so Rule 52(b) is inapplicable. See Doe v. Trs. of Bos. Coll., 892 F.3d 67, 86 (1st Cir. 2018) ("At the summary judgment stage, a trial court is to make legal determinations rather than involve itself in factfinding."); see also Stewart v. Norcold, Inc., 24 F.4th 1183, 1185 (8th Cir. 2022) (denying Rule 52(b) motion as "procedurally improper" following case's disposition on summary judgment). I accordingly construe Kaloogian's Rule 52(b) arguments under Rule 59(e), as the First Circuit often does. See In re Sun Pipe Line Co., 831 F.2d 22, 24 (1st Cir. 1987) ("[I]t is settled in this circuit that a motion which asked the court to modify its earlier disposition of a case because of an allegedly erroneous legal result is brought under [Rule 59(e)].").

motion to reconsider "is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)). Generally, amending a judgment is only appropriate if the movant establishes one of four grounds: "manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, [or] an intervening change in controlling law." Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 32 (1st Cir. 2012) (quoting Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005)).

The modifiers to these grounds preview their difficulty to demonstrate. Courts will not grant a motion to reconsider "based on any arguments or evidence that the moving party could have, and should have, raised before the decision issued." Czekalski v. Wrenn, 2022 DNH 040, 2022 WL 909565, at *2 (D.N.H. Mar. 29, 2022); see also Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) (A motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." (quoting Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996)).

6

### III.  <u>ANALYSIS</u>

Kaloogian contends that the Planning Board's refusal to grant him a blanket waiver from further review at the Conceptual Consultation in December reveals "a manifest error of law and fact and a host of newly discovered evidence" that require vacatur of my prior decision "to prevent manifest injustice." Doc. 53-1 at 12-13. The Town responds by contesting the novelty of this development, as well as asserting a manufactured quality to any resulting "injustice" and defending the Board's position as consistent with my November order. Doc. 55-1 at 4-9. Neither party has it quite right.

### A.    <u>Factual Error</u>

To begin with, Kaloogian's motion can be read in part to construe the Planning Board's rejection of his waiver request as "newly discovered evidence" of the Board's unwillingness to award blanket waivers at that phase of review. Doc. 53-1 at 13. In Kaloogian's view, this revelation undercuts a key factual premise of my ripeness analysis, which drew on the testimony of the Board's chairman to conclude that the Board had exercised its authority to grant such waivers in "several" prior cases. Doc. 50 at 25 (citing Doc. 37-2 at 179, 188-90). I disagree.

It is well understood that "'newly discovered evidence' normally refers to 'evidence of facts in existence at the time of [adjudication] of which the aggrieved party was excusably ignorant.'" Rivera v. M/T Fossarina, 840 F.2d

152, 156 (1st Cir. 1988) (quoting Brown v. Pa. R.R. Co., 282 F.2d 522, 526-27 (3d Cir. 1960)).[5] There are at least two reasons why Kaloogian cannot satisfy this standard. First, to warrant altering or amending a judgment, newly discovered evidence must have existed before judgment was entered. See 11 Charles Alan Wright et al., Federal Practice and Procedure § 2859 (3d ed. 2011) ("Under both [Rules 59 and 60(b)], the evidence must have been in existence at the time of trial . . . ."); cf. Peacock v. Bd. of Sch. Comm'rs of Indianapolis, 721 F.2d 210, 214 (7th Cir. 1983) (permitting post-trial relief "only" for newly discovered evidence that "pertains to facts in existence at the time of trial"); NLRB v. Jacob E. Decker & Sons, 569 F.2d 357, 364 (5th Cir. 1978) ("There can be no Rule 60(b)(2) relief for evidence which has only come into existence after the trial is over, for the obvious reason that to allow such a procedure could mean the perpetual continuation of all trials." (quoting Postrollo v. Univ. of S.D., 63 F.R.D. 9, 11 (D.S.D. 1974))). Moreover, the litigant's delay in uncovering the evidence must be attributable to circumstances beyond his control. Palmer, 465 F.3d at 30 (requiring that the late-discovered evidence was "not previously available" to movant); see also

---

[5]    While Rivera examined this requirement under Rule 60(b)(2), it is "well-settled that the requirements for newly discovered evidence are essentially the same under Rule 59(e) and Rule 60(b)(2)." FDIC v. Arciero, 741 F.3d 1111, 1118 (10th Cir. 2013).

EEOC v. Rath Packing Co., 787 F.2d 318, 330-31 (8th Cir. 1986) (rejecting post-judgment relief based on evidence created by the movant "which was formulated after the trial"); Peacock, 721 F.2d at 214 (noting "due diligence" requirement for newly discovered evidence); Jacob E. Decker & Sons, 569 F.2d at 363-364 (requiring that the movant was "excusably ignorant" of the previously unknown facts). These requirements serve the important purpose of "balancing . . . the need for finality of judgments with the need to render a just decision." Venegas-Hernandez v. Sonolux Recs., 370 F.3d 183, 190 (1st Cir. 2004).

Here, Kaloogian cannot surmount either hurdle. There is no dispute that the Board's December meeting occurred after this Court's judgment entered. Doc. 52 at 1; Doc. 53-4 at 2. Thus, evidence of and from that meeting simply did not exist when this Court entered judgment. That temporal reality alone bars post-judgment relief in favor of finality. See Jacob E. Decker & Sons, 569 F.2d at 364.

Likewise, there is no doubt that Kaloogian could have obtained the evidence that he now sets forth at any time before the parties moved for summary judgment. Indeed, Kaloogian was repeatedly presented with opportunities to participate in a Conceptual Consultation prior to and during this litigation, each of which he eschewed in different ways. See, e.g., Doc. 1-2 at 2-3 (rejecting invitation by letter in August 2023); Doc. 37-4 at 36

9

(requesting waiver without completing required form in August 2024); id. at 38-39, 41 (submitting request to incorrect municipal board in December 2024). It was not until several weeks after this Court's decision that, for the first time, he relented and fully discharged a procedurally proper request for a Conceptual Consultation. See Doc. 53-4 at 2. But that avenue was "previously available" to Kaloogian, Palmer, 465 F.3d at 30, and Rule 59(e) does not grant him the do-over he now seeks.

## B.    Legal Error

Kaloogian alternatively suggests that the Planning Board's explanation for its rejection reveals a misapprehension of law in my decision. In so arguing, Kaloogian implicitly credits the position expressed by the Board's vice chairman that the Board was unable to lawfully grant a request for a blanket waiver through a Conceptual Consultation. For its part, the Town construes the vice chairman's statements differently, maintaining that the Board only "concluded that it could not approve a blanket waiver that evening," not that it "took the position that it can never grant a waiver at Conceptual Consultations." Doc. 55-1 at 8-9.

I need not determine which side has the better interpretation of the vice chairman's statements because those statements, however they are interpreted, are beside the point. "The interpretation of a local ordinance, like the interpretation of a state statute, presents a question of law to be decided

10

de novo by the Court." Griffin v. Town of Cutler, 2006 WL 2668460, at *6 (D. Me. Sept. 15, 2006); cf. Portland Cellular P'ship v. Inhabitants of Cape Elizabeth, 139 F. Supp. 3d 479, 487 (D. Me. 2015) ("Whether a proposed use falls within the terms of a zoning ordinance is a question of law that this court reviews de novo." (citation modified)). As such, the Board is not free to disregard the capacious waiver authority granted to it through its Site Plan Review Regulations, especially against the backdrop of state law requiring the same. See N.H. Rev. Stat. Ann. ("RSA") § 674:44, III(e) ("The site plan review regulations which the planning board adopts shall . . . [i]nclude provision for waiver of any portion of the regulations."). More to the point, the Board's incorrect interpretation does not reveal an error of law in this Court's decision, much less one warranting Rule 59(e) relief.

## C.   Manifest Injustice

Finally, it bears brief discussion why, notwithstanding the above, my decision does not otherwise impose a "manifest injustice" on Kaloogian. From the very inception of his dispute with the Town, Kaloogian has taken an absolute position, refusing to submit Grace New England's activities to any extent of municipal review by the Planning Board, no matter how informal. As litigation unfolded, he maintained this maximalist approach, asserting that any review whatsoever, including a Conceptual Consultation, would violate his statutory and constitutional religious rights. And without a doubt,

Kaloogian had every right to adopt that position and to craft his litigation strategy accordingly.

It is only now, regrettably after more than two years of litigation and a fifty-page order from this Court laying bare the justiciability problem that his strategy created, that Kaloogian seeks to pivot. To be clear, I laud Kaloogian's post-judgment efforts to engage constructively with the Town. But as it relates to his lawsuit in this Court, Kaloogian, like any litigant, chose how to prosecute his claims, and with that choice came consequences. Kaloogian must live with the loss that his position precipitated.

## IV.  CONCLUSION

I end this order where I ended my last. Stripped of its acrimony, the legitimate scope of the parties' divergence is small. The Town does not dispute that Kaloogian is entitled to operate a church on his property by right, and Kaloogian does not dispute that the Town may enforce building, health, and safety regulations on Grace New England's operations. Especially now that Kaloogian has abided the Town's previous requests for a Conceptual Consultation, the remaining gap between the parties seems like one which reasonable people could bridge.

Barring that, the Board's ability to regulate Grace New England's activities is substantially limited. See RSA § 674:76. And as my order should have made apparent, the Board's success at summary judgment was on

extremely narrow grounds. The Town defeated Kaloogian's Free Exercise claim solely because "the only ripe policy before" the Court—the requirement that, to get a waiver, one must apply for a waiver—was non-discretionary, a quality not shared by the "largely discretionary" issuance of those waivers by the Board. See Doc. 50 at 31; see also Fulton v. City of Philadelphia, 593 U.S. 522, 536 (2021). Likewise, the outcome of his claim under the New Hampshire Constitution turned largely on the "insubstantial" burden imposed by a Conceptual Consultation on a waiver applicant. See Doc. 50 at 46. In view of these limitations, it should be significant to the Town that I denied Kaloogian's motion for summary judgment without prejudice to filing a new lawsuit if the nonjusticiable applications of his claims against the Town were to ripen. Doc. 50 at 49.

Hopefully, the parties will reassess their positions and resolve their disputes without further litigation. In the meantime, Kaloogian's motion for reconsideration is denied. Doc. 53.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

July 20, 2026

cc:    Counsel of Record

13